# Exhibit 11

*Law Offices*
**McAdoo Gordon & Associates, P.C.**
1629 K Street, N.W., Suite 300

Leslie McAdoo Gordon                    Washington, DC 20006                    MD, DC, & VA
www.mcadoolaw.com
202.704.7388

*\* criminal defense   \*debarment*
*\*security clearance cases and advice*
*for individuals and companies*

April 14, 2022                              <u>**VIA ELECTRONIC MAIL**</u>

The Honorable Bennie G. Thompson
Chairman
January 6th Select Committee
1540A Longworth House Office Building
Washington DC 20515

         *Re:    Position Statement on subpoenas dated April 1, 2022, issued to:*
                *1st Amendment Praetorian, Robert Lewis, and Philip Luelsdorff*

Dear Congressman Thompson:

        I represent:  the civil liberties group, 1st Amendment Praetorian; its officer,
Robert Lewis; and one of its members, Philip Luelsdorff, collectively "1AP," with
respect to subpoenas issued by your Committee.  I submitted formal responses
yesterday to the document requests in these subpoenas. I am writing to provide you
with our legal position regarding the subpoenas, both as to the document requests
and the demands to appear for depositions.

        <u>**Civil Liberties Advocates**</u>

        1st Amendment Praetorian is a non-partisan, non-profit organization seeking
to secure the people's right to free speech.  1AP and its members are advocates for
free speech – for everyone:  right, middle, left, Republican, Democrat, Libertarian,
politicians, public speakers, the media, etc.  The core tenet of 1AP's mission is that
speech is the solution to problems, and while people don't have to listen to one
another, they also do not get to shout speakers down, drag them from the stage, or
assault members of the media.

Congressman Thompson, Chairman
April 14, 2022
Page 2

1AP was formed in 2020 precisely because that is what began happening with alarming regularity during the last election cycle.  All of its activities during the election cycle and afterward consisted of providing pro-bono security services so that persons engaged in First Amendment protected activities could do so safely.  The services were provided to Republicans and Democrats[1] alike, and also to members of the media.  In fact, on January 6, 2021, 1AP's activities consisted of providing personal security for a short period of time for a rally participant, but primarily in buttressing security for members of the main-stream media who were covering the rally at the Ellipse, as they felt their existing security was inadequate for the size of the crowd on that day.  1AP promptly stepped up for that mission on the spot.  Because, again, whatever the personal political views of the individual 1AP members, the mission of the group is to help secure the First Amendment rights of each and every American.

Since I first contacted your Committee Staff in response to the subpoenas, I have made it clear that no member of 1AP went to the Capitol on January 6, 2021; and no member has been (or will be) charged by DOJ in conjunction with the January 6, 2021 riot.[2]  The criminal conduct at the Capitol that day is antithetical to 1AP's values, purpose, and its demonstrated prior actions.

To think that 1AP and its members played a role in the January 6 riot is absurd.  That reality the Committee could have discovered easily, had it done a genuine study of 1AP and/or approached 1AP seeking voluntary assistance, as it has apparently done with the vast majority of the over 850 other witnesses to whom it has talked.[3]

---

[1] For instance, 1AP has provided physical security for the "Walkaway" movement, which is a grassroots political organization founded and operated by people on the left of the political spectrum.  See
https://www.walkawaycampaign.com/?msclkid=505797fdbc6a11ec8682dba2f1798133

[2] 1AP is providing the information in this letter *voluntarily* to afford the Congress accurate material from which to conduct its business, while avoiding the Committee's compulsory process, which creates the First Amendment problem vis-a-vis 1AP.

[3] https://www.msn.com/en-us/news/politics/january-6-panel-has-conducted-more-than-860-interviews-with-dozens-more-planned/ar-AAW8ywN?ocid=uxbndlbing&msclkid=3ed35defbc4911ec95e4fa9e8e6a0476

Congressman Thompson, Chairman
April 14, 2022
Page 3


Instead, the Committee has relied upon biased and hysterical depictions of 1AP and sought to <u>compel</u> a *bona fide* civil liberties group to submit to a dragnet investigation of itself on pain of possible criminal prosecution for contempt.


## First Amendment

The Committee's treatment of 1AP in such a fashion without cause is a gross affront to the First Amendment, as long-time, and recent, Supreme Court precedent has made clear. *See Americans for Prosperity Foundation v. Bonta*, 594 U.S. ___ (2021), *Gibson v. Florida Legislative Comm*, 372 U.S. 539 (1963); *Watkins v. United States,* 354 U.S. 178 (1957).

In addition, the Committee's subpoenas to 1AP ask essentially for everything under the sun.  The effect would have been the same, but it would have really been easier, if the subpoena had simply asked for every document these clients have that relate to 1AP or to the 2020 Presidential campaign.[4]

Such a general, "give me all your papers" approach in a judicial warrant sought by the executive branch is unconstitutional, *see* US Const. amend IV.[5]  It is no less offensive a technique when used by the legislative branch in the guise of a subpoena, backed by the threat of criminal contempt for non-compliance.

Civic groups prominent in advocacy for the rule of law, good government, and constitutional rights, such as "The Project On Government Oversight" (into which "The Constitution Project" was folded in 2017) and "Just Security," have pointed out that this Committee's use of subpoenas has been problematic.[6]

---

[4] (*See* appendix to this letter for the list of all-encompassing document demands set forth in the subpoenas.)

[5] The Fourth Amendment states that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, <u>*and particularly describing*</u> the place to be searched, and the persons or things to be seized."  The Founders mandated the particularity requirement because of the gross abuses of "general" warrants.

[6] https://www.pogo.org/letter/2021/10/letter-to-january-6-committee-supporting-careful-use-of-subpoena-authority/?msclkid=ce4daadcbc4c11ec84e62963196a8757 and
https://www.justsecurity.org/78314/congress-access-to-individuals-private-communications-the-jan-6-committees-troubling-precedent/

Congressman Thompson, Chairman
April 14, 2022
Page 4

Further, to demand financial and fundraising records (including bank account information) and "recruitment" information from a non-profit civic organization, especially a civil liberties group, is wholly unacceptable. As you must know, the First Amendment caselaw is particularly sensitive to demands by the government for membership lists of such organizations. Although the Committee's subpoenas do not explicitly demand 1AP's membership roll, they effectively do so given the sweeping nature of the information demanded. These subpoenas flagrantly violate the First Amendment rights of 1AP, and 1AP will not accede to unconstitutional demands, either in the form of document production requests or responses to questions at deposition.

### "Credible Evidence" Allegations

Although your cover letter to the subpoenas asserts that the Committee has "credible evidence" implicating 1AP in the January 6 riot, no such evidence exists. The "evidence" that you cite is not, in fact, "credible." Indeed, much of it comes from leftist media outlets such as Vice News and the Daily Beast, and partisan "citizen journalists;" patently untrustworthy sources under these circumstances.

Further, the "evidence" cited in the letter is completely cherry-picked and consequently completely misleading. To give but one example, your letter asserts that "you [Mr. Lewis] described your coordination with [Ali] Alexander as 'tight at the hip,'" on a certain date, implying there was a working substantive relationship between 1AP and Mr. Alexander, when in fact the context of the "tight at the hip" remark makes it perfectly clear that Mr. Lewis is talking only about providing physical security to Mr. Alexander on that date. Further, your letter ignores Mr. Lewis' plain and clear statements in the video that 1AP's purpose is to protect freedom of expression for everyone and that the use of violence as a political tool is unacceptable.

Your depiction of 1AP in your press release of November 23, 2021 and the cover letter to the subpoenas, which you also publicly released, paints an entirely false picture of 1AP. As a result of the Committee's reckless disregard for the truth, and the fictitious reporting of the sources you cite, numerous online berserkers have falsely accused 1AP of being involved in the Capitol riot, of being "insurrectionists" or "seditionists," and of other preposterous behavior such as providing weapons to the rioters. These accusations are not only wrong; they are completely at odds with

Congressman Thompson, Chairman
April 14, 2022
Page 5

the fundamental mission of 1AP and its members and their commitment to the Constitution, the free marketplace of ideas, non-violence, and the rule of law.[7]

In response to the outrageously false allegations hurled at 1AP and Messrs. Lewis and Luelsdorff, they have been working with defamation counsel to hold those persons accountable.  That process has been ongoing for more than six months and will be moving into its public phase within the next few days, beginning with a lawsuit against the online over-analyzer and reviler, Seth Abramson, whose hyperbole is a catalyst for others to threaten physical violence against 1AP members and their families.  In the near-term future, those efforts will expand to other cases against individuals, groups, and media outlets for their defamatory statements about 1AP and its members.

1AP does not oppose a legitimate inquiry into the January 6, 2021 riot.  But it has little or no information that would be of real value to such an inquiry.  And it will not sacrifice its own constitutional rights for any inquiry. Accordingly, at 1AP's direction, I endeavored to negotiate the scope of your subpoenas with your staff to see if a narrower set of topics that did not offend the First Amendment, a voluntary production of documents, and voluntary interviews could be agreed upon.  Because make no mistake: the fundamental problem with your subpoenas to 1AP and its members is that they are compulsory in nature and directed at an organization and individuals cloaked with freedom of association rights.[8]  A number of the individual document requests (and any related deposition questions) also offend the First Amendment separately, but that could have been dealt with by narrowing their scope.[9]

---

[7]In this vein, it seems particularly farcical that your subpoena cover letter cites as "credible evidence" of 1AP's involvement in the January 6 "attack" that 1AP obtained a PERMIT from the National Park Service to hold a public gathering for an event on January 5, 2021.  Seeking government approval through designated channels hardly seems the stuff of insurrection.

[8]As I conveyed to your staff, if these subpoenas had been issued in the same form to the ACLU, the NAACP, or the ADL, the analysis to be applied would be exactly the same (and undoubtedly they would not have been issued.)  These subpoenas trench on the association, petition, assembly and speech rights of Americans engaged in important civic work, just as they would if issued to those older organizations.

[9]For instance, the document requests and the deposition questions as initially conceived by the subpoena and your staff included 1AP's work providing security for speakers at rallies in October and December 2020, having nothing whatsoever to do

Congressman Thompson, Chairman
April 14, 2022
Page 6

The effort to narrow your subpoenas and effectuate appropriate and constitutional interaction by 1AP with the Committee on a voluntary basis was making progress, and I believe could have been successful.  However, it was derailed by the further actions of the Committee.

## Fifth Amendment

I read with astonishment the Committee's legal brief, filed March 3, 2022, in the case of *Eastman v. Thompson*, in the U.S. District Court for the Central District of California, asserting that a criminal conspiracy existed under 18 U.S.C. § 371 between former President Trump, his legal team and others, to overturn the results of the 2020 election.[10]  (*See* Committee brief at pp. 42-46)  As a long-time federal criminal defense attorney, I see no realistic possibility that the actions of the former President and his supporters crossed the line from politics into criminal conduct, particularly given the relevant statute and the prevailing Supreme Court caselaw concerning conspiracies to defraud.  Incredibly, the District Court, in its ruling, gave some credence to the Committee's sweeping theory, although it did so without grappling with the relevant body of law.

Notwithstanding the cockamamie nature of the argument that there existed a Section 371 conspiracy as described in the Committee's filing, the fact that the Committee's lawyers made such an argument in court and that it was given any credence by a federal judge will serve to boost pressure on DOJ to pursue such a theory.[11]

Thus, the Committee's theory creates a genuine risk of criminal exposure for anyone who may have, in the opinion of motivated prosecutors, assisted former President Trump or his supporters in any way as they contested the election results

---

with the events of January 6, 2021.  They also seek information concerning the organization and its member's political views and opinions.

[10] Specifically, the Committee's brief asserts that "evidence and information available to the Committee establishes a good-faith belief that Mr. Trump and others may have engaged in criminal and/or fraudulent acts."  Committee Brief at 38.

[11] https://truthout.org/articles/federal-judges-opinion-may-compel-doj-to-bring-criminal-charges-against-trump/?msclkid=37f9c046bc4411ecbf106296273dc83a and https://www.politico.com/news/2022/03/28/trump-judge-felony-obstruction-insurrection-00020918?msclkid=78b898e4bc4411eca788edfc0d84b252

Congressman Thompson, Chairman
April 14, 2022
Page 7


between November 2020 and January 6, 2021.  Although I find the Committee's theory outlandish, given that the Committee's subpoenas to my clients concern the exact dates and activities that it asserts fall within the "conspiracy," I have now advised my individual clients to assert their Fifth Amendment privileges and refuse to answer any questions, or provide any information or documents, that might be used by the Committee or others to link them to the supposed "conspiracy," even tangentially.  Having raised the specter of criminal prosecution, the Committee must now accept the consequences of having done so.


<u>Depositions</u>

Finally, as a technical matter, I assert on my clients' behalf that the Committee cannot lawfully conduct depositions because it is impossible for the Committee to follow its own required procedures in order to do so.  Specifically, House Resolution 503, which constituted the Committee, requires in Sections 5(c)(6)(a) and (8), that the order for the taking of depositions (including by subpoenas) and the conduct of those depositions be done after consultation with the Ranking Member of the minority party, in this case, the Republicans.  As there is no Ranking Member on the Committee at all,[12] those procedures cannot be followed, and therefore the ordering of or taking of depositions by this Committee is not authorized.  1AP and its members will not assist the Committee in conducting proceedings that are not authorized.

Notwithstanding that objection, for purposes of clarity, and as noted in my letter of yesterday, Messrs. Lewis and Luelsdorff will appear for their (improperly) noticed deposition on the 15th and 18th of April, respectively, but will provide no answers to any questions put to them, apart from identifying themselves for the record and asserting the following objection and constitutional rights:

---

[12] Congresswoman Cheney, although nominally a Republican, is not the Ranking Member on the Committee. She was named as the Vice Chair of the Committee, by yourself, as reflected in the Press Release of September 2, 2021 issued by the Committee.  *See* https://january6th.house.gov/news/press-releases/chairman-thompson-announces-representative-cheney-select-committee-vice-chair.

"Vice Chair" is a distinct position from the Ranking Member of the minority party, which must be designated pursuant to the Rules of that party's Conference.  *See* Rule 14 of the Republican Conference Rules of the 117th Congress, for example, requiring that a Ranking Member be nominated by the Steering Committee and elected by the Conference, which was not done in this case.

Congressman Thompson, Chairman
April 14, 2022
Page 8


    In response to any question put to either of them at deposition, on the advice of counsel, each will decline to answer any question posed pursuant to the subpoena, on the grounds that the Committee's proposed deposition procedure violates the Rules of the United States' House of Representative and also that he is privileged to do so under the First and Fifth Amendments to the United States' Constitution.


    In sum, 1AP will not assist the Committee in violating the Rules of the House of Representatives.  Nor will 1AP agree to submit to deposition questioning that violates the fundamental Constitutional rights of American citizens and civil liberties organizations to enjoy freedom of expression, association, petition, and assembly, and be free from compelled co-operation with over-zealous governmental investigative sprees.


    Sincerely,

Leslie McAdoo Gordon

Congressman Thompson, Chairman
April 14, 2022
Page 9

<u>Appendix: Document Requests as stated in the April 1, 2022 Subpoenas</u>

<u>1AP Subpoena:</u>

1. Documents sufficient to identify all employees, officers, and board members of 1AP, Inc., d/b/a 1st Amendment Praetorian (" 1AP"), and documents regarding organizational structure, rules, bylaws, policies, and procedures of 1AP.

2. The Certificate of Formation for 1AP and any other documents submitted on behalf of 1AP to the Delaware Division of Corporations.

3. All agendas, minutes, notes, or other records related to meetings of 1AP, and any newsletters, blogs, posts, or similar records issued to 1AP employees, affiliates, or the public, relating to efforts to challenge the legitimacy of, interfere with, or disrupt the 2020 presidential election; efforts to interfere in government processes; or events in Washington, D.C., on January 5 and 6, 2021.

4. All documents and communications referring to, or containing, non-public intelligence or work product originating in any federal, state, local, territorial, or tribal government entity, and documents sufficient to identify the source of such intelligence or work product, relating to efforts to challenge the legitimacy of, interfere with, or disrupt the 2020 presidential election; efforts to interfere in government processes; or events in Washington, D.C., on January 5 and 6, 2021.

5. All documents and communications concerning the participation of individuals employed by or in any way affiliated with 1AP in the November 14, 2020, "Million MAGA March" or associated rallies in Washington, D.C., including all documents and communications related to preparation for such events and after-action reviews.

6. All documents and communications concerning the participation of individuals employed by or in any way affiliated with 1AP, in the December 12, 2020, "Stop the Steal" rally or associated rallies in Washington, D.C., including all documents and communications related to preparation for such events and after-action reviews.

7. All documents and communications regarding training, planning, organizing, coordination, fundraising, traveling, means of

Congressman Thompson, Chairman
April 14, 2022
Page 10

communication, or transporting equipment or weapons to Washington, D.C., in preparation for events on January 5 and 6, 2021.

8. All body camera footage filmed by individuals employed by or in any way affiliated with 1AP serving as "demonstration marshals" or providing security at events in Washington, D.C., on November 14, 2020, December 12, 2020, and January 5 and 6, 2021.

9. All documents and communications to or from email accounts hosted on .gov and .mil domains related to recruitment of new members, dissemination of government intelligence products, use of official government resources in support of 1AP activities, or planning for the following events in Washington, D.C.: the November 14, 2020, and December 12, 2020, rallies at Freedom Plaza, and rallies and events in Washington, D.C. on January 5 and 6, 2021.

10. All documents and comm1mications regarding lodging and transportation for any individual affiliated with 1AP, including documents and communications related to funding for such lodging and transportation, in relation to events in Washington, D.C. on January 5 and 6, 2021.

11. All communications with members of the following groups, relating to efforts to challenge the legitimacy of, interfere with, or disrupt the 2020 presidential election; efforts to interfere in government processes; or events in Washington, D.C., on January 5 and 6, 2021: Oath Keepers, Three Percenters, Proud Boys, Nationalist Socialist Club, America First, Groyper Army, New Jersey European Heritage Association.

12. All communications with or directly concerning Donald J. Trump, his family members, advisors, White House staff, or staff with Donald J. Trump for President, Inc., regarding efforts to challenge the legitimacy of, interfere with, or disrupt the 2020 presidential election; efforts to interfere in government processes; or events in Washington, D.C., on January 5 and 6, 2021.

13. All communications with any security official for rallies held at Freedom Plaza, the Ellipse, or the Capitol Grounds, or any of the following individuals, relating to efforts to challenge the legitimacy of, interfere with, or disrupt the 2020 presidential election; efforts to interfere in government processes; or events in Washington, D.C., on

January 5 and 6, 2021: Amy Kremer, Kylie Kremer, Cynthia Chafian, Scott Chafian, Caroline Wren, Maggie Mulvaney, Justin Caporale, Tim Unes, Hannah Salem (also known as Hannah Stone), Lyndon Brentnall, Katrina Pierson, Ali Akbar (also known as Ali Alexander), Nathan Martin, Stephen Brown, Alex Jones, Roger Stone, Kimberly Fletcher, Debbie Kraulidis, Bryan Lewis, Marsha Lessard, Christina Staggs, Andrea Lafferty, Belton Platt, Mashandia Platt, Jo Reitkopp, Chris Steinbrunn, James Epley, Peter Boykin, Michael Flynn, Joseph Flynn, and Sidney Powell.

14. All documents and communications regarding event security or individual protective services provided by 1AP, or any member, employee, or affiliate thereof, to any individual or event in Washington, D.C., on November 14, 2020, December 12, 2020, January 5, 2021, or January 6, 2021.

15. All communications sent or received by any 1AP officer or employee on January 5 and 6, 2021 related to events in Washington, D.C., or efforts to interfere in government processes.

16. All documents and communications regarding participation by 1AP, or any member, employee, or affiliate thereof, .in events outside of Washington, D.C., challenging the legitimacy of the election of President Joseph R. Eiden, Jr.

17. All documents and communications regarding the certification of the votes cast by the Electoral College in connection with the November 3, 2020, presidential election.

18. All documents and communications regarding the Presidential Inauguration of Joseph R. Biden, Jr., on January 20, 2021.

19. For the time period of January 6, 2021, to present, all documents and communications concerning the facts and circumstances of the attack on the U.S. Capitol in Washington, D.C. that occurred on January 6, 2021, including after-action reviews.

20. Documents sufficient to identify all email accounts, social media accounts, messaging services, or websites used by 1AP, or any member, employee, or affiliate thereof, whether directly or indirectly, to communicate regarding efforts to challenge the legitimacy of, interfere with, or disrupt the 2020 presidential election; efforts to interfere in

government processes; or events in Washington, D.C., on January 5 and 6, 2021.

21. Documents sufficient to identify all telephone numbers used by 1AP, or any member, employee, or affiliate thereof, to conduct or communicate about the affairs of I AP regarding efforts to challenge the legitimacy of, interfere with, or disrupt the 2020 presidential election; efforts to interfere in government processes; or events in Washington, D.C., on January 5 and 6, 2021.

22. Documents sufficient to identify all Financial Accounts and Digital Assets for which 1AP was the direct or indirect beneficial owner, or over which 1AP exercised control, and into or through which funding for the November 14, 2020, December 12, 2020, and January 5 and 6, 2021, events in Washington, D.C., was deposited or transferred, whether from sponsors, donors, or any other funding source, or from which funds were transferred or withdrawn for any purpose in connection with such events.

23. For the Financial Accounts and Digital Assets identified in response to the Requests above, documents sufficient to identify all account transactions in connection with the November 14, 2020, December 12, 2020, and January 5 and 6, 2021, events in Washington, D.C., including those that occurred after January 6, 2021, but are responsive to the request.

24. Documents sufficient to identify all online fundraisers for which 1AP was the direct or indirect beneficial owner, or over which 1AP exercised control, and into or through which funding for the November 14, 2020, December 12, 2020, and January 5 and 6, 2021, events in Washington, D.C., was deposited or transferred, whether from sponsors, donors, or any other funding source, or from which funds were transferred or withdrawn for any purpose in connection with such events.

24. For each fundraiser identified in response to the Requests above, documents sufficient to identify the online platform used, the individual(s) or entity in whose name the fundraiser is or was held, and all account transactions in connection with the November 14, 2020, December 12, 2020, and January 5 and 6, 2021, events in Washington, D.C.

Congressman Thompson, Chairman
April 14, 2022
Page 13

26. To the extent not covered by the above requests, for the time period of January 6, 2021, to present, all documents and communications whenever dated provided to any other investigatory bodies, including, but not limited to, Senate or House Committees, the Government Accountability Office, any law enforcement agency, including but not limited to the U.S. Department of Justice and the Federal Bureau of Investigation, concerning the facts and circumstances of the January 5 and 6, 2021, events in Washington, D.C.

27. Records related to any funds granted or loaned, or contracts awarded, to IAP by a body of federal, state, or local government, including any unsuccessful applications for such funds or contracts.

<u>Lewis Subpoena:</u>

1. All documents and communications concerning your participation, or participation of individuals affiliated with 1AP, Inc. d/b/a 1st Amendment Praetorian (hereafter "1AP") in the November 14, 2020, "Million MAGA March" or associated rallies in Washington, D.C., including all documents and communications related to preparation for such events and after-action reviews.

2. All documents and communications concerning your participation, or participation of individuals affiliated with 1AP, in the December 12, 2020, "Stop the Steal" rally or associated rallies in Washington, D.C., including all documents and communications related to preparation for such events and after-action reviews.

3. All documents and communications regarding training, planning, organizing, coordination, fundraising, traveling, means of communication, or transporting equipment or weapons to Washington, D.C., in preparation for events on January 5 and 6, 2021.

4. All camera footage, including body camera footage, filmed by you at events in Washington, D.C., on November 14, 2020, December 12, 2020, and January 5 and 6, 2021.

5. All documents and co1nmunications regarding lodging and transportation for you or any individual affiliated with 1AP, including documents and communications related to fm1ding for such lodging

Congressman Thompson, Chairman
April 14, 2022
Page 14

and transportation, in relation to events in Washington, D.C. on
January 5 and 6, 2021.

6. All documents and communications to or from email accounts hosted
on .gov and .mil domains related to recruitment of new members,
dissemination of government intelligence products, use of official
government resources in support of 1AP activities, or planning for the
following events in Washington, D.C.: the November 14, 2020, and
December 12, 2020, rallies at Freedom Plaza, and rallies and events in
Washington, D.C. on January 5 and 6, 2021.

7. All communications between you and members of the following groups,
relating to efforts to challenge the legitimacy of, interfere with, or
disrupt the 2020 presidential election; efforts to interfere in
government processes; or events in Washington, D.C., on January 5
and 6, 2021: Oath Keepers, Three Percenters, Proud Boys, Nationalist
Socialist Club, America First, Groyper Army, and New Jersey
European Heritage Association.

8. All communications with or directly concerning Donald J. Trump, his
family members, advisors, White House staff, or staff with Donald J.
Trump for President, Inc., relating to efforts to challenge the
legitimacy of, interfere with, or disrupt the 2020 presidential election;
efforts to interfere in government processes; or events in Washington,
D.C., on January 5 and 6, 2021.

9. All communications with any security official for rallies held at
Freedom Plaza, the Ellipse, or the Capitol Grounds, or any of the
following individuals, relating to efforts to challenge the legitimacy of,
interfere with, or disrupt the 2020 presidential election; efforts to
interfere in government processes; or events in Washington, D.C., on
January 5 and 6, 2021: Amy Kremer, Kylie Kremer, Cynthia Chafian,
Scott Chafian, Caroline Wren, Maggie Mulvaney, Justin Caporale, Tim
Unes, Hannah Salem (also known as Hannah Stone), Lyndon
Brentnall, Katrina Pierson, Ali Akbar (also known as Ali Alexander),
Nathan Martin, Stephen Brown, Alex Jones, Roger Stone, Kimberly
Fletcher, Debbie Kraulidis, Bryan Lewis, Marsha Lessard, Christina
Staggs, Andrea Lafferty, Belton Platt, Mashandia Platt, Jo Reitkopp,
Chris Steinbrunn, James Epley, Peter Boykin, Michael Flynn, Joseph
Flynn, and Sidney Powell.

Congressman Thompson, Chairman
April 14, 2022
Page 15

10. All documents and communications regarding event security or individual protective services provided by 1AP, or any member thereof, to any individual or event in Washington, D.C., on November 14, 2020, December 12, 2020, January 5, 2021, or January 6, 2021.

11. All communications sent or received by you on January 5 and 6, 2021 related to events in Washington, D.C., or efforts to interfere in government processes.

12. All documents and communications regarding participation by lAP, or any member thereof, in events outside of Washington, D.C., challenging the legitimacy of the election of President Joseph R. Biden, Jr.

13. All documents and communications regarding the certification of the votes cast by the Electoral College in connection with the November 3, 2020, presidential election.

14. All documents and communications regarding the Presidential Inauguration of Joseph R. Biden, Jr., on January 20, 2021.

15. For the time period of January 6, 2021, to present, all documents and communications concerning the facts and circumstances of the attack on the U.S. Capitol in Washington, D.C. that occurred on January 6, 2021, including after-action reviews.

16. Documents sufficient to identify all email accounts, social media accounts, messaging services, or websites you used, whether directly or indirectly, to communicate regarding efforts to challenge the legitimacy of, interfere with, or disrupt the 2020 presidential election; efforts to interfere in government processes; or events in Washington, D.C., on January 5 and 6, 2021.

17. Documents sufficient to identify all telephone numbers you used to conduct or communicate about the affairs of 1AP regarding efforts to challenge the legitimacy of, interfere with, or disrupt the 2020 presidential election; efforts to interfere in government processes; or events in Washington, D.C., on January 5 and 6, 2021.

18. Documents sufficient to identify all accounts held at financial institutions 15 ("Financial Accounts") and all digital assets owned or held in hosted or unhosted wallets, hardware wallets, software wallets,

Congressman Thompson, Chairman
April 14, 2022
Page 16

paper wallets, and hot or cold storage wallets (collectively, hereafter "Digital Assets"):

a.     Into which funds were transferred or deposited to compensate or reimburse you for your work on behalf of 1AP, or in connection with the November 14, 2020, December 12, 2020, and January 5 and 6, 2021, events in Washington, D.C.;

b.     From which funds were transferred or withdrawn for any purpose in connection with the November 14, 2020, December 12, 2020, and January 5 and 6, 2021, events in Washington, D.C., including funds that were used to pay for legal fees incurred as a result of those events;

c.     Into which funds were transferred or deposited as a donation or otherwise to support you and your efforts on behalf of 1AP generally, or in connection with the November 14, 2020, December 12, 2020, and January 5 and 6, 2021, events in Washington, D.C., specifically.

19. For the Financial Accounts and Digital Assets identified in response to the Request above, documents sufficient to identify the institution at which the account is held, the individual( s) or entity in whose name the account is held, and all account transactions, including, but not-limited to, deposits, withdrawals, transfers, and exchanges, in connection with the November 14, 2020, December 12, 2020, and January 5 and 6, 2021, events in Washington, D.C., including transactions conducted after January 6, 2021 that were related in any way to the events that occurred on that day.

20. Documents sufficient to identify all Financial Accounts and Digital Assets for which you were the direct or indirect beneficial owner, or over which you exercised control, and into or through which funding for the November 14, 2020, December 12, 2020, and January 5 and 6, 2021, events in Washington, D.C., was deposited or transferred, whether from sponsors, donors, or any other funding source, or from which funds were transferred or withdrawn for any purpose in connection with such events.

21. For the Financial Acc01mts and Digital Assets identified in response to the Requests above, documents sufficient to identify all account transactions in connection with the November 14, 2020, December 12,

2020, and January 5 and 6, 2021, events in Washington, D.C., including those that occurred after January 6, 2021, but are responsive to the request.

22. Documents sufficient to identify all online fundraisers for which !AP was the direct or indirect beneficial owner, or over which !AP exercised control, and into or through which funding for the November 14, 2020, December 12, 2020, and January 5 and 6, 2021, events in Washington, D.C., was deposited or transferred, whether from sponsors, donors, or any other funding source, or from which funds were transferred or withdrawn for any purpose in connection with such events.

23. For each fundraiser identified in response to the Requests above, documents sufficient to identify the online platform used, the individual(s) or entity in whose name the fundraiser is or was held, and all account transactions in connection with the November 14, 2020, December 12, 2020, and January 5 and 6, 2021, events in Washington, D.C.

24. For the time period of January 6, 2021, to present, all documents and communications whenever dated provided to any other investigatory bodies, including, but not limited to, Senate or House Committees, the Government Accountability Office, and any law enforcement agency, including but not limited to the U.S. Department of Justice and the Federal Bureau of Investigation, concerning the facts and circumstances of the January 5 and 6, 2021, events in Washington, D.C.

25. Records related to any funds granted or loaned, or contracts awarded, to 1AP by a body of federal, state, or local government, including unsuccessful applications for such funds or contracts.

Luelsdorff Subpoena:

1. All documents and communications concerning your participation, or participation of individuals affiliated with 1AP, Inc. d/b/a 1st Amendment Praetorian (hereafter "1AP") in the November 14, 2020, "Million MAGA March" or associated rallies in Washington, D.C., including all documents and communications related to preparation for such events and after-action reviews.

Congressman Thompson, Chairman
April 14, 2022
Page 18

2.  All documents and communications concerning your participation, or participation of individuals affiliated with lAP, in the December 12, 2020, "Stop the Steal" rally or associated rallies in Washington, D.C., including all documents and communications related to preparation for such events and after-action reviews.

3.  All documents and communications regarding training, planning, organizing, coordination, fundraising, traveling, means of communication, or transporting equipment or weapons to Washington, D.C., in preparation for events on January 5 and 6, 2021.

4.  All camera footage, including body camera footage, filmed by you at events in Washington, D.C., on November 14, 2020, December 12, 2020, and January 5 and 6, 2021.

5.  All documents and communications regarding lodging and transportation for you or any individual affiliated with 1AP, including documents and communications related to funding for such lodging and transportation, in relation to events in Washington, D.C. on January 5 and 6, 2021.

6.  All documents and communications to or from email accounts hosted on .gov and .mil domains related to recruitment of new members, dissemination of government intelligence products, use of official government resources in support of 1AP activities, or planning for the following events in Washington, D.C.: the November 14, 2020, and December 12, 2020, rallies at Freedom Plaza, and rallies and events in Washington, D.C., on January 5 and 6, 2021.

7.  All communications between you and members of the following groups, relating to efforts to challenge the legitimacy of, interfere with, or disrupt the 2020 presidential election; efforts to interfere in government processes; or events in Washington, D.C., on January 5 and 6, 2021: Oath Keepers, Three Percenters, Proud Boys, Nationalist Socialist Club, America First, Groyper Army, and New Jersey European Heritage Association.

8.  All communications with or directly concerning Donald J. Trump, his family members, advisors, White House staff, or staff with Donald J. Trump for President, Inc., relating to efforts to challenge the legitimacy of, interfere with, or disrupt the 2020 presidential election; efforts to interfere in government processes; or events in Washington, D.C., on January 5 and 6, 2021.

Congressman Thompson, Chairman
April 14, 2022
Page 19

9.  All communications with any security official for rallies held at Freedom
    Plaza, the Ellipse, or the Capitol Grounds, or any of the following individuals,
    relating to efforts to challenge the legitimacy of, interfere with, or disrupt the
    2020 presidential election; efforts to interfere in government processes; or
    events in Washington, D.C., on January 5 and 6, 2021: Amy Kremer, Kylie
    Kremer, Cynthia Chafian, Scott Chafian, Caroline Wren, Maggie Mulvaney,
    Justin Caporale, Tim Unes, Hannah Salem (also !mown as Hannah Stone),
    Lyndon Brentnall, Katrina Pierson, Ali Akbar (also known as Ali Alexander),
    Nathan Martin, Stephen Brown, Alex Jones, Roger Stone, Kimberly Fletcher,
    Debbie Kraulidis, Bryan Lewis, Marsha Lessard, Christina Staggs, Andrea
    Lafferty, Belton Platt, Mashandia Platt, Jo Reitkopp, Chris Steinbrunn,
    James Epley, Peter Boykin, Michael Flynn, Joseph Flynn, and Sidney Powell.

10. All documents and communications regarding event security or individual
    protective services provided by 1AP, or any member thereof, to any individual
    or event in Washington, D.C., on November 14, 2020, December 12, 2020,
    January 5, 2021, or January 6, 2021.

11. All communications sent or received by you on January 5 and 6, 2021 related
    to events in Washington, D.C., or efforts to interfere in government processes.

12. All documents and communications regarding participation by 1AP, or any
    member thereof, in events outside of Washington, D.C., challenging the
    legitimacy of the election of President Joseph R. Bi den, Jr.

13. All documents and communications regarding the certification of the votes
    cast by the Electoral College in connection with the November 3, 2020,
    presidential election.

14. All documents and communications regarding the Presidential Inauguration
    of Joseph R. Biden, Jr., on January 20, 2021.

15. For the time period of January 6, 2021, to present, all documents and
    communications concerning the facts and circumstances of the attack on the
    U.S. Capitol in Washington, D.C. that occurred on January 6, 2021, including
    after-action reviews.

16. Documents sufficient to identify all email accounts, social media accounts,
    messaging services, or websites you used, whether directly or indirectly, to
    communicate regarding efforts to challenge the legitimacy of, interfere with,
    or disrupt the 2020 presidential election; efforts to interfere in government
    processes; or events in Washington, D.C., on January 5 and 6, 2021.

Congressman Thompson, Chairman
April 14, 2022
Page 20

17. Documents sufficient to identify all telephone numbers you used to conduct or communicate about the affairs of 1AP regarding efforts to challenge the legitimacy of, interfere with, or disrupt the 2020 presidential election; efforts to interfere in government processes; or events in Washington, D.C., on January 5 and 6, 2021.

18. Documents sufficient to identify all accounts held at financial institutions 19 ("Financial Accounts") and all digital assets owned or held in hosted or unhosted wallets, hardware wallets, software wallets, paper wallets, and hot or cold storage wallets (collectively, hereafter "Digital Assets"):

    a. Into which funds were transferred or deposited to compensate or reimburse you for your work on behalf of 1AP, or in connection with the November 14, 2020, December 12, 2020, and January 5 and 6, 2021, events in Washington, D.C.;

    b. From which funds were transferred or withdrawn for any purpose in connection with the November 14, 2020, December 12, 2020, and January 5 and 6, 2021, events in Washington, D.C., including funds that were used to pay for legal fees incurred as a result of those events;

    c. Into which funds were transferred or deposited as a donation or otherwise to support you and your efforts on behalf of lAP generally, or in connection with the November 14, 2020, December 12, 2020, and January 5 and 6, 2021, events in Washington, D.C., specifically.

19. For the Financial Accounts and Digital Assets identified in response to the Requests above, documents sufficient to identify the institution at which the account is held, the individual(s) or entity in whose name the account is held, and all account transactions, including, but not limited to, deposits, withdrawals, transfers, and exchanges, in connection with the November 14, 2020, December 12, 2020, and January 5 and 6, 2021, events in Washington, D.C., including transactions conducted after January 6, 2021 that were related in any way to the events that occurred on that day.

20. Documents sufficient to identify all Financial Accounts and Digital Assets for which you were the direct or indirect beneficial owner, or over which you exercised control, and into or through which funding for the November 14, 2020, December 12, 2020, and January 5 and 6, 2021, events in Washington, D.C., was deposited or transferred, whether from sponsors, donors, or any

Congressman Thompson, Chairman
April 14, 2022
Page 21

other funding source, or from which funds were transferred or withdrawn for any purpose in connection with such events.

21. For the Financial Accounts and Digital Assets identified in response to the Requests above, documents sufficient to identify all account transactions in connection with the November 14, 2020, December 12, 2020, and January 5 and 6, 2021, events in Washington, D.C., including those that occurred after January 6, 2021, but are responsive to the request.

22. Documents sufficient to identify all online fundraisers for which !AP was the direct or indirect beneficial owner, or over which 1AP exercised control, and into or through which funding for the November 14, 2020, December 12, 2020, and January 5 and 6, 2021, events in Washington, D.C., was deposited or transferred, whether from sponsors, donors, or any other funding source, or from which funds were transferred or withdrawn for any purpose in connection with such events.

23. For each fundraiser identified in response to the Requests above, documents sufficient to identify the online platform used, the individual(s) or entity in whose name the fundraiser is or was held, and all account transactions in connection with the November 14, 2020, December 12, 2020, and January 5 and 6, 2021, events in Washington, D.C.

24. For the time period of January 6, 2021, to present, all documents and communications whenever dated provided to any other investigatory bodies, including, but not limited to, Senate or House Committees, the Government Accountability Office, and law enforcement agency, including but not limited to the U.S. Department of Justice and the Federal Bureau of Investigation, concerning the facts and circumstances of the January 5 and 6, 2021, events in Washington, D.C.

25. Records related to any funds ˗granted or loaned, or contracts awarded, to 1AP by a body of federal, state, or local government, including unsuccessful applications for such fonds or contracts.

Congressman Thompson, Chairman
April 14, 2022
Page 22

# ADDENDUM (July 7, 2022)

Dear Congressman Thompson:

I am writing to provide you with this Addendum to my letter of April 14, 2022 on behalf of my clients the civil liberties group, 1st Amendment Praetorian; its officer, Robert Lewis; and one of its members, Philip Luelsdorff, collectively "1AP," in light of two developments since that date.

First, 1AP has maintained from the beginning of the Committee's interest in it that none of its members on January 6, 2021 participated in the riot or engaged in violence at the Capitol on that day, and that Messrs. Lewis and Luelsdorff did not go to the Capitol that day at all. That remains true. There was no organized effort by 1AP or any of its members to go to the Capitol on that date for any purpose, much less an unlawful one. Indeed, 1AP came to DC not for the 6th, but to provide services for a rally the day before. After that work on the 5th, 1AP released all of its volunteers, and had no planned work for January 6, 2021. The various work 1AP did on January 6th arose on an *ad hoc* request basis over the course of the day and was undertaken by a smaller group of volunteers who had stayed overnight in the DC area of their own choice.

After Mr. Lewis's deposition on April 15, 2022, information came to my attention alleging that two 1AP members who participated in the group's protective activities that had taken place earlier in the day went onto the Capitol grounds on January 6, 2022. Having made inquiries into the allegations, I want to update the statement in my April 14, 2022 letter that no member of 1AP went to the Capitol at all.

Inquiry has revealed that two members of 1AP evidently went with or followed the portion of the crowd from the Ellipse that went to the Capitol grounds. They had already completed their work with 1AP at that time. One had been released the day before from any further 1AP activities. The other had responsibilities for 1AP on the 6th, but the detail to which he was assigned ended before the rally even began, and thereafter, he had only managerial duties for the teams who were safeguarding main-stream media journalists during the rally at the Ellipse. Those duties did not require him to be physically present with the journalists.

Congressman Thompson, Chairman
April 14, 2022
Page 23

## ADDENDUM (July 7, 2022)(con't)

These two volunteers therefore apparently went to the Capitol, but they did so without the knowledge or approval of 1AP or Mr. Lewis.  They apparently did not go together to the Capitol.  And I have found no evidence that either member entered the Capitol building.  One of these two members was questioned a few months later by the FBI about being on the Capitol grounds on January 6, 2021, but has had no contact with the FBI or DOJ since that time.  Neither member is charged in any of the criminal prosecutions being pursued by the DOJ in the U.S. District Court for the District of Columbia.  Nor do I expect that either of them ever will be charged with any offense based on what 1AP knows of their activities on January 6, 2021.

In the interest of being comprehensive, I note that a former member of 1AP, Joshua James, has been charged as an "Oathkeeper" in one of the cases DOJ is pursuing.  Mr. James was a member of 1AP for a very short time in 2020, and 1AP advised him in December 2020 that he could not be a member of 1AP while simultaneously being a member of the Oathkeepers, because the missions of the groups were profoundly different. He was told that he needed to choose between the two groups.  Mr. James chose the Oathkeepers.  He chose poorly.  Mr. James was not a member of 1AP in January 2021 or thereafter and has had no association with 1AP since.

It therefore remains true that no one who was a 1AP member on January 6, 2021 has been (or is at all likely to be) charged by DOJ in conjunction with the January 6, 2021 riot.

\* \* \* \* \*

Second, I want to address certain recent actions by the Committee and its members that concern 1AP.

I doubt that it has escaped your notice that the New York Times ran an article last week indicating that the next public hearing conducted by the Committee will concern the "groups" that the Committee believes are associated with the January 6, 2021 riot.  In light of the information that 1AP has provided to you, I was quite surprised to see 1AP mentioned in that article by one of the Committee members, Congressman Rankin.  The remarks attributed to him falsely describe 1AP as "far right" group with a "role" in the "Capitol attack."

Congressman Thompson, Chairman
April 14, 2022
Page 24

## ADDENDUM (July 7, 2022)(con't)

All of those points are false and defamatory.  1AP is a mainstream, non-partisan group with no role whatsoever in the attack on the Capitol.  While the Committee and its members may be able to defame American citizens and organizations from the floor of the Congress with impunity due to the Speech and Debate Clause of the U.S. Constitution, I would remind the Committee members that they are not legally at liberty to do so in the media.

1AP will vigorously defend its reputation, including through defamation lawsuits.  As I indicated in my letter that it would, 1AP has sued lawyer/Twitterer Seth Abramson for defamation in federal court in New Hampshire (where Mr. Abramson resides) for his defamatory statements that 1AP and its members were involved in the Capitol riot and are "insurrectionists" or "seditionists."  1AP will be no less vigorous in pursuing its rights against others who defame it, Mr. Lewis, or Mr. Luelsdorff.

I was also surprised to see the Committee play a portion of the video testimony of its deposition/meeting with Lt. General Michael Flynn in one of its prior hearings, in which he apparently asserts his privilege under the Fifth Amendment.  The Government presenting a person asserting their Fifth Amendment privilege in order to imply to the public that the person is "guilty" of some crime is a McCarthy-esque tactic that offends the Constitution and is unworthy of the United States Congress.

Given that Mr. Raskin incorrectly believes 1AP is a proper subject for the next Committee hearing and given that Mr. Lewis and Mr. Luelsdorff asserted their Fifth Amendment rights – on my advice -- during their depositions, I am forced to anticipate that the Committee will use the same totalitarian tactic to improperly smear 1AP.

As the Committee knows full well from my letter of April 14, 2022 and the depositions of my clients, 1AP has asserted its Fifth Amendment privilege before the Committee solely because <u>the Committee</u> is asserting that groups and persons who never went to the Capitol on January 6, 2021, but had some role in the events that led up to that ultimate riot there, are participants in a criminal conspiracy. And Committee members have made it abundantly clear through their public statements that it is likely the Committee will make a criminal referral to the DOJ.

Congressman Thompson, Chairman
April 14, 2022
Page 25

## ADDENDUM (July 7, 2022)(con't)

<u>1AP believes itself to be innocent</u> of any wrongdoing or criminal conduct but, since it may find itself as a target of an unfounded criminal investigation, I have advised my clients to assert their Fifth Amendment privilege so that their truthful testimony is not twisted and used against them.

I would remind the Committee that the Supreme Court of the United States has described the Fifth Amendment privilege thusly:

> "[W]e have emphasized that one of the Fifth Amendment's "basic functions . . . is to protect *innocent* men . . . `who otherwise might be ensnared by ambiguous circumstances.' " *Grunewald* v. *United States*, 353 U.S. 391, 421 (1957) (quoting *Slochower* v. *Board of Higher Ed. of New York City*, 350 U.S. 551, 557-558 (1956)) (emphasis in original). In *Grunewald*, we recognized that truthful responses of an innocent witness, as well as those of a wrongdoer, may provide the government with incriminating evidence from the speaker's own mouth. 353 U.S., at 421-422.

*Ohio v. Reiner*, 532 U.S. 17, 20 (2001).

The circumstances in which an innocent citizen finds himself faced with an out-of-control prosecutor, or a mistaken theory of criminality, or an overzealous legislative inquiry-- which is the situation 1AP finds itself in -- is precisely when the citizen most needs the protection of the Fifth Amendment. For the Congress to attempt to turn that protection into a weapon against a citizen, or a group of citizens, is repellant.  I urge the Committee not to engage in such un-American behaviors.  Unfortunately, I have little faith that the Committee will heed my appeal. This leaves me with no choice but to pre-emptively speak publicly about these issues before the Committee engages in wholesale defamation of 1AP from its powerful national platform.

Finally, I reiterate that 1AP is not a "militia," nor is it an "anti-government" group.  1AP did not, would not, and will not advocate, condone, or excuse violence in the pursuit of political aims.  Doing so contradicts its core mission and values.  Any suggestion that it, Mr. Lewis, or Mr. Luelsdorff would do so is categorically false and deeply offensive.