## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

ROBERT PATRICK LEWIS,
PHILIP A. LUELSDORFF and
1AP, INC.,

     Plaintiffs,

     v.

SETH ABRAMSON,

     Defendant.

Case No. 1:22-cv-00126-PB

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Defendant Seth Abramson ("Abramson") files this memorandum of law in support of his motion to dismiss the Amended Complaint (Doc. No. 16) filed by plaintiffs Robert Patrick Lewis ("Lewis"), Philip A. Luelsdorff ("Luelsdorff") and 1AP, Inc. ("1AP") (collectively "Plaintiffs").

The Amended Complaint alleges that forty-one statements ("Statements") are defamatory (Count I). Am. Compl., ¶ 2 (itemizing the Statements at pp. 4-14). The Statements also form the basis of Plaintiffs' additional claims for defamation by implication (Count II), false light invasion of privacy (Count III) and common law conspiracy (Count IV).

The Amended Complaint must be dismissed for failure to state a claim including, because: Abramson did not publish some of the Statements; Plaintiffs do not allege falsity with regard to some of the Statements; and the remaining Statements are First Amendment protected speech. Furthermore, as public or limited public figures who inserted themselves into events of public concern, the Amended Complaint must also be dismissed because Plaintiffs failed to allege sufficient facts to plausibly support a clear and convincing finding of actual malice. For these

reasons and the reasons that follow, Plaintiffs' claims for defamation, defamation by implication, false light invasion of privacy and common law conspiracy must be dismissed.

**I.    Legal standard for motion to dismiss for failure to state a claim.**

When analyzing a motion to dismiss for failure to state a claim, the court must accept as true the well-pleaded allegations and draw all reasonable inferences therefrom in the plaintiff's favor. *Foley v. Wells Fargo Bank, N.A.,* 772 F.3d 63, 71-72 (1st Cir. 2014). Dismissal for failure to state a claim is warranted when the complaint lacks sufficient factual matter to state a claim that is plausible on its face. *Id.* In conducting its analysis, the court may consider materials that are expressly referenced or relied upon in the complaint. *Id.* A complaint that merely "offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do" and will be dismissed for failure to state a claim. *Martin v. Mooney,* 448 F.Supp.3d 72, 77 (D.N.H. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009)).

A motion to dismiss is a particularly useful vehicle for a defamation claim because the "threshold question [of] whether a communication is reasonably susceptible of a defamatory meaning, is a question of law for the court." *Amrak Prods., Inc. v. Morton*, 410 F.3d 69, 72–73 (1st Cir. 2005) (internal indicators omitted).

Here, Plaintiffs have had ample opportunity to amend their Complaint in order to avoid dismissal. Instead of curing the defects in their original Complaint through an amended pleading that provides a clearly-worded pleading supporting the necessary elements relative to each asserted claim, Plaintiffs presented essentially the same convoluted pleading with the only difference being a claim of common law conspiracy in lieu of civil conspiracy.[1] For the reasons that will follow, Plaintiffs have once again failed to state a claim.

---

[1]    Plaintiffs attempt to rely on an August 20, 2021 article as the basis for their claims that Abramson's statements are materially false. Am. Compl. n. 11. However, this is easily contradicted by other publicly available

As such, it is clear that allowing Plaintiffs the opportunity to amend their Complaint a second time would be futile and this Court should dismiss the Amended Complaint with prejudice.  *Field v. GMAC LLC*, 660 F.Supp.2d 679 (E.D. Va. 2008), motion to amend denied 2009 WL 6560222, affirmed 328 Fed.Appx. 873, 2009 WL 2233170.  A claim warrants dismissal only if it is clear that relief would not be available under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  Little has been done by Plaintiffs to salvage their claims, making it obvious that there exists no set of facts from which they can set forth a claim that would entitle them to relief from this Court.

## II.    The Amended Complaint.

Lewis and Luelsdorff are politically active military veterans.  Am. Compl., *passim*.  "In 2020, Lewis founded 1AP to provide pro bono security and protective services at grassroots events." Am. Compl., ¶ 1.  The Amended Complaint specifically references and alleges that 1AP's website is "https://1apraetorian.com" ("1AP Website").  Am. Compl., ¶ 1.  Attached hereto as **Exhibit 1** is a copy of the 1AP Website homepage.

According to the 1AP Website, "[t]here are groups today who use violence and intimidation to suppress people's 1st Amendment rights and their desire to stand up for what they believe in.  We stand in their way and ensure the American people are protected to say and defend what they believe in."  Plaintiffs also allege that 1AP's purpose is "to ensure that every American can freely associate, freely gather and freely speak **on matters of public concern** to them without threat or fear of intimidation, retribution, bodily harm or death."  Am. Compl., ¶ 1 (emphasis

---

sources. See, e.g., Rolling Stone, *EXCLUSIVE: Jan. 6 Protest Organizers Say They Participated in 'Dozens' of Planning Meetings With Members of Congress and White House Staff*, October 24, 2021, https://www.rollingstone.com/politics/politics-news/exclusive-jan-6-organizers-met-congress-white-house-1245289/ (last accessed August 16, 2022) and NPR, *Jan. 6 panel shows evidence of coordination between far-right groups and Trump allies*, https://www.npr.org/2022/07/12/1111132464/jan-6-hearing-recap-oath-keepers-proud-boys (last accessed August 16, 2022).

added).  Moreover, 1AP's "**leadership has chosen to make our names public to stand up for what we believe in**."  1AP Website (emphasis added).

Abramson is the author of a series of articles entitled Proof, which are published and hosted on a platform called Substack.com ("Substack").  The Proof articles are an archive containing more than a hundred works of curatorial journalism, which involves compiling primary source material from a variety of news outlets on a specific topic and organizing that material into narrative form with accompanying citations.  In addition to these Proof articles, Abramson has a Twitter account through which he tweets (*i.e.*, publishes) his own statements and/or retweets (*i.e.*, republishes) statements made by other users.  Am. Compl., ¶ 2.  Following the January 6, 2021 insurrection during which individuals breached the United States Capitol, Abramson published his Proof articles, in conjunction with some of his tweets and retweets, to inform the public of how the events of January 6, 2021 had unfolded.  Am. Compl., ¶ 2.

### A.  The Statements fall into four categories of publication and publisher.

First, the Amended Complaint cites to five "Abramson (Substack)" Proof articles that contain within them twelve of the allegedly actionable statements itemized as statement nos. 1, 2, 3, 6, 8, 9, 11, 12, 13, 14, 20, 24, and 39. ("Proof Statements").  Am. Compl., ¶ 2.  Attached hereto are the following:

- **Exhibit 2** is the June 21, 2021 Proof article bates nos. ABRAMSON0001-0015;

- **Exhibit 3** is the June 28, 2021 Proof article bates nos. ABRAMSON0016-0031;

- **Exhibit 4** is the June 30, 2021 Proof article bates nos. ABRAMSON0032-0048;

- **Exhibit 5** is the July 12, 2021 Proof article bates nos. ABRAMSON0049-0064; and

- **Exhibit 6** is the September 23, 2021 Proof article bates nos. ABRAMSON0065-0076.

Second, the Amended Complaint cites to Abramson's tweets that contain within them sixteen more of the allegedly actionable statements itemized as statement nos. 4, 5, 10, 16, 17, 18, 19, 25, 26, 29, 34, 35, 37, 38, 40, and 41 ("Abramson Tweets").  Am. Compl., ¶ 2.  Attached hereto as composite **Exhibit 7** is a compilation of the Abramson Tweets bates nos. ABRAMSON0077-0149.

Third, the Amended Complaint cites to other users' tweets and/or Abramson's retweets thereof that contain within them twelve more of the allegedly actionable statements itemized as statement nos. 3,[2] 7, 15, 21, 22, 23, 27, 28, 30, 31, 32 and 36 ("Retweets").  Am. Compl., ¶ 2.

Fourth, the Amended Complaint cites to the publication of one other statement published by David Cross on a platform called wsws.org, which contains a final allegedly actionable statement itemized at statement no. 33 ("Cross Statement").  Am. Compl., ¶ 2.

**B.  Plaintiffs' conduct within the context of the Amended Complaint.**

In May 2021, Plaintiffs provided security at an event in Texas that included Michael Flynn, Allen West and a large number of QAnon adherents who, according to the Federal Bureau of Investigation, are members of a violent domestic extremist group.  Am. Compl., ¶ 1 and n.1. During this event, 1AP removed members of the mainstream media.  Am. Compl., ¶ 1.

On June 10, 2021, the Daily Beast published a news article entitled *The Far Right Paramilitary Wannabees Feeding Mike Flynn's Conspiracy Machine*.  Am. Compl., ¶ 1.  Attached hereto as **Exhibit 8** is the June 10, 2021 Daily Beast Article ("Daily Beast Article").  The subtitle of the Daily Beast Article is that "[t]he 1st Amendment Praetorian group has become an on-call security and intelligence team for the most extreme and esoteric of Trumpists."

---

[2]     Statement number 3 was allegedly published both by Abramson in his June 30th Proof article and by @capitolhunters on Twitter.  For organizational purposes, it is included in both the Proof Statements and Retweets.

After publication of the Daily Beast Article, publication of Abramson's Proof articles relative to Plaintiffs began.  Am. Compl., ¶ 2.  Every Proof article is heavily cited and linked to its source material.  For instance, the June 30th Proof article cites and links to, *inter alia*, a Patriot Transition Voice interview with Lewis ("PTV Interview").  Exhibit 4 (ABRAMSON0033).  A transcript of the PTV Interview is attached hereto as **Exhibit 9**.  In the PTV Interview, Lewis described his support for the conspiracy theories that give rise to his perceived need to reverse the 2020 election, which he believes had been stolen from Donald Trump.

Similarly, Abramson's July 12th Proof article cites and links to, *inter alia*, an After Dark interview with Lewis ("After Dark Interview").  Exhibit 5 (ABRAMSON0055).  A transcript of the After Dark Interview is attached hereto as **Exhibit 10**.  In the After Dark Interview, Lewis further described his support for the conspiracy theories that give rise to his perceived need to reverse the 2020 election.

### C.  Superfluous allegations in the Amended Complaint.

Much of the remainder of the Amended Complaint is filled with redundant, immaterial, impertinent, scandalous, and conclusory allegations that do not support Plaintiffs' claims or are otherwise relevant.  For instance, the Amended Complaint is replete with allegations and claims that other known and unknown individuals also defamed Plaintiffs.  However, none of those other individuals is a party in *these* proceedings.  *See, e.g.,* Am. Compl., ¶¶ 1, n.1, n.2, 2, 3, n.6-10, 4, *passim*.  Remaining allegations that are relevant to the Court's analysis of the issues raised in Abramson's motion to dismiss are discussed *infra*.

### III.  The Amended Complaint must be dismissed for failure to state a claim.

In order to plead a claim of defamation, a plaintiff must allege that a defendant failed to exercise reasonable care in publishing without a privilege a false statement about the plaintiff to a

third party resulting in damages. *Moss v. Camp Pemigewassett, Inc.*, 312 F.3d 503, 507 (1st Cir. 2002). When a defamatory statement concerns a public figure, then the common law "reasonable care" negligence standard is replaced with the Constitutional "actual malice" standard (discussed *infra*). *New York Times v. Sullivan*, 376 U.S. 254, 283 (1964).

Among the requirements for an allegedly defamatory statement, it must be <u>false</u>, and it must be a statement of a <u>fact</u>. *Mooney,* 448 F.Supp.3d at 84 ("Embedded in this standard is the requirement that the challenged statement be 'false' and one 'of fact.'"). "[A] statement of opinion is not actionable unless it may reasonably be understood to imply the existence of defamatory fact as the basis for the opinion." *Automated Transactions, LLC v. Am. Bankers Ass'n*, 172 N.H. 528, 532 (2019) (quoting *Thomas v. Telegraph Publ'g Co.*, 155 N.H. 314, 338 (2007) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-19 (1990))). A corollary of defamation law's factual requirement is that statements of "rhetorical hyperbole" are not actionable because they cannot reasonably be interpreted as factual assertions. *Id.* (citing *Milkovich,* 497 U.S. at 20). Likewise, insulting, harsh and/or unflattering statements about people are also "protected opinion." *Catalfo v. Jensen*, 657 F.Supp. 463, 468 (D.N.H. 1987).

Whether an allegedly defamatory statement is Constitutionally protected opinion must be analyzed in the context of the publication taken as a whole. *Boyle v. Dwyer,* 172 N.H. 548, 555 (2019); *Nash v. Keene Publ'g Corp.*, 127 N.H. 214, 219 (1985) (stating that "[w]hether a given statement can be read as being or implying an actionable statement of fact" must be considered in "the context of the publication as a whole"). "Context matters in assessing such claims: The court [must] examine the statement in its totality in the context in which it was uttered or published. The court must consider all the words used, not merely a particular phrase or sentence." *Amrak Prods., Inc.*, 410 F.3d at 73 (internal quotations omitted).

When a publisher discloses the facts upon which an allegedly defamatory statement is based, the statement constitutes that publisher's opinion of those facts. *Automated Transactions, LLC,* 172 N.H. at 534. Thus, "even a provably false statement is not actionable ... when an author outlines the facts available to him, thus making it clear that the challenged statements represent his own interpretation of those facts." *Id.* (quoting *Riley v. Harr*, 292 F.3d 282, 289 (1st Cir. 2002)). *See also Partington v. Bugliosi*, 56 F.3d 1147, 1156 (9th Cir. 1995) (explaining that "[t]he courts of appeals that have considered defamation claims after *Milkovich* have consistently held that when a speaker outlines the factual basis for his conclusion, his statement is" not actionable for defamation).

### A.  The Proof Statements and Abramson Tweets fail to state a defamation claim.

The Proof Statements and Abramson Tweets, which must be read in the context of their publication as a whole, require dismissal because Abramson's analyses, interpretation, statements and opinions of the record contained therein are Constitutionally protected.

**Statement nos. 1 and 39:** Plaintiffs allege that Abramson published this statement in his June 21st Proof article. Exhibit 2. However, the June 21st Proof article does not state that "Lewis and 1AP were among 'Trump's insurrectionists'" and that Luelsdorff participated in "Trump's Insurrectionist Week warm room." The subtitle of the June 21st Proof article states that "During Insurrection Week, Trump's insurrectionists had at least five secretive war rooms inside Washington. Here's everything we know about them so far." Exhibit 2 (ABRAMSON0001). Even if the subtitle "Trump's insurrectionists" was applied to Plaintiffs, those words are a statement of opinion based on the context of the facts disclosed and cited to within the June 21st Proof article. For instance, the photograph in Exhibit 2 at ABRAMSON0008 clearly shows

Luelsdorff in the Willard Room on January 5 or 6, 2021 with Rudolph Giuliani and John Eastman among others.  Abramson's opinion of these facts is Constitutionally protected.

Furthermore, Luelsdorff's brief mention in the June 21st Proof article merely identifies him as a participant in the Willard Room without further comment on his presence or the substance of his activities. By Plaintiffs' own description of 1AP's activities on January 6, 2021, 1AP provided "personal security" to certain "DC affiliate reporters." Am. Compl. ¶ 17.b.  Among those identified in the photograph of the Willard room is Christina Bobb, a One America News Network Host. Thus, by Plaintiffs' own description of their activities, their "security" to a member of the room is an act of participation. The June 30th Proof article provides a description of Luelsdorff's background and confirms that he was inside the Willard Room on January 6 and 7.

**Statement no. 2:** Plaintiffs claim that Abramson published this statement in his June 21st Proof article, but this statement does not appear in the June 21st Proof article. Exhibit 2. Abramson wrote that "Proof has now identified the man in the white shirt above as Philip (or sometimes 'Phillip') Luelsdorff, the Director of Business Development for the militant extremist 1st Amendment Praetorian group run by Robert Patrick Lewis."  Exhibit 2 (ABRAMSON0008).  That statement is under a photo of Luelsdorff who was in the Willard Hotel "war room" on January 5 or 6, 2021.  Even in the Amended Complaint, Plaintiffs do not allege what aspect of this statement is false.  Plaintiffs allege in the Amended Complaint that Lewis is the leader of 1AP.  The remainder of this statement, that 1AP is a "militant extremist … group", is an opinion based on facts originally presented in the Daily Beast Article and disclosed in the context of the June 21st Proof article.

**Statement no. 3:** Plaintiffs claim that Abramson published this statement in his June 30th Proof Article.  However, this statement does not exist at all in the June 30th Proof article.  *See generally*, Exhibit 4 (ABRAMSON0032-0048).

**Statement no. 4:** Plaintiffs allege that this statement was tweeted by Abramson.  Exhibit 7 (ABRAMSON0077).  This Abramson Tweet, like all of them, discloses and links to the Proof articles.  As such, the Abramson Tweets must be read in the context of the Proof articles.  In that regard, Abramson's statement that Lewis is a "legitimately dangerous domestic insurgent[]" is a statement of protected opinion within the context of the disclosed facts in the Proof articles.

**Statement no. 5:** Plaintiffs allege that Abramson tweeted this statement.  Exhibit 7 (ABRAMSON0079).  This Abramson Tweet discloses and links to the context of the Proof articles.  In that regard, Abramson's statement that "Insurrection Day was the work of coordination between the White House, Stop the Steal, InfoWars and the Proud Boys, <u>with the</u> Oath Keepers, Three Percenters, QAnoners <u>and 1AP in support roles</u>" (emphasis added) is a statement of opinion within the greater context of the disclosed Proof articles and Abramson Tweets.  Moreover, the statement with regard to 1AP is true, and disclosed, as Lewis states that 1AP was in a support role on January 6, 2020.  *See, e.g.,* PVT Interview, pp. 7-9, 85-86.

**Statement no. 6:** Plaintiffs claim that Abramson published this statement in his June 28th Proof article.  Exhibit 3 (ABRAMSON0016-17).  Plaintiffs do not allege what aspect of this statement is false.  The statement does not accuse 1AP of coordinating the insurrection.  It states that 1AP acted as security for agents affiliated with Donald Trump and the activity occurring at or around the Willard Hotel in Washington, D.C. Plaintiffs themselves alleged that 1AP provided personal security in Washington, D.C. on January 5 and 6, 2021, and that both Luelsdorff and Lewis were physically present at the Willard Hotel at that time.  *See, e.g.,* Am. Compl., ¶ 16(b).

Moreover, this statement appears in the first paragraph of a sixteen-page article in which Abramson discloses the bases for his opinions, including links to all of his cited sources.  Abramson's use of the word "seditious" in this regard is a statement of opinion within the greater context of this Proof articles.

> **Statement nos. 8, 9, 11, 12, 13 and 14:** Plaintiffs claim that Abramson published these statements in his June 30 Proof article.  Exhibit 4 (ABRAMSON0032-48).  The June 30th Article discloses and links to the factual bases supporting Abramson's statements and opinions concerning the events.  The statements reflect Abramson's commentary, interpretation, and analysis of *Lewis's own words* given during the PVT Interview.  Abramson quotes from Lewis's PTV Interview and provides a link to the interview so the reader can access and assess the source material upon which Abramson's article and opinions are based.  Plaintiffs fail to allege what aspect of these statements are false.  Statement nos. 8 and 9, in particular, are hypotheticals, which by definition are not statements of fact.  Moreover, Plaintiffs allege that 1AP, Lewis, and Luelsdorff were present in Washington D.C. and in the Willard at the time in question.  Am. Compl., ¶ 17(b).  Abramson's use of the words "extremely dangerous" and "seditious" (ABRAMSON0033) as well as "radical, dangerous, militant insurrectionists" (ABRAMSON0035) are statements of opinion based on the greater context of his Proof articles.

> **Statement no. 10:** Plaintiffs allege that Abramson tweeted this statement.  Exhibit 7 (ABRAMSON0083).  However, the words in this statement are not of and concerning Plaintiffs. The tweet does, however, contain a photograph of Luelsdorff with his face circled and text reading "1st Amendment Praetorian Leader."  That said, Plaintiffs fail to allege what aspect of this statement is false.  The photograph shows Luelsdorff in the Willard Hotel, which Plaintiffs admit.

And Plaintiffs do not dispute that Luelsdorff was a "1st Amendment Praetorian Leader". *See, e.g.,* Am. Compl., ¶ 2 n.4.

**Statement no. 16:** Plaintiffs allege that Abramson tweeted this statement. Exhibit 7 (ABRAMSON0089). The Abramson Tweets refer and link to the Proof articles, and thus, they must be read in the context of those disclosed Proof articles and Twitter thread in which the statement appears. The statement from which twitter thread begins: "(PS4) If we just looked at people under criminal investigation or who've been arrested in the past, the number of people here in the relevant category would be at least 8" and includes Luelsdorff. (underline added). Under Fed. R. Evid. 201, the Court can take judicial notice that Luelsdorff was arrested and charged for motor fuel theft on August 24, 2001.[3] Alternatively, if the Court declines to take judicial notice of this fact, this statement still must be dismissed because Luelsdorff fails to allege in the Amended Complaint that he has not been arrested in the past.

**Statement nos. 17, 18 and 19:** Plaintiffs allege that Abramson tweeted these statements. Exhibit 7 (ABRAMSON0090-91). However, these Abramson Tweets like the others are cited and linked to the Proof articles, and thus, they must be read in the context of those Proof articles. Plaintiffs fail to allege which aspect of these statements are false. The statements are based upon prefatory language like "I believe", "I'm most scared about" and "you'd think" – all of which indicate Abramson's opinion in the context of the disclosed facts within the linked Proof articles and Twitter Statements. All three of these statements are of Abramson's judgment of Lewis's mental health including statements that Lewis is deranged and should psychiatrically evaluated. Although such judgments may be harsh insulting or unflattering – they are nonetheless protected opinion about a public figure.

---

[3] Baltimore Business Journal, *Two Arrested for Motor Fuel Theft* (Aug. 28, 2001) https://www.bizjournals.com/baltimore/stories/2001/08/27/daily10.html (last accessed July 7, 2022).

**Statement no. 20:** Plaintiffs claim that Abramson published this statement in his July 12th Proof article.  Exhibit 5 (ABRAMSON0049-64).  Although the purportedly quoted and allegedly defamatory statement from the Amended Complaint is that Lewis was "a high-level advisor [and bodyguard] to Trump's legal team" -- the actual statement from the July 12th Proof article does not include the words "[and bodyguard]".  Exhibit 5 (ABRAMSON0057).  Plaintiffs cannot assert claims for defamation based on statements that were not made.  The remainder of Abramson's statement is an opinion based on disclosed facts including links to the After Dark Interview (ABRAMSON0055) in which Lewis stated that he was involved with Trump's legal team pre-, mid-, and post-insurrection.  After Dark Interview, pp. 42, 49.  *See also* PVT Interview, pp. 16, 53 ("It was my security team that drove Sidney Powell and [Michael] Flynn to the White House when they saw POTUS two weeks ago").

**Statement no. 24:** Plaintiffs claim that Abramson published this statement in his September 23rd Proof article.  Exhibit 6 (ABRAMSON0065-76).   The statement identifies Luelsdorff and Lewis as colleagues affiliated with 1AP, places Lewis in the Willard Hotel and describes a conspiracy theory attributed to Lewis regarding the 2020 election steal. (ABRAMSON0067).  Plaintiffs fail to allege which aspects of the statement are false.  Plaintiffs allege that Lewis was in the Willard on January 5 and 6, 2021.  Am. Compl., ¶ 17(b).  This statement is supported by the After Dark Interview during which Lewis explains his belief that the 2020 election was stolen by a multinational cabal of pro-communist interests in China, Russia, North Korea, Venezuela and Iran.  *See, e.g.* PTV Interview, pp. 44-46.  The underlying facts upon which Abramson's opinions are based are provided within his Proof articles, and thus, they cannot be actionable as defamation.

**Statement no. 25**:  Plaintiffs allege that Abramson tweeted this statement.  Exhibit 7 (ABRAMSON0093-94).  However, the Abramson Tweets refer and link to the Proof articles, and thus, they must be read in the context of those Proof articles as well as the Twitter threads in which the statement appears.  This statement was in response to a non-party journalist regarding Abramson's use of the term "war room."  The statement references Lewis' use of the term in videos and cites to the Proof articles that link to articles, videos and quotations in which Lewis refers to the Willard Hotel as a "war room" where he was "war-gaming."  Exhibit 4 (ABRAMSON0035). Plaintiffs fail to identify which part of this statement is false.   Abramson's reference to Lewis as a "domestic extremist" is a statement of opinion within the context of the disclosed Twitter Statements, Proof articles and materials disclosed therein.

**Statement no. 26**:  Plaintiffs allege that Abramson tweeted this statement.  Exhibit 7 (ABRAMSON0102).  Each tweet in this thread links to a Proof article and to every report published regarding the Willard Hotel.  The original tweet features a photo of an unnamed-Luelsdorff.  Abramson describes this unnamed man as a "domestic extremist leader."  Based on the context of Abramson's Tweets and Proof articles, and the sources disclosed, referenced and linked therein, Abramson's description of Luelsdorff as a "domestic extremist leader" is a statement of protected opinion.

**Statement no. 29**:  Plaintiffs allege that Abramson tweeted this statement.  Exhibit 7 (ABRAMSON0109-11).  The statement includes a photo of Luelsdorff in the Willard Hotel. Plaintiffs fail to plead which portion of this statement is false.  Plaintiffs allege that Luelsdorff was in the Willard Hotel on January 6.  Am. Compl., ¶ 16(a).  Abramson's reference to 1AP as an "insurrectionist paramilitary extremist group" is a statement of opinion and interpretation within the greater context of the tweet threads, Proof articles, and the primary sources linked thereto.

Abramson's statements are further based on a Rolling Stone article, which is disclosed and linked therewith (ABRAMSON0109).

**Statement no. 34:** Plaintiffs allege that Abramson tweeted this statement.  Exhibit 7 (ABRAMSON0112).  The Abramson Tweets must be read in the context of the Twitter thread in which the statement appears.  The statement alleges that 1AP was present in the Willard Hotel on January 6.  Plaintiffs conceded that Luelsdorff was in the Willard Hotel on January 6.  Am. Compl., ¶ 13(j).  Abramson's statement that Luelsdorff is affiliated with 1AP, which is never alleged in the Amended Complaint to be false, is one of opinion within the greater context of the Proof articles.

**Statement no. 35:** Plaintiffs allege that Abramson tweeted this statement.  Exhibit 7 (ABRAMSON0113).  However, the Abramson Tweets must be read in the context of the tweet thread in which the statement appears.  This statement concerns the New York Times.  It provided a link to a Proof article regarding 1AP, and the preview of the link contains a photo of Luelsdorff.  Plaintiffs do not allege which aspect of this statement is false.  Moreover, nothing about this statement of and concerning 1AP is remotely false.  Rather, Abramson simply asks a protected rhetorical question: "How could [the NYT] have missed this major report on [1AP]?"

**Statement no. 37**: Plaintiffs allege that Abramson tweeted this statement. Exhibit 7. The statement links to a Mother Jones article dated April 16, 2022 entitled *Audio: Far-Right Paramilitary Member Warned 1/6 Committee Witness Against Speaking Out*, attached hereto as **Exhibit 12**.  Contained within the article is audio from Michael Kenny, a 1AP member, who made a death threat to Staci Burk, a testifying January 6th Select Committee witness, and that doing so would be on behalf of 1AP.[4]  Abramson simply recounts what the Mother Jones article reports.

---

[4]    Staci Burk asked Michael Kenny, "Don't you think that if I was gonna get killed, I would have been killed by now?" Kenny responded, in part: "It just depends on what you do, you know? What you don't do." The entire audio is available in the article at: https://www.motherjones.com/politics/2022/04/first-amendment-praetorian-january-6-committee-michael-flynn/

**Statement no. 38**: Plaintiffs allege that Abramson tweeted this statement. Exhibit 7. The statement is simply a quote from a Guardian article dated July 7, 2022 entitled *Trump's Possible Ties to Far-Right Militias Examined by January 6 Committee*, attached hereto as **Exhibit 13**, to which the tweet links. Exhibit 7 (ABRAMSON0124).

**Statement no. 40**: Plaintiffs allege that Abramson tweeted this statement. Exhibit 7 (ABRAMSON0120-0121; ABRAMSON0129). The alleged statement is a potpourri of tweets from July 8, 2022 and July 21, 2022. None of the tweets alleged that Lewis himself participated in any plotting or "December Conspiracy." Moreover, the July 21, 2022 twitter thread is Abramson's live coverage of the January 6th Select Committee hearing.

**Statement no. 41**:   Plaintiffs allege that Abramson tweeted this statement. Exhibit 7 (ABRAMSON0129). The Fifth Amendment protects the right from self-incrimination. As a public figure or limited public figure who did, in fact, take the Fifth Amendment to protect against self-incrimination, Plaintiffs fail to allege what portion of this statement is false. See n. 5, *supra*.

### B. Plaintiffs failed to allege sufficient facts to plausibly support a clear and convincing finding of actual malice.

Plaintiffs are public or limited public figures who have inserted themselves into events of public concern.  As such, Plaintiffs must plead sufficient facts to plausibly allege actual malice.

In *Schatz v. Republican State Leadership Comm.*, the First Circuit analyzed a defamation complaint to determine whether it "plausibly support[ed] an actual-malice claim."  Although the complaint in that case "used actual-malice buzzwords, contending that the RSLC had 'knowledge' that its statements were 'false' or had 'serious doubts' about their truth and a 'reckless disregard' for whether they were false," the Court held that "these are merely legal conclusions, which must be backed by well-pled facts."  669 F.3d 50, 56 (1st Cir. 2012) (upholding dismissal of defamation claim for failure to allege well-pleaded facts that could plausibly support an actual malice claim).

16

Just like in *Schatz*, Plaintiffs have failed to allege sufficient facts to support a plausible (not just conceivable) claim for actual malice.  *See also, Lemelson v. Bloomberg L.P.*, 903 F.3d 19, 24 (1st Cir. 2018) ("On a Rule 12(b)(6) motion to dismiss … [a plaintiff's] well-pleaded facts must nudge his actual malice claim across the line from conceivable to plausible." (internal citations and indicators omitted)).

1) **Plaintiffs are public and/or limited public figures who have inserted themselves into events of public importance.**

"Those who, by reason of the notoriety of their achievements or the vigor and success with which they seek the public's attention, are properly classed as public figures … may recover for injury to reputation only on clear and convincing proof that the defamatory falsehood was made with knowledge of its falsity or with reckless disregard for the truth."  *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342 (1974).  In this regard, there are two classifications of public figure: people who are public figures for all purposes; and people who are limited-purpose public figures for particular public controversies.  *Thomas,* 155 N.H. at 340.

Parties may become limited-purpose public figures when they "have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved."  *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974).  Courts make the limited-purpose public figure determination "by looking to the nature and extent of an individual's participation in the particular controversy giving rise to the defamation."  *Thomas*, 155 N.H. at 341.  "A public controversy is not simply a matter of interest to the public; it must be a real dispute, the outcome of which affects the general public or some segment of it in an appreciable way." *Lassonde v. Stanton*, 157 N.H. 582, 590 (2008).

There is no doubt that the January 6, 2021 insurrection is a matter of public concern affecting the general public in an appreciable way.  Plaintiffs, in their own words, allege that 1AP's

purpose is "to ensure [discourse] **on matters of public concern**".  Am. Compl., ¶ 1 (emphasis added).  And the 1AP Website makes clear that its "**leadership has chosen to make our names public to stand up for what we believe in**."  1AP Website (emphasis added).

The Amended Complaint alleges, and Abramson's Proof articles, tweets and retweets make clear including through their reliance on all of the disclosed and linked materials therein including the PVT Interview and the After Dark Interview, that Lewis is the leader of 1AP and heavily involved in the public eye.  Lewis has given interviews to numerous media outlets, spoken at rallies and major political events, and has publicly touted his close contact and association with high-level members of Donald Trump's legal team.  1AP is a public-facing organization actively participating in major political events and rallies, as well as providing pro bono protection for high-profile individuals.  While it is likely that 1AP and Lewis are public figures, it is sufficient for this motion to dismiss that they are limited public figures.

At a minimum, Luelsdorff is a limited public figure with regard to the substance of the Amended Complaint and public discourse concerning the events surrounding the January 6, 2021 insurrection because he inserted himself into these issues including by being physically present in the Willard Hotel's "war room" with Giuliani and Eastman among others during their efforts to overturn the election of President Biden.  *See, e.g.,* Exhibit 2 (ABRAMSON0008).

> **2) Plaintiffs failed to allege sufficient facts to support a plausible (*i.e.*, more than conceivable) clear and convincing finding of actual malice.**

Although long on words, Plaintiffs' actual malice allegations are dispositively short on well-pleaded facts just as was the case in *Schatz*.  Am. Compl., ¶ 16(a)-(f).  For instance, while Plaintiffs allege that "Abramson and his co-conspirators [] "<u>knew</u> that there were obvious gaps in their own narrative" (Complaint, 16(a) (underline added), the only example they give of this alleged known falsity is an example of an undisputed fact: that Luelsdorff was in a room at the

Willard Hotel with Giuliani, Eastman and others during their efforts to overturn the election of President Biden. Am. Compl., ¶ 17(b). Plaintiffs' allegation that Abramson's defamatory statements were published with reckless disregard as to their truth or falsity are conclusory. There mere allegation that Lewis and Luelsdorff are veterans does not mean that "[t]he suggestion that [they] would work to obstruct and overthrow Congress is disgusting and enraging and so far-fetched that Abramson and his co-conspirators <u>had to know it was false</u>." Am. Compl., ¶ 17(a) (underline added). History is full of American veterans who have worked to obstruct and overthrow Congress. *See, e.g.,* Civil War.

Plaintiffs' allegation that the "stories about [them] were so highly improbable that Abramson had serious doubts as to the accuracy of the Statements" is conclusory. Am. Compl., ¶ 17(c). There is not a fact to be found in this actual malice allegation: "It should have been very apparent to Abramson and his confederates that their Statements about Lewis, Luelsdorff and 1AP were false." Am. Compl., ¶ 17(c). Plaintiffs' generic allegation of actual malice that "[k]nowing [Abramson's] Statements about Plaintiffs were false" -- is untethered to any well-pleaded fact. Am. Compl., ¶ 17(b). Whether Abramson identifies as a democrat or republican for political purposes is unrelated to the actual malice pleading standard. Am. Compl., ¶ 17(e). That "Abramson did not seek the truth or report it" is not plausibly supported including by reviewing the context of the Statements themselves. Am. Compl., ¶ 17(f). Finally, although Plaintiffs allege Abramson republished Statements after Plaintiffs notified him that they were false, there are no allegations in the Complaint that Plaintiffs ever notified Abramson that the Statements were false, with the exception of the filing of the originally defective Complaint on April 15, 2022. Am. Compl., ¶¶ 2, 17(g). However, there is nothing defamatory about the Statements as demonstrated *infra*.

**C. The Retweets and Cross Statement fail to state or support any claim because Abramson is immunized by Section 230 of the Communications Decency Act as a "downstream user."**

The New Hampshire Supreme Court recently analyzed the meaning of a "user" within Section 230 of the Communications Decency Act (47 U.S.C. § 230(c)(1)), and it held that a Twitter user cannot be liable in defamation for retweeting (*i.e.*, republishing) another users' statements. *Banaian v. Bascom*, No. 2020-0496, 2022 WL 1482521 (N.H. May 11, 2022). Users who re-posted content originally created by others were deemed "downstream users" of that content and are thus protected.

In the Amended Complaint, Plaintiffs allege that the Retweets were originally "published by" other Twitter users named "@capitolhunters" (statement nos. 3 and 7), "@visionsurreal" (statement nos. 15, 21, 30, 31 and 36), "@lynette30067504" (statement no. 22), "@DempseyTwo" (statement no. 23) and "@PiperK (statement nos. 27, 28 and 32) and/or subsequently republished by Abramson.  Am. Compl., ¶¶ 2, 3, 4, 5, 15, 17(g), 18, 18(h), 33 and 35 (alleging republication of the Statements including the Retweets).

The Retweets fail to state a claim for two reasons.  First, "individual users [like Abramson] are immunized from claims of defamation for retweeting content that they did not create". *Banaian*, 2022 WL 1482521, at *4.  As such, all claims in the Amended Complaint based on the Retweets, including claims for defamation, defamation by implication, false light invasion of privacy and common law conspiracy must be dismissed for failure to state a claim.  Second, the Retweets and the Cross Statement were not originally "published by" or otherwise created by Abramson.  As such, he cannot be liable as a "downstream user" in defamation, defamation by implication or false light for statements that Plaintiffs allege were "published by" others.  Am. Compl., ¶ 2.

**D.  Plaintiffs' claim for defamation by implication must be dismissed.**

Defamation by implication requires the publication of a truthful statement that implies an underlying defamatory meaning.  *Howard v. Antilla*, 191 F.R.D. 39 (D.N.H. 1999).  Thus, the foundational requirement of a defamation by implication claim is that the actionable statements are objectively true but carry a subjectively defamatory meaning.  Such a claim must be supported by "testimony from actual witness(es) who read the statement and understood it to contain that implication."  *Collins v. Univ. of New Hampshire*, 746 F. Supp. 2d 358, 373 (D.N.H. 2010), *aff'd,* 664 F.3d 8 (1st Cir. 2011).

Plaintiffs appear to misunderstand the gravamen of a claim for defamation by implication. As pleaded, Plaintiffs' claim for defamation by implication appears to be a claim for defamation *per se*.  Specifically, Plaintiffs continue to allege that the Statements are false and then add that such false statements wrongfully imply criminal conduct.[5]  Am. Compl., ¶¶ 22-23.

If Plaintiffs claims for defamation by implication are intended to be claims for defamation per se, they fail for the reasons already addressed *supra*.  To the extent that Plaintiffs intended to advance a claim for defamation by implication, it fails for two more reasons.  First, Plaintiffs have not specified what portion of any of the Statements are objectively true but when subjectively understood give rise to a defamatory implication.   Second, Plaintiffs generally plead that Abramson's co-conspirators and Twitter followers subjectively understood the Statements to convey a defamatory implication. Am. Compl. ¶ 25. However, this assumption does not salvage

---

[5]      On April 14, 2022, **before filing the Complaint in these proceedings**, in response to a Congressional subpoena issued by the January 6th Select Committee, Plaintiffs asserted their Fifth Amendment rights against self-incrimination.  Attached hereto as **Exhibit 11** is a copy of Attorney Leslie McAdoo Gordon's letter to the January 6th Select Committee on behalf of Plaintiffs describing Abramson's statements as "hyperbole".  McAdoo Letter, p. 5. With regard to the subject matter of the January 6th Select Committee's investigation, Attorney McAdoo asserts her clients' Fifth Amendment privilege against self-incrimination (McAdoo Letter, pp. 6-7), and on July 7, 2022, she re-asserts her clients' Fifth Amendment privilege against self-incrimination.  McAdoo Letter, p. 25.

the claim and is conclusory at best. Plaintiffs' claim for defamation by implication must also be dismissed for failure to allege actual malice for the reasons discussed *supra*.

### E.  Plaintiffs' claim for false light invasion of privacy must be dismissed.

As a threshold matter, Plaintiffs' claim for false light invasion of privacy must be dismissed for failure to state a claim because New Hampshire does not recognize this cause of action. *Mansfield v. Arsenault*, No. 2020-0100, 2021 WL 72370, at *1 (N.H. Jan. 8, 2021) ("we have not recognized false-light invasion of privacy as a cause of action"); *Thomas v. Tel. Pub. Co.*, 151 N.H. 435, 440 (2004) (declining to recognize the tort of false light invasion of privacy).

The elements of a claim for false light invasion of privacy <u>in other states</u> are described in Section 652E of The Restatement (Second) of Torts (1977):

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

A claim for false light invasion of privacy is similar to a claim for defamation of a public figure.  Added to it are requirements that the false statement must be offensive to a reasonable person and that it garners publicity.  Constitutional protections for opinion are the same as a claim for defamation.  *Veilleux v. Nat'l Broad. Co.*, 206 F.3d 92, 134 (1st Cir. 2000) (statements of opinion cannot support a claim for false light invasion of privacy).

For the reasons that Plaintiffs have not stated a claim for defamation, they have not stated a claim for false light invasion of privacy even if such a claim was recognized in New Hampshire.

**F.  Plaintiffs' claim for common law conspiracy must be dismissed.**

Plaintiffs amended their Complaint to include a claim for "common law conspiracy" instead of "civil conspiracy." There is no distinction in the case law between the two. Conspiracy contains the same elements: (1) two or more persons; (2) an object to be accomplished; (3) an agreement on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result. *Sykes v. RBS Citizens, N.A.*, 2 F. Supp. 3d 128, 138 (D.N.H. 2014). Conspiracy also requires clear and convincing evidence.  *Univ. Sys. of New Hampshire v. U.S. Gypsum Co.*, 756 F. Supp. 640, 652 (D.N.H. 1991) ("There is no such thing in New Hampshire … as a civil action based upon conspiracy alone.  For a civil conspiracy to exist, there must be an underlying tort which the alleged conspirators agreed to commit.") (internal indicators omitted); 15A C.J.S. Conspiracy § 37 ("To make out a prima facie case of conspiracy, the evidence must be clear and convincing.").

The seminal conspiracy case in New Hampshire is *Jay Edwards, Inc. v. Baker*, 130 N.H. 41 (1987).  *Jay Edwards* explains the elements of civil conspiracy and why a complaint, just like the Amended Complaint in this case, must be dismissed for failure to state a claim.

> References to conspiracy and conspiratorial conduct are set forth in the plaintiff's petition, and yet when used they are mere legal assertions, unsupported by factual content.  The only fact set forth in the petition that might even remotely support a conspiracy claim is the conclusory allegation that the defendants F.A.D. "offered" to sell the property in question.  As we have seen, however, this term is itself nothing more than a legal conclusion.
>
> Once legal conclusions and amorphous accusatory statements are set aside, the plaintiff's pleadings stand bare of those essential facts that would give rise to any cognizable legal cause of action.  When reduced to its essence, the plaintiff's petition is simply a collection of accusatory and argumentative statements.  We hold that the pleadings do not meet the applicable test, which requires that a plaintiff's pleadings, on their face, assert a cause of action if the claim is to survive a motion to dismiss.

*Jay Edwards, Inc. v. Baker*, 130 N.H. 41, 47–48 (1987) (internal indicators omitted).

Plaintiffs have not brought this action against any of Abramson's alleged "confederates" for *their* alleged torts, but Plaintiffs attempt to hold Abramson "liable for the injury caused by his confederates while the joint scheme persisted."  Am. Compl., ¶ 31.  The obvious problem with Plaintiffs' theory is that without naming Abramson's alleged "confederates" as defendants in these proceedings, Plaintiffs will never be able to prove liability for the alleged torts that those alleged confederates allegedly committed.  This is easily understood in the context of the actual malice element required in these proceedings: Plaintiffs must prove the unnamed co-conspirators' state of mind and/or conduct.  This cannot be done without naming them as parties and actually litigating those issues.  As such, there can be no liability against Abramson for alleged torts claimed against alleged co-conspirators who are not a party to these proceedings.[6]

Plaintiffs also have not alleged any well-pleaded facts to support an agreement between Abramson and any other individual or entity to commit a tort.  Plaintiffs allege that Abramson committed torts, that other named and/or unnamed parties allegedly committed torts, and that some of those alleged torts are similar because they concern Plaintiffs' conduct in the context of events of national concern in which Plaintiffs have inserted themselves.  The paltry allegation that certain known and/or unknown Twitter users have sometimes used the same hashtag (which is how Twitter works) is insufficient to support the kind of well-pleaded facts necessary for a conspiracy claim to survive a motion to dismiss.  The remainder of Plaintiffs' allegations of an "agreement" only exist in the most conclusory of forms without support from any well-pleaded facts.  *See, e.g.,* Am. Compl., ¶ 35 (alleging generically that "Abramson agreed to participate in the conspiracy").

---

[6]    Plaintiffs allege that "[t]he conspiracy ended when Plaintiffs filed this lawsuit…Abramson's co-conspirators locked down their Twitter accounts and almost overnight ceased publication of *any* statements of or concerning Plaintiffs." Am. Compl. 34. The only "locked down" account is @visionsurreal. The other accounts continue to Tweet prolifically, as they always apparently have, about various subjects. The latest tweets from these accounts are enclosed as **Exhibit 14**.

## IV.    Conclusion.

For the foregoing reasons, the Amended Complaint fails to state a claim for defamation, defamation by implication, false light invasion of privacy and common law conspiracy.  Abramson did not publish some of the Statements, and the remaining Statement are protected by the First Amendment. Falsity is not alleged with some of the statement. Finally, as public or limited public figures who inserted themselves into events of public concern, the Amended Complaint must also be dismissed because Plaintiffs failed to allege sufficient facts to plausibly support a clear and convincing finding of actual malice.  As such, the Amended Complaint should be dismissed with prejudice.

SETH ABRAMSON
By his attorneys,

_____
Christian H. Hinrichsen, NH Bar #264910
Stephanie E. Bendeck, MA BBO #708033
Admitted *Pro Hac Vice*
Melick & Porter, LLP
One Liberty Square, 7th Floor
Boston, Massachusetts 02109
Telephone: (617) 523-6200
chinrichsen@melicklaw.com
sbendeck@melicklaw.com

Dated:  August 19, 2022

## CERTIFICATE OF SERVICE

I, Stephanie E. Bendeck, hereby certify that this document filed through the ECF System will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on August 19, 2022.

_____
Stephanie E. Bendeck