**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

------------------------------------------------------x
ROBERT PATRICK LEWIS,      :
PHILIP A. LUELSDORFF,     :
1AP, INC.                      :
                              :
      Plaintiffs,          :
                              :
v.                            :        Case No. 1:22-cv-00126-PB
                              :
                              :
SETH ABRAMSON         :
                              :
      Defendant.       :
------------------------------------------------------x

# PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiffs, Robert Patrick Lewis ("Lewis"), Philip A. Luelsdorff ("Luelsdorff") and 1AP, Inc. ("1AP") (collectively, the "Plaintiffs"), by counsel, pursuant to Local Rule ("LR") 7.1(a)(2), respectfully submit this Memorandum in Opposition to the motion to dismiss amended complaint [*ECF No. 19*] filed by defendant, Seth Abramson ("Defendant").

## I.  INTRODUCTION

The right to an unimpaired reputation derives from the common consent of humankind and has ancient roots. The common law powerfully supports it. A person's reputation is a value as old as the Pentateuch and the Book of Exodus, and its command as clear as the Decalogue: "Thou shall not bear false witness against thy neighbor." The personal interest in one's own good name and reputation surpasses economics, business practices or money. It is a fundamental part of personhood, of individual standing and

1

one's sense of worth. *Lawnwood Medical Center, Inc. v. Sadow*, 43 So.2d 710, 729-732

(Fla. 4th DCA 2010).  In *Rosenblatt v. Baer*, the United States Supreme Court emphasized

that:

> "'Society has a pervasive and strong interest in preventing and redressing attacks
> upon reputation.'  The right of a man to the protection of his own reputation from
> unjustified invasion and wrongful hurt reflects no more than our basic concept of
> the essential dignity and worth of every human being—a concept at the root of
> any decent system of ordered liberty … Surely if the 1950's taught us anything,
> they taught us that the poisonous atmosphere of the easy lie can infect and
> degrade a whole society."

383 U.S. 75, 92-93 (1966); *see also Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 11-12

(1990) ("Good name in man and woman, dear my lord, Is the immediate jewel of their

souls") (quoting WILLIAM SHAKESPEARE, OTHELLO, act 3 scene 3)); *Fuller v.

Edwards*, 180 Va. 191, 198, 22 S.E.2d 26 (1942) ("[o]ne's right to an unimpaired limb

and to an unimpaired reputation are, in each instance, absolute and has been since

common law governed England.  Indeed, an impaired reputation is at times more

disastrous than a broken leg.").

    Freedom of speech is not absolute. *Chaplinsky v. New Hampshire*, 315 U.S. 568,

572 (1942); *id. Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 245-246 (2002)

("freedom of speech has its limits; it does not embrace certain categories of speech,

including defamation"); *Herbert v. Lando*, 441 U.S. 153, 171 (1979) ("[s]preading false

information in and of itself carries no First Amendment credentials."); *Gertz v. Robert

Welch, Inc.*, 418 U.S. 323, 349-350 (1974) (there is "no constitutional value in false

statements of fact.").  Likewise, freedom of the press under the First Amendment "does

not include absolute license to destroy lives or careers." *Curtis Pub. Co. v. Butts*, 388

U.S. 130, 170 (1967) (Warren, C.J., Concurring).  The press has no "special immunity

from the application of general laws", nor does it have a "special privilege to invade the rights and liberties of others." *Branzburg v. Hayes*, 408 U.S. 665, 684 (1972). "No man has a right to state of another that which is false and injurious to him. A fortiori no man has a right to give it a wider and more mischievous range by publishing it in a newspaper … The liberty of speech and the liberty of the press do not authorize malicious and injurious defamation." *Dexter v. Spear*, 7 F. Cas. 624-625 (1st Cir. 1825) (Story, J.).

Plaintiffs commenced this action because Defendant and his confederates published millions of false and defamatory statements and implications linking Plaintiffs to the January 6, 2021 attacks on the United States Capitol, insurrection, sedition and a plot to overthrow the United States. On August 8, 2022, Plaintiffs filed an amended complaint, alleging claims of defamation, defamation by implication, false light invasion of privacy and civil conspiracy. [*ECF No. 16 (Amended Complaint) ("Am. Compl.")*]. The matter is before the Court on Defendant's motion to dismiss Plaintiff's amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). [*Am. Compl., ¶¶ 6, 7, 8*]. As is explained in detail below, viewed in a light most favorable to Plaintiffs, they sufficiently allege that Defendant published materially false and defamatory statements with actual malice: that is, with knowledge that the statements were false or with reckless disregard for the truth. The Court should DENY Defendant's motion.

## II.  BACKGROUND

This memorandum summarizes the allegations in the amended complaint, which, for purposes of Defendant's motion to dismiss, must be accepted as true, with all reasonable factual inferences drawn in favor of Plaintiffs as the non-movant.

A.      **The Parties**

Lewis is a decorated United States Army Green Beret, who received a Bronze Star and Purple Heart in the service of his Country.  He possessed a TS-SCI security clearance and received an Honorable Discharge.  In 2020, Lewis founded 1AP to provide pro bono security and protective services at grassroots events.  Lewis created 1AP to ensure that every American can freely associate, freely gather and freely speak on matters of public concern to them without threat or fear of intimidation, retribution, bodily harm or death.  Luelsdorff is a former United States Army Ranger (Battalion), with a Top Secret (TS) security clearance.  After a successful military career, he too received an Honorable Discharge.  Plaintiffs are private individuals. [*Am. Compl., ¶ 1*].  In June 2021, Plaintiffs were thrust into the public controversy surrounding the events of January 6, and savagely defamed by Defendant and third parties with whom he was acting in concert. [*Am. Compl., ¶ 1, 2, 3*].[1]

Defendant is an attorney, author of a for-profit subscription newsletter that he publishes via "substack",[2] and prolific tweeter. [*Am. Compl., ¶¶ 2, 7, 15, 28*].

B.      **The Materially False and Defamatory Statements**

Beginning on June 21, 2021, Defendant published a series of statements of fact that were of or concerning the Plaintiffs. [*Am. Compl., ¶ 2 (the "Statements")*].  Plaintiffs allege that Defendant's choice and use of the word "**PROOF**" as the title of both his

---

[1]      *See Hutchison v. Proxmire*, 443 U.S. 111, 135 (1979) ("Clearly, those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure.").

[2]      "Substack" is an online platform that supports the publication and payment of subscription newsletters.  It allows writers, such as Defendant, to send digital newsletters directly to paying subscribers. [https://substack.com/about].

subscription newsletter and Twitter profile, and his avoidance of disclaimers of any kind, communicated to readers and viewers that he was conveying facts, *i.e.* "**PROOF**", as opposed to pure opinions.   Plaintiff's amended complaint further demonstrates that Defendant repeatedly advised readers that his tweets were "fully" sourced and "established" by "**[m]ountains of <u>evidence</u>**". (Emphasis added).   Defendant even bragged to potential donors and subscribers to his newsletter that the Select Committee to Investigate the January 6 Attack on the United States Capitol (the "J6 Committee") had "all" of his "fully sourced <u>**evidence**</u>" (emphasis added), and had even cited the Defendant's evidence. [*Am. Compl., ¶ 7*].   Plaintiffs contend that the Statements are defamatory per se because they accuse and impute to Plaintiffs multiple Federal crimes, including sedition, insurrection, obstruction of an official proceeding, trespassing, conspiracy and aiding and abetting, and an unfitness to perform the duties of an office or employment for profit, including being participants in deadly, violent, insurrectionist, seditious, domestic terrorist acts.[3]  Plaintiffs claim that Defendant callously exposed them

---

[3]     Accusations of criminal conduct or activities that would tend to injure a person in his or her business or profession are defamatory per se. *MacDonald v. Jacobs*, 171 N.H. 668, 201 A.3d 1253, 1259 (2019) ("The defamatory statements made by the defendant in this case include assertions that the plaintiffs are liars and sociopaths, have a deceptive rental business, attempted to kill her, engaged in witness tampering, stalked her, vandalized her property, drive drunk, use illegal drugs, and are alcoholics.") (cited in *de Laire v. Voris*, 2021 WL 6883389, at * 5 (D. N.H. 2021)); *see id Martin v. Mooney*, 448 F.Supp.3d 72, 84-85 (D. N.H. 2020) (statement of employer that employee was terminated because of "pattern of unprofessional conduct" was defamatory per se); *Danboise v. Espinola*, 2010 WL 11437203, at * 2 (N.H. 2010) ("in pamphlets that he sent to the plaintiffs' friends and relatives, [defendant] accused the plaintiffs of cheating him"); *Jones v. Walsh*, 107 N.H. 379, 222 A.2d 830, 831 (1966) ("If one falsely and without a privilege to do so publishes spoken words which impute to another conduct constituting a criminal offense chargeable by indictment or information either at common law or by statute and of such a kind as to be characterized as morally reprehensible, he is liable to the person to whom such wrong doing is imputed without proof of special damage.").

to threats of death, bodily injury and emotional harm from persons hell-bent on exposing those who stormed the United States Capitol on January 6; that Defendant exposed Plaintiffs to career and reputational risk, including the hazard of losing business and the trust of family members and clients; and that Defendant's Statements rendered Plaintiffs odious, ridiculous and unfit to fulfill the duties of their profession as security specialists. Statements 1 – 41 in paragraph 2 of Plaintiffs' amended complaint may be grouped into the following categories:

| *Accusations of Criminal or Illegal Conduct, Including Insurrection, Sedition, Trespassing, Assault, Death Threats and Conspiracy* | *Activities That Tend to Injure Plaintiffs In Their Business and Profession or Morally Reprehensible Conduct* |
|---|---|
| Statements 1, 2, 3, 5, 6, 12, 14, 16, 19, 22, 23, 28, 31, 32, 33, 34, 37, 38, 39 and 40 | Statements 1, 2, 3, 4, 5, 6, 8, 9, 10, 11, 12, 13, 14, 15, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 35, 36 and 41 |

Plaintiffs allege that Defendant published the false Statements without privilege of any kind. [*Am. Compl., ¶ 12*].  Plaintiffs assert that the Statements are materially false because Plaintiffs were not involved in any way in the recruitment, planning, coordination or execution of the January 6 attacks on the United States Capitol and because Plaintiffs did not plan, undertake, conspire with anyone, or aid and abet in insurrection or sedition or any other crime.  Plaintiffs proffer seventeen (17) independent factual bases for why Defendant's Statements are materially false. [*Am. Compl., ¶¶ 13*].

## C.    Actual Malice

In support of their claim for enhanced compensatory damages, Plaintiffs allege that Defendant published the Statements with actual malice. [*Am. Compl., ¶ 17*]. Plaintiffs offer six (6) inter-related factual bases.  First, given Plaintiffs' stature and the

total mix of information available to Defendant as of June 21, 2021, Defendant's scandalous Statements about Plaintiffs' involvement in efforts to overthrow the United States Government were so inherently improbable that only a reckless person would have put the Statements in circulation. [*Am. Compl., ¶ 17(a)*].  Second, Plaintiffs point to facts that plausibly show that "Abramson and his co-conspirators knew their statements about Plaintiffs were false." [*Am. Compl., ¶ 17(b)*].  Defendant and his co-conspirators knew that there were obvious gaps in their own narrative.  For instance, a solitary photograph of Luelsdorff in a room at the Willard Hotel did not mean that Luelsdorff knew anything or participated in any way in the events of January 6, 2021 or any coup to overthrow the "USG".  In furtherance of a wholly contrived preconceived narrative, Defendants and his co-conspirators filled in the gaps with imagined falsehoods and fabricated implications about Lewis, Luelsdorff and 1AP.  From a lone still-shot of Luelsdorff, Defendant concocted and projected a fantastical story about Plaintiffs' participation in insurrection and sedition and conspiracy with Rudolph Giuliani ("Giuliani"), John Eastman ("Eastman") and former President Trump.  Third, Defendant purposefully evaded the truth.  By June 2021, when Defendant began to publish the Statements, the FBI had already arrested/detained hundreds of people involved in the attacks on the Capitol. Although hundreds were investigated and charged with crimes, neither Lewis' picture, Luelsdorff's picture nor the picture of any other 1AP member or employee ever appeared on the FBI's website.  These facts alone should have informed Defendant, an attorney, that the Statements were categorically false and that the FBI had evidence and was satisfied that Lewis, Luelsdorff and 1AP were not involved in the attacks on the Capitol. Even CNN recognized that no one affiliated with 1AP had been charged by the Justice

Department in connection with the January 6 attacks on the Capitol. [https://www.cnn.com/2021/11/24/politics/first-amendment-praetorian-january-6-subpoena/index.html]. [*Am. Compl., ¶ 17(c)*].   Fourth, Defendant's Statements were intentionally extreme and outrageous fabrications.  The extreme and outrageous nature of the Statements gives rise to an inference of actual malice. Defendant's decision to promote baseless, sensational and scandalous narratives about Plaintiffs was part of a reckless policy to profit from intentional falsehoods. [*Am. Compl., ¶ 17(d)*].   Fifth, the amended complaint shows that Defendant had (and has) both financial and ideological motives to defame Plaintiffs.   The Statements were intended to inflict injury through knowing and intentional falsehoods. [*Am. Compl., ¶ 17(e)*].   Sixth, Defendant brazenly republished the false and defamatory Statements about Plaintiffs **after** this lawsuit was filed and he was notified that Plaintiffs contended that the statements were false and defamatory.  The republications, which continue on Twitter to this very day, are evidence that Defendant acted with reckless disregard for the truth. [*Am. Compl., ¶¶ 2, 17(g)*].

In paragraphs 18 and 19 of the amended complaint, Plaintiffs allege with specificity that they suffered special damages and actual injuries as a result of Defendant's publication and republication of the false and defamatory Statements. Plaintiffs claim total damages in the sum of $25,000,000. [*Am. Compl., ¶¶ 18, 19, 20*].

## III.   STANDARD OF REVIEW

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible when the plaintiff pleads "factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   In considering a motion to dismiss under Rule 12(b)(6), it is axiomatic that the Court accepts as true the well-pleaded factual allegations of the complaint, draws all reasonable inferences therefrom in the plaintiffs' favor, and determines whether the complaint, so read, sets forth facts sufficient to justify recovery on any cognizable theory. *Karpinski v. Union Leader Corporation*, 2019 WL 32003144, at * 3 (D. N.H. 2019) (Barbadoro, J.) (citation and quotation omitted).  In ruling on a motion to dismiss, the Court can consider judicially noticed documents, matters of public record, documents central to the plaintiffs' claim or sufficiently referred to in the complaint. *Id.*

## IV.  ANALYSIS

### A.  COUNT I - Defamation

To prove a claim for defamation under New Hampshire law when the plaintiff is not a public figure,[4] a plaintiff must "'show that the defendants[s] failed to exercise reasonable care in publishing a false and defamatory statement of fact about [the plaintiff] to a third party.'" *Automated Transactions, LLC v. Am. Bankers Assoc.*, 172 N.H. 528, 216 A.3d 71, 77 (2019) (quoting *Cluff-Landry v. Roman Catholic Bishop of Manchester*, 169 N.H. 670, 156 A.3d 147, 154 (2017)).   "Any written words which directly or indirectly charge a person with a crime, or which tend to injure his reputation

---

[4]       In paragraph 1 of the amended complaint, Plaintiffs expressly allege that they are "private individuals".   In paragraph 4 of the amended complaint, Plaintiffs expressly allege that they were thrust into the public controversy surrounding the events of January 6 **by the Defendant and his co-conspirators**.   The factual issues relating to Plaintiffs' status as private individuals or limited purpose public figures cannot be resolved on a motion to dismiss without evidence.

in any other way, or to expose him to public hatred, contempt, or ridicule are defamatory. Such words, if published without lawful excuse or justification constitute a libel; and the person in respect to whom they are written may maintain an action for them without either alleging or proving special damages." *Chagnon v. Union Leader Corp.*, 103 N.H. 426, 174 A.2d 825, 830 (1961) (quotation omitted).   In considering whether a plaintiff's complaint states a cause of action for defamation, "the words used in the articles are to be considered together with their context and must be taken in the sense in which they are reasonably understood under the circumstances by persons familiar with the language used." *Id.*   Importantly, it is not necessary that the words used charge the plaintiff with a crime in a technical or direct manner.   A mere insinuation, the putting of words in the form of a question, a mere expression of opinion or of a suspicion or belief may be actionable.   The test is whether the words used, taken in the sense in which they are reasonably understood under the circumstances by persons familiar with the language used, are capable of the defamatory construction of accusing the plaintiff with a criminal offense of the type previously described. *Jones*, 107 N.H. at 380, 222 A.2d at 831-832 (statement that "you are not ringing the cash up in the cash register" implied that plaintiff was guilty of the crime of embezzlement) (citations and quotations omitted).

The amended complaint in this case sufficiently states a claim of defamation.   It identifies the substance of the false Statements, the person making the Statements, and when and to whom they were made.

## 1. *Each Statement Was Published By The Defendant or His Agents*

Paragraph 2 of Plaintiffs' amended complaint specifically alleges *who* published each false Statement.   Each Statement at issue in this case was either published by

Defendant or by a co-conspirator.[5]

In his motion to dismiss, Defendant concedes that he published "some of the Statements". [*ECF No. 19 ("Motion to Dismiss"), p. 1*].  Accordingly, whether and to what extent Defendant was involved in the publication and republication of the Statements is an issue of fact for the Jury.  Defendant has no immunity while he is engaged in a conspiracy with other Twitter users.

## 2.   *Each Statement Is Alleged To Be False*

As noted above, to be actionable, a statement must be both "false and defamatory."  At the motion to dismiss stage in a defamation case, "a court must accept as false any statements which the Complaint alleges to be false." *Goulmamine v. CVS Pharmacy, Inc.*, 138 F.Supp.3d 652, 659 (E.D. Va. 2015) (citing *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993)).  "Because the Court presumes falsity at this stage, the key actionability question … is whether the statements referenced in the Complaint are defamatory." *Goulmamine*, 138 F.Supp.2d at 659.

Plaintiffs' amended complaint repeatedly emphasizes that the Statements are not only false, but "materially false". [*Am. Compl., ¶¶ 2, 3, 4, 5, 12, 13, 14, 15, 16, 17, 18, 19, 22, 23, 28, 29*].  As to the element of falsity, "[t]he common law of libel takes but one approach ... regardless of the form of the communication.  It overlooks minor

---

[5]    It is hornbook law that so long as a conspiracy continues, each co-conspirator is liable for the tortious acts of the other committed in furtherance of the unlawful project. *Pinkerton v. United States*, 328 U.S. 640, 646-647 (1946); *McFarland v. McFarland*, 684 F.Supp.2d 1073, 1085 (N.D. Iowa 2010) ("Since allegations of a civil conspiracy have been properly pleaded here, each co-conspirator is responsible for any action in furtherance of the conspiracy performed by other conspirators"); *In re Orthopedic Bone Screw Products Liability Litigation*, 1997 WL 186325, at * 17 (E.D. Pa. 1997) ("In most states, a conspirator is held vicariously liable for the acts of coconspirators that are undertaken in furtherance of the conspiracy.").

inaccuracies and concentrates upon substantial truth." *Masson v. New Yorker Magazine*, 501 U.S. 496, 516-517 (1991).  "Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified." *Id.*  Therefore, "[a] statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Id.* at 517 (quoting R. Sack, *Libel, Slander, and Related Problems* 138 (1980)).

In paragraph 13 of the amended complaint, Plaintiffs state multiple facts that explain why the Statements are materially false.  Comparing Defendant's Statements to the truth alleged in the amended complaint, it is beyond peradventure that the Statements are materially false. *Pollack v. Goodwin & Associates Hospitality Services, LLC*, 2021 WL 3853279, at * 11 (D. N.H. 2021) ("Plaintiffs have sufficiently alleged facts from which falsity can be reasonably inferred."); *compare Nunes v. W.P. Company*, 2021 WL 3550896, at * 4 (D. D.C. 2021) ("A reasonable juror could conclude that there is a material difference between stating that Nunes had made a claim supported by evidence (that the Obama administration had undertaken intelligence activities related to individuals involved in the Trump campaign) and stating that Nunes had made a baseless claim (that the Obama administration had wiretapped Trump Tower).  A reasonable juror could therefore conclude that the article was materially false because it stated that Nunes had made such a baseless claim (when he had not)."); *see also Pan Am. Systems, Inc. v. Atlantic Northeast Rails and Ports, Inc.*, 804 F.3d 59, 73 (1st Cir. 2015) ("All that is left to do then is compare the challenged defamatory comment … with what we take as true at this stage of the case (that plaintiffs never lost railcars carrying hazardous materials, even temporarily).  And having done this, we conclude that a sensible juror could find

that a more precise explication of the TIH issue would have improved plaintiffs' public reputation—meaning we must vacate the grant of summary judgment on this article."); *Bustos v. A&E Networks*, 646 F.3d 762, 767 (10th Cir. 2011) (Gorsuch, J.) ("Comparing the challenged defamatory statement (membership in the Aryan Brotherhood) to the truth (conspiring with and aiding and abetting the Aryan Brotherhood), we cannot see how any juror could find the difference to be a material one—that is, likely to cause a reasonable member of the general public to think significantly less favorably of Mr. Bustos").

In his motion to dismiss, Defendant concedes that Plaintiffs allege material falsity with regard to "some of the Statements". [*Motion to Dismiss, p. 1*].   Accordingly, whether and to what extent the Statements are materially false is an issue of fact for the Jury.

**3.**      ***Each Statement Is Defamatory***

The relative responsibilities of the judge and jury in a defamation case were articulated a century ago by the United States Supreme Court in *Washington Post v. Chaloner*, 250 U.S. 290 (1919):

> "A publication claimed to be defamatory must be read and construed in the sense in which the readers to whom it is addressed would ordinarily understand it. … When thus read, if its meaning is so unambiguous as to reasonably bear but one interpretation, it is for the judge to say whether that signification is defamatory or not.  If, upon the other hand, it is capable of two meanings, one of which would be libelous and actionable and the other not, it is for the jury to say, under all the circumstances surrounding its publication, including extraneous facts admissible in evidence, which of the two meanings would be attributed to it by those to whom it is addressed or by whom it may be read."

*Id.* at 293 (quoting *Commercial Pub. Co. v. Smith*, 149 F. 704, 706-707 (6th Cir. 1907)). Thus, the initial issue calls for a legal determination for the court to make; that is, whether a statement is capable of defamatory meaning.  Once the threshold inquiry of

whether the statement is capable of a defamatory meaning has been resolved in the affirmative, the case must be submitted to a Jury.  The Jury will then determine whether the statement was understood to contain the defamatory meaning alleged. *White v. Fraternal Order of Police*, 909 F.2d 512, 518 (D.C. Cir. 1990) ("Ultimately, then, '[i]t is only when the court can say that the publication is not reasonably capable of any defamatory meaning and cannot be reasonably understood in any defamatory sense that it can rule as a matter of law, that it was not libelous.'") (quotation omitted).

Here, Defendant's words are capable of a defamatory meaning.  Whether the Statements were understood to contain the defamatory meaning alleged by Plaintiffs is a matter for the Jury. *See, e.g., Chagnon*, 103 N.H. at 436, 447, 174 A.2d at 832, 839 ("It has been the rule in New Hampshire for a century that where words are ambiguous the testimony of hearers or readers thereof as to how they understood them can be received … These articles were understood by some of the potential 25,000 to 30,000 readers of the Sunday News in the Manchester area, the Union Leader has 60,000 to 80,000 such readers, to have the following meanings: Chagnon 'tried to cheat the city; tried to put something over.'  He 'had taken advantage of his brother's position on the Highway Department and attempted to pass trees that might not meet specifications.'  He 'was being dishonest.'  He 'was a cheat, he was trying to cheat the city.  It looked like the city was being taken.'  These articles were widely read and provoked discussion at City Hall, a club, in stores, on the street.") (citations omitted).

### 4.     *Defendant's Statements Are Not Pure Opinion*

Libelous speech is not protected by the First Amendment.  To be clear, there is "no constitutional value in false statements of fact." *Gertz*, 418 U.S. at 349-350; *id. Bose*

*Corp. v. Consumers Union of the United States, Inc.*, 466 U.S. 485, 504 (1984) ("there are categories of communication and certain special utterances to which the majestic protection of the First Amendment does not extend because they 'are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality … Libelous speech has been held to constitute one such category") (quoting *Chaplinsky*, 315 U.S. at 572)).

While the right of free speech under the First Amendment provides absolute protection to statements which are "purely opinions", *Gertz*, 418 U.S. at 339-340, statements clothed as "opinion" which imply that they are based on undisclosed, defamatory facts are not protected.  In *Pollock*, the plaintiffs alleged the following in support of their defamation claim:

> "during a group conference call on June 8, 2020, Goodwin told meeting attendees that plaintiffs had left the company to start their own business, and stated: 'we have an agreement, a contract that everyone is well aware of.'  Goodwin then discussed integrity and honesty, 'suggesting that Plaintiffs do not have integrity and are not honest,' and emphasized his expectation that recruiters 'who sign the agreement will 'hold up their end of the bargain,' implying clearly that the Plaintiffs have not.'  Finally, Goodwin boasted about his company's success in litigation enforcing its agreements and vowed to protect Goodwin Recruiting. Plaintiffs say that Goodwin's message was clear; he 'conveyed to the attendees his view that Plaintiffs had breached their agreement by starting their own recruiting business,' and 'wrongfully implied that Plaintiffs had engaged in illegal activity or a breach of an agreement.'"

2021 WL 3853279 at * 10.  The defendant argued that his statements were pure opinions. Plaintiffs claimed that "Goodwin's statements imply the existence of a defamatory fact as the basis for his opinion: that plaintiffs had breached their noncompete agreements with defendants, and unethically started their own recruiting business."  Given the context, the Court in *Pollock* held that "Goodwin's statements might be construed to imply that

plaintiffs unethically breached their contractual agreements with defendants, and that defendants intended to take legal action in response. *See Thomson v. Cash*, 119 N.H. 371, 402 A.2d 651, 653 (1979) (whether words susceptible of being construed to imply fraud or wrongdoing were used in "the defamatory sense is a question of fact for the jury"). Viewing the allegations in the light most favorable to plaintiffs, the *Pollock* Court found that "at this early stage, it appears that plaintiffs have passably stated a viable defamation claim, and defendants' motion to dismiss is denied." 2021 WL 3853279 at * 11.

None of the Statements in this case are pure opinions.   In the context of a subscription newsletter and Twitter feed written by an attorney (an officer of the court), the Statements were offered as "**PROOF**" of the matters asserted.   Defendants represented that the Statements were fully-sourced and based on substantial "evidence". The Statements assert or imply that Plaintiffs participated in a plot to overthrow the United States Government.   "An important criterion for distinguishing statements of opinion from statements of fact is verifiability, *i.e.*, whether the statement is capable of being proven true or false." *Automated Transactions*, 172 N.H. at 533, 216 A.3d at 78 (citations omitted).   Here, Defendant represented that his Statements had been verified.   Indeed, he represented that he had been cited by the J6 Committee.   Defendant identifies specific individuals, what these individuals did and intended to do, when they acted in furtherance of the plan, where they were, and how they perpetrated the scheme. Defendant utilized a photograph of Luelsdorff to imply that Plaintiffs conspired with Giuliani and Eastman, when, in truth, Luelsdorff never spoke with Giuliani and Eastman and was in the "war room" for less than a minute.   The Statements can be proven false by

16

evidence which, if adduced, would show that the putative events never happened and Plaintiffs never plotted or participated in any seditious activities.

### 5.    *Defendant's Statements Were Made With Actual Malice*

Over 58 years ago, the United States Supreme Court held that the First Amendment requires a public official advancing a defamation claim to show by clear and convincing evidence that the defendant acted with actual malice:  that is, with knowledge of the statement's falsity or reckless disregard for its truth. *New York Times v. Sullivan*, 376 U.S. 254, 279-280 (1964).[6]

### a.    *Plaintiffs Are Not Public Figures*

In *Gertz,* a case decided after a full trial on the merits, the Supreme Court identified two categories of public figures to whom the *New York Times* standard applies. The first category is the "general purpose" public figure – an individual who has achieved "such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts."  The second, more common, type of public figure is the "limited purpose" public figure.  The *Gertz* Court described this type as a person who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues.  In either case such persons assume special prominence in the resolution of public questions." 418 U.S. at 351.

In *Gertz,*  the Supreme Court found that the plaintiff was *not* a public figure.  The evidence showed that the plaintiff had long been active in community and professional affairs.   He served as an officer of local civic groups and of various professional

---

[6]      The presumption is that a plaintiff is a private individual, subject to the Defendant's burden of proving that the plaintiff is a public figure. *Foretich v. Capital Cities/ABC, Inc.*, 37 F.3d 1541, 1533 (4th Cir. 1994).

organizations.  He published several books and articles on legal subjects.  Although he was consequently well known in some circles, he had achieved no general fame or notoriety in the community.  None of the prospective jurors called at the trial had ever heard of petitioner prior to this litigation, and respondent offered no proof that this response was atypical of the local population.  The Supreme Court rejected the argument that "a citizen's participation in community and professional affairs rendered him a public figure for all purposes.  Absent clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed a public personality for all aspects of his life.  It is preferable to reduce the public-figure question to a more meaningful context by looking to the nature and extent of an individual's participation in the particular controversy giving rise to the defamation.

> In this context it is plain that petitioner was not a public figure.  He played a minimal role at the coroner's inquest, and his participation related solely to his representation of a private client.  He took no part in the criminal prosecution of Officer Nuccio.  Moreover, he never discussed either the criminal or civil litigation with the press and was never quoted as having done so.  He plainly did not thrust himself into the vortex of this public issue, nor did he engage the public's attention in an attempt to influence its outcome."

*Gertz*, 418 U.S. at 351-352.

Here, Plaintiffs allege that they are private individuals.  At this stage of the case, there is no evidence before the Court to suggest otherwise.  Defendant concedes that Plaintiff has adequately alleged that Defendant published the Statements negligently.  If the Court were to determine that all Plaintiffs are public figures, the amended complaint suffices to allege actual malice.

b.     ***Plaintiffs Plausibly Allege Actual Malice***

Actual malice is a "wholly subjective" standard. *Levesque v. Doocy*, 560 F.3d 82, 90 (1ˢᵗ Cir. 2009).  "The existence of actual malice may be shown in many ways.  As a general rule, any competent evidence, either direct or circumstantial, can be resorted to, and all the relevant circumstances surrounding the transaction may be shown, provided they are not too remote, including threats, prior or subsequent defamations, subsequent statements of the defendant, circumstances indicating the existence of rivalry, ill will, or hostility between the parties, facts tending to show a reckless disregard of the plaintiff's rights, and, in an action against a newspaper, custom and usage with respect to the treatment of news items of the nature of the one under consideration." *Herbert*, 441 U.S. at 164 fn. 12.  Typically, actual malice is shown by an "accumulation" of evidence and inferences. *Celle v. Filipino Reporter Enters., Inc.*, 209 F.3d 163, 183 (2ⁿᵈ Cir. 2000) (in order to infer actual malice, the facts alleged "should provide evidence of 'negligence, motive and intent such that *an accumulation of the evidence and appropriate inferences* supports the existence of actual malice.'") (quoting *Bose Corp. v. Consumers Union of the United States*, 692 F.2d 189, 196 (1ˢᵗ Cir. 1982) (emphasis added in original)); *Goldwater v. Ginzburg*, 414 F.2d 324, 342 (2ⁿᵈ Cir. 1969) ("There is no doubt that evidence of negligence, of motive and of intent may be adduced for the purpose of establishing, by cumulation and by appropriate inferences, the fact of a defendant's recklessness or of his knowledge of falsity.").

Paragraph 17 of Plaintiffs' amended complaint states multiple facts, which, accepted as true, suffice to show Defendant's actual malice:

- Under the circumstances, the Statements that Plaintiffs would plot to overthrow the United States Government are so inherently improbable that only a reckless person would have put the Statements in circulation. [*Am. Compl., ¶ 17(a)*]

  *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968) ("Professions of good faith will be unlikely to prove persuasive, for example, … when the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation."); *US Dominion, Inc. v. Powell*, 554 F.Supp.3d 42, 63 (D. D.C. 2021) ("a reasonable juror could conclude that the existence of a vast international conspiracy that is ignored by the government but proven by a spreadsheet on an internet blog is so inherently improbable that only a reckless man would believe it."); *Stern v. Cosby*, 645 F.Supp.2d 258, 279 (S.D.N.Y. 2009) ("printing a claim that Birkhead and Stern had sex would be a way to make it to the top of the bestseller list, and a reasonable jury could find that Cosby ignored the inherently improbable nature of the Statement in her zeal to write a blockbuster book").

- Based upon documents in his possession, Defendant knew the Statements were false. [*Am. Compl., ¶ 17(b)*].

  *See Nunes v. WP Company, LLC*, 2021 WL 3550896, at * 5 (D. D.C. 2021) ("A newspaper's *own* prior (and correct) reporting that is inconsistent with its later (and incorrect) reporting could certainly give the paper reason to seriously doubt the truth of its later publication").

- Defendant fabricated the Statements.  They are a product of his imagination.  From a lone still-shot of Luelsdorff, for instance, Defendant projected a fantastical story about Luelsdorff's participation in insurrection and sedition and conspiracy with Giuliani, Eastman and President Trump. [*Am. Compl., ¶ 17(b)*]

  *St. Amant*, 390 U.S. at 732 (1968) ("Professions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant [or] is the product of his imagination"); *Sindi v. El-Moslimany*, 896 F.3d 1, 16 (1st Cir. 2018) (the "gross fabrication" of false facts is "powerful evidence of actual malice").

  *See Lemelson v. Bloomberg, L.P.*, 903 F.3d 19, 25 (1st Cir. 2018) ("actual malice can be shown where the publisher is in possession of information that seriously undermines the truth of its story, or deliberately decides not to acquire information that would confirm the probable falsity of its report").

- Under the circumstances alleged in the amended complaint, including that Plaintiffs were never charged by the FBI or DOJ with any crime related to the events of January 6, 2021, Defendant entertained serious doubts as to the veracity of the Statements and purposefully avoided the truth. [*Am. Compl., ¶ 17(c)*]

  *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 682, 692 (1989) (clear evasion from the truth constitutes actual malice).

- Defendant brazenly republished the false and defamatory Statements about Plaintiffs, including the photograph of Luelsdorff in a room with Giuliani and Eastman, after Plaintiffs filed this action and Defendant was notified that Plaintiffs contended that the Statements were false and defamatory. [*Am. Compl., ¶ 17(g)*].

  *Nunes v. Lizza*, 12 F. 4th 890, 901 (8th Cir. 2021) ("'Republication of a statement after the defendant has been notified that the plaintiff contends that it is false and defamatory may be treated as evidence of reckless disregard.' Restatement (Second) of Torts § 580A cmt. d (Am. L. Inst. 1977). Lizza tweeted the article in November 2019 after Nunes filed this lawsuit and denied the article's implication. The pleaded facts are suggestive enough to render it plausible that Lizza, at that point, engaged in 'the purposeful avoidance of the truth.'"); *Bertrand v. Mullin*, 846 N.W.2d 884, 900-901 (Iowa 2014) ("We reiterate that the actual malice element does not allow a defendant to purposefully avoid discovering the truth. Moreover, we acknowledge actual malice could be derived from the actions of a candidate in continuing to run an advertisement after being informed of a false implication in the advertisement.").

In addition to these allegations, Plaintiffs also point out that:

- Defendant had financial and ideological motives for the defamation. [*Am. Compl., ¶¶ 17(c), (e), (h)*]

  *See Bose Corp.*, 692 F.2d at 196 (listing "motive" as one of the facts on which a complaint "should provide evidence" to allow an inference of actual malice).

- Defendant's animosity, bias, prejudice and desire to harm motivated him to publish the intentionally false Statements and defamatory implications about Plaintiffs at issue in this case. Defendant intended to inflict harm through knowing or reckless falsehoods. [*Am. Compl., ¶ 17(e)*].

21

*Don King Productions, Inc. v. Walt Disney Co.*, 40 So.3d 40, 45 (Fla. 4th DCA 2010) ("[a]n intention to portray a public figure in a negative light, even when motivated by ill will or evil intent, is not sufficient to show actual malice unless the publisher intended to inflict harm through knowing or reckless falsehood.") (citing *Garrison v. Louisiana*, 379 U.S. 64, 73 (1964)); *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 315 fn. 19 (5th Cir. 1995) ("[E]vidence of ill will can often bolster an inference of actual malice.").

- Defendant exhibited no journalistic integrity in writing, editing, and publishing the false narratives about Plaintiffs.  He did not seek the truth or report it.  He betrayed the truth to sensationalize the news for self-glory, profit and politics.  Rather than minimize harm to Plaintiffs, Defendant set out to inflict maximum damage on Plaintiffs in order to harm Plaintiffs' business and reputation.
[*Am. Compl., ¶ 17(f)*]

  *See Gilmore v. Jones*, 37 F.Supp.3d 630, 671 (W.D. Va. 2019) (a defendant's failure to observe journalistic standards, although not determinative, is relevant to the actual malice inquiry).

- Defendant never bothered to reach out to Plaintiffs for comment.

  *See Lemelson*, 903 F.3d at 24 ("the complaint concedes that, before publishing its story, Bloomberg reached out repeatedly to secure an interview with Lemelson and to otherwise solicit his comment, and then published his denial of the claim that he was under investigation.  That conduct tends to undercut any inference of actual malice.").

In sum, at this stage of the proceeding, when the Plaintiffs' amended complaint is viewed in the light most favorable to them and when all reasonable inferences are drawn in their favor, as they are required to be, there is no question that Plaintiffs have alleged actual malice.

**B.    COUNT II – Defamation By Implication**

"[D]efamation can occur by innuendo as well as by explicit assertion." *De Laire v. Voris*, 2021 WL 3550041, at * 3 (D. N.H. 2021) (quoting *Brown v. Hearst Corp.*, 54 F.3d 21, 25 (1st Cir. 1995) (noting defamatory nature of television broadcast suggesting man murdered his wife without actually accusing him of murder); *Soni v. Wespiser*, 239

F.Supp.3d 373, 389-390 (D. Mass. 2017) (statements that plaintiff filed prior lawsuits, while true, implied defamatory meaning that plaintiff was litigious and filed frivolous lawsuits)).

In the amended complaint, Plaintiffs allege that Defendant and his co-conspirators purposefully juxtaposed a series of facts so as to imply a defamatory connection between them.  In addition, Defendant also intentionally omitted facts in a way that intentionally conveyed a false meaning and that rendered the challenged Statements defamatory.  For instance, Defendant repeatedly published a photograph of Luelsdorff in a room with Giuliani, Eastman and others, and used the photograph and Luelsdorff's momentary presence in the room as "evidence" that Plaintiffs were involved in a conspiracy to commit sedition and insurrection.  The use of "click-bait" headlines and incendiary phrases, photographs of Lewis and Luelsdorff, discussions of Plaintiffs' and others' alleged involvement in criminal activity on January 6, 2021, including the attacks on the Capitol building, and the manner in which Defendant and his co-conspirators presented the discussion of the so-called "December Conspiracy", "Insurrection Week" and "Insurrection Day" demonstrate that Defendant intended or endorsed the defamatory implication of the Statements.

Plaintiffs have alleged all the elements of a claim of defamation by implication. *See Faigin v. Kelly*, 1998 WL 1988946, at * 4 (D. N.H. 1998) ("in an action for defamation by implication, the focus is not on the explicit statements but rather on the implicit underlying defamatory inference, which may be a malicious calculated falsehood, in which case the *Times* malice standard would be satisfied.").

**C.**     <u>**COUNT III – False Light Invasion of Privacy**</u>

In *Mansfield v. Arsenault*, the New Hampshire Supreme Court dodged the question whether New Hampshire recognizes false light as a cause of action. 2021 WL 72370, at * 2 (N.H. 2021).  The Court found that "if we apply the definition of false light in the Restatement (Second) of Torts § 652E, we conclude that the plaintiffs have failed to adequately state a claim for relief." *Id.*

Plaintiffs contend that New Hampshire would recognize a cause of action for false light invasion of privacy, *see Hamberger v. Eastman*, 106 N.H. 107, 206 A.2d 239, 242 (1964), and that the elements of the claim would be those set forth in § 652E of the Restatement.

Plaintiffs' amended complaint clearly alleges each element of a cause of action for false light.

**D.**     ***Plaintiff Plausibly Alleges A Conspiracy To Defame***

New Hampshire recognizes a cause of action for civil conspiracy, which is "a combination of two or more persons by concerted action to accomplish an unlawful purpose, or to accomplish some purpose not in itself unlawful by unlawful means." *Jay Edwards, Inc. v. Baker*, 130 N.H. 41, 534 A.2d 706, 709 (1987) (quoting 15A C.J.S. Conspiracy § 1(1), at 596 (1967)). Plaintiffs allege that Defendant engaged in a conspiracy to commit defamation and false light invasion of privacy.  Because Plaintiffs have stated viable claims under both theories against Defendant, their conspiracy claim necessarily survives.

## CONCLUSION

For the reasons stated above and at the hearing of this matter, Plaintiffs respectfully request the Court to DENY Defendant's motion.

DATED:        September 2, 2022

ROBERT PATRICK LEWIS
PHILIP A. LUELSDORFF
1AP, INC.

By Their Attorneys

By:   */s/ Steven S. Biss*
          Steven S. Biss (VSB # 32972)
          300 West Main Street, Suite 102
          Charlottesville, Virginia 22903
          Telephone:  (804) 501-8272
          Facsimile:  (202) 318-4098
          Email:  stevenbiss@earthlink.net
          (*Admitted Pro Hac Vice*)

By:   */s/ Bryan K. Gould*
          Bryan K. Gould (NH Bar # 8165)
          gouldb@cwbpa.com
          CLEVELAND, WATERS AND BASS, P.A.
          Two Capital Plaza, 5th Floor
          P.O. Box 1137
          Concord, NH 03302-1137
          Telephone:  603-224-7761
          Facsimile:  603-224-6457

          *Counsel for the Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 2, 2022 a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will send notice of electronic filing to counsel for the Defendant and all interested parties receiving notices via CM/ECF.

By:   */s/ Steven S. Biss*
      Steven S. Biss (VSB # 32972)
      300 West Main Street, Suite 102
      Charlottesville, Virginia 22903
      Telephone:  (804) 501-8272
      Facsimile:  (202) 318-4098
      Email:  stevenbiss@earthlink.net
      (*Admitted Pro Hac Vice*)

By:   */s/ Bryan K. Gould*
      Bryan K. Gould (NH Bar # 8165)
      gouldb@cwbpa.com
      CLEVELAND, WATERS AND BASS, P.A.
      Two Capital Plaza, 5th Floor
      P.O. Box 1137
      Concord, NH 03302-1137
      Telephone:  603-224-7761
      Facsimile:  603-224-6457

      *Counsel for the Plaintiff*