## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

---------------------------------------------------------

ROBERT PATRICK LEWIS,       :
PHILIP A. LUELSDORFF,     :
1AP, INC.                    :
                        :
      Plaintiffs,           :
                        :
v.                        :     Case No. 1:22-cv-00126-PB
                        :
                        :
SETH ABRAMSON           :
                        :
      Defendant.          :

---------------------------------------------------------

## DEFENDANT SETH ABRAMSON'S SUPPLEMENTAL BRIEF IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendant, Seth Abramson, submits this Supplemental Brief ("Brief") in support of his Motion to Dismiss Plaintiffs' Amended Complaint. This Brief specifically addresses the First Circuit Court's October 25, 2022, ruling in *Cheng v. Neumann*, 51 F. 4th 438 (2022), which further addresses Plaintiffs' claims for defamation, defamation by implication, and false light invasion of privacy, and how *Neumann* is applicable to the statements made by Abramson as identified in Plaintiff's Amended Complaint, itemized as numbers 1, 2, 3, 4, 5, 6, 8, 9, 10, 11, 12, 13, 14, 16, 17, 18, 19, 20, 24, 25, 26, 29, 34, 35, 37, 38, 39, 40, and 41 ("Statements").[1]

### I.  Summary of *Cheng v. Neumann*'s Underlying Facts

Epoch Group, Inc. and its vice president and co-founder, Dana Cheng ("Cheng") (collectively, "plaintiffs"), brought suit against Maine People's Alliance d/b/a Beacon and its reporter, Dan Neumann ("Neumann") (collectively, "defendants"), for

---

[1] Mr. Abramson does not adopt Statements Nos. 7, 15, 21, 22, 23, 27, 28, 30, 31, 32, 33, or 36, as these statements are made by unknown author(s) who are wholly unrelated to Mr. Abramson.

defamation, false light invasion of privacy, and intentional and negligent infliction of emotional distress. *Id.* at 441. Cheng alleged that Neumann's coverage of her presentation at a panel in Windham, Maine which was co-sponsored by the Maine Republican Party and the Christian Civic League was defamatory and constituted false light invasion of privacy and intentional and negligent infliction of emotional distress. Defendants moved to dismiss and prevailed. *Id.*

The coverage of the event at issue was contained in an article authored by Neuman entitled "Maine GOP hosts speaker present at Jan. 6 Capitol assault" (the "Article"). *Id.* at 442. The Article identified Cheng as a far-right media personality and referenced her statements that she was among Donald Trump supporters at the U.S. Capitol riot on January 6, 2021 ("January 6"). *Id.* The Article stated that *The Epoch Times* was a right-wing newspaper and media company and that Cheng was invited to speak about the threats posed to Americans by the Chinese government. *Id.* Cheng was also mentioned as stating on a Denver radio program that she was present at the Capitol when it was breached but was not at the front of the crowd and did not enter the building. *Id.* The Article also detailed that Cheng made statements that the violence of January 6 was committed by anti-fascist infiltrators, that *The Epoch Times* consistently questioned election results, promoted anti-vaccine misinformation as well as "an array of pro-Trump conspiracy theories such as QAnon, leading the New York Times to call the outlet a 'global-scale misinformation machine.'" *Id.* at 442.

The Article offered links to the sources upon which it based its statements. A link to a recording of Cheng on the Denver radio show was included, providing the reader access to Cheng's statements. *Id.* Cheng appeared on the show again as a repeat guest on

January 7, 2021. *Id.* The Article also included a link to the *New York Times* article calling the outlet a "global-scale misinformation machine." *Id.* at 447. The First Circuit held that the plaintiffs failed to plausibly allege defection as to the Article as a whole and each of the individual challenged statements for the reasons discussed below. *Id.* at 444.

## II.  Analysis Used by the First Circuit in *Cheng v. Neumann*

The First Circuit first examined the plaintiffs' defamation claims and completed its analysis using two dispositive First Amendment principles, (1) falsity of statements published by a media defendant involving matters of public concern and (2) statements of opinion relating to matters of public concern which do not contain a provably false factual connotation.

## A.  A finding of liability against a media defendant publishing statements involving matters of public concern can only be made if there is material falsity in the statements.

Focusing on the first principle, the First Circuit opined that the trial court correctly held that the Article was published by media defendants and concerned matters of public concern. *Id.* Thus, any falsity needed to be material, not a minor inaccuracy. *Id.* "A 'statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced.'" *Id.* (quoting *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 517 (1991). The plaintiffs argued that the challenged statements, taken together, created a "defamatory inference" as to the nature of Cheng's conduct. *Id.* However, after examining the actual language used in the Article, the photograph of Cheng in the Article, and the link to the radio interview that was

provided containing Cheng's own statements, the First Circuit concluded that such an inference was not plausible. *Id.*

The First Circuit then analyzed the individual statements which did not contain statements of opinion, relying on the well-settled rule that "when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *Id.* at 445; *Clorox Co. P.R. v. Procter & Gamble Com. Co.*, 228 F.3d 24, 32 (1st Cir. 2000) (quoting *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 454 (7th Cir. 1998)). In examining each of these statements of opinion, the court examined the source material for them contained in the Article as well as the statements themselves. *Id.* The court concluded that the statements of opinion and their source material contradicted the plaintiffs' allegations; the statements were substantially true. *Id.* at 446.

**B. A statement of opinion relating to matters of public concern which does not contain a provably false factual connotation receives full constitutional protection, as do "imaginative expression" and "rhetorical hyperbole."**

The First Circuit also analyzed the statements that expressed an opinion under the second First Amendment principle. The court noted that if it was obvious that the speaker was expressing a subjective view, interpretation, theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable. *Id.* at 444.

Statements such as "right-wing," "far-right," and "conspiracy theorist" were determined by the court to be vague, judgement-based terms that allow for numerous interpretations and are not objectively provable as false. *Id.* at 446. To the extent that the

opinions at issue were based on Cheng's own statements, the Article provided a link to the source material, thus allowing readers to draw their own conclusions because the source material was equally accessible to everyone. *Id.* at 447.

As for the statements relating to *The Epoch Times* promoting anti-vaccine misinformation and QAnon theories as defamatory, the court noted that plaintiffs' complaint did not dispute that it covered these topics. The court noted that the plaintiffs attempted to build a defamation claim arguing that *The Epoch Times* never promoted anti-vaccine misinformation. The statements were subjective judgments and thus deemed to be non-actionable opinions.

### III. Applicability of *Cheng v. Neumann* to the Instant Case

Like the *Neumann* defendants, Mr. Abramson is a media defendant who published statements involving matters of public concern, *i.e.,* the events of January 6 and how those events unfolded. *Id.* at 444. In order to determine whether there is material falsity in Mr. Abramson's Statements, the Court must examine each of the Statements and decide whether each Statement is false. In other words, the Court must determine whether each Statement would have a different effect on the mind of the reader from that which the pleaded truth would have produced. The Court must also examine the linked source material contained in each of the Statements, which is provided to the Court under separate cover.

Plaintiffs allege in support of Count I, Defamation, that Mr. Abramson's statements about Plaintiffs are materially false. (*See* Am. Compl. ¶17). Plaintiffs argue in support of Count II, Defamation by Implication, that the Statements imply that they "participated in or conspired and colluded with others to plan and undertake seditious, insurrectionist and

unlawful acts, including storming of the United States Capitol building and the insurrection that occurred on January 6, 2021", and that "[t]he Statements imply that Plaintiffs engaged in conduct that is criminal, dishonest, deceitful, immoral, unethical, and that, at the very least, they knowingly aided, abetted and are accessories to Federal crimes." None of this is reflected in any of the Statements whatsoever. In fact, each of the Statements, when reviewed in context together with their linked source material, merely show what the Plaintiffs did and said in relation to the events of January 6, and nothing more. It merits further note that Plaintiffs blatantly misstate some of the Statements in their Amended Complaint, making it even more important for this Court to examine the actual Statements themselves and not rely on the incorrect recitations in the Amended Complaint. The Plaintiffs' claims fail when a written instrument contradicts the allegations in their Amended Complaint. *Id.* at 445. Consequently, Plaintiffs' claims fail.

Using the second First Amendment principle cited by the First Circuit, Plaintiffs' claims also fail. A statement of opinion relating to matters of public concern is protected when it does not contain a provably false factual connotation. *Id.* at 444 (citing *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 20 (1990)). "The vaguer a term, or the more meanings it reasonably can convey, the less likely it is to be actionable." *Levinsky's, Inc. v. Wal-Mart Stores, Inc.*, 127 F.3d 122, 129 (1st Cir. 1997).

Many of the Statements are those of opinion and link directly to the source material which provides the basis for the Statement itself. In making the source material for each of the Statements freely available to the public, Mr. Abramson, like the *Neumann* defendants, allows his readers to independently decide their own opinions.

For example, Mr. Abramson provides links to two interviews in his Proof articles wherein Plaintiff Lewis was interviewed. In doing so, readers are provided direct access to Plaintiff Lewis's own statements. The Statements, when examined with their linked source material, are substantially true.

Opinion characterizations are present in some of the statements, such as "legitimately dangerous domestic insurgent" (Statement no. 4), that January 6 was coordinated with 1AP in a "support role" (Statement no. 5), and use of the terms "extremely dangerous", "seditious", "radical, dangerous, militant insurrectionists" (Statement nos. 6, 8, 9, 11, 12, 13 and 14), and "domestic extremist" (Statement no. 25). Other Statements include language such as "I believe", "I'm most scared about" and "you'd think", all indicators of opinion in the context of linked source material (Statements no. 17, 18, and 19). Other Statements alleged to be made by Mr. Abramson are simply quotes from other source material to which Mr. Abramson provides links (Statement nos. 8, 9, 11, 12, 13, 14, and 38).

Finally, in footnote 4 of *Cheng v. Neumann*, the First Circuit commented on the plaintiffs' claims that the omission of information on Cheng's own past as a "political refugee bound for America, fleeing violence and persecution" contributes to a defamatory inference. However, the First Circuit opined, in part, that this argument was misplaced because the omission of Cheng's past was insufficient to make anything in the *Neumann* Article defamatory. Here, Plaintiffs argued in ¶17 of their Amended Complaint that their mere status as Veterans, among other things, made Mr. Abramson's statements "obviously preposterous." However, even if Plaintiffs' complete personal history was included in every single Statement made by Mr. Abramson, such information would have

little to no effect to make anything else in the Statement defamatory when taken together with its linked source material; furthermore, all of Mr. Abramson's Statements relate to matters of public concern, and none of them are materially or provably false. As such, Mr. Abramson's Statements are entitled to complete protection under the First Amendment. Mr. Abramson respectfully requests that this Honorable Court dismiss each of Plaintiff's claims with prejudice.

### IV.        Conclusion.

Applying *Cheng v. Neumann*, each of Plaintiffs' claims for defamation, defamation by implication, and false light invasion of privacy fail.[2] Mr. Abramson is a media defendant who published Statements involving matters of public concern. Because of this, there can be no liability against him unless those Statements are false. Such falsity must be material. Any Statements of opinion that Mr. Abramson made included language which made it obvious that they were statements of opinion. Finally, Mr. Abramson's Statements link to their source material, allowing the receivers of the Statements to form their own opinions about the subjects of the Statements. Due to the foregoing, as well as the arguments that were advanced in Mr. Abramson's Memorandum of Law in Support of his Motion to Dismiss for Failure to State a Claim, Plaintiffs' claims should be dismissed with prejudice.

SETH ABRAMSON
By his attorneys,

/s/ Stephanie E. Bendeck
Christian H. Hinrichsen, # 264970

---

[2] Mr. Abramson previously addressed the claims for common law conspiracy in his Memorandum of Law for his Motion to Dismiss for Failure to State a Claim (Document No. 20-1) and continues to rely on those arguments.

Stephanie Bendeck, *Pro Hac Vice*
Melick & Porter, LLP
1 Liberty Square, 7th Floor
Telephone: (617) 523-6200
chinrichsen@melicklaw.com
sbendeck@melicklaw.com

William E. Christie, # 11255
wchristie@shaheengordon.com
Timothy J. McLaughlin, # 19570
tmclaughlin@shaheengordon.com
Shaheen & Gordon, P.A
P.O. Box 2703
Concord, NH 03302
Telephone: (603) 225-7262
Facsimile: (603) 225-5112

## CERTIFICATE OF SERVICE

I hereby certify that on January 13, 2023 a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will send notice of electronic filing to counsel for the Plaintiffs and all interested parties receiving notices via CM/ECF.

Steven S. Biss
Law Office of Steven S. Biss
300 West Main Street
Suite 102
Charlottesville, VA 22903
stevenbiss@earthlink.net

Bryan K. Gould
Morgan Tanafon
Cleveland Waters & Bass PA
Two Capital Plaza
PO BOX 1137
Concord, NH 03302
gouldb@cwbpa.com
tanafonm@cwbpa.com

William E. Christie
Timothy J. McLaughlin
Shaheen & Gordon
107 Storrs Street
PO BOX 2703
Concord, NH 03302
wchristie@shaheengordon.com
tmclaughlin@shaheengordon.com

/s/ Stephanie E. Bendeck
Christian H. Hinrichsen, # 264970
Stephanie Bendeck, *Pro Hac Vice*
Melick & Porter, LLP
1 Liberty Square, 7th Floor
Telephone: (617) 523-6200
chinrichsen@melicklaw.com
sbendeck@melicklaw.com