IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

```
---------------------------------------------------------x
ROBERT PATRICK LEWIS,                     :
PHILIP A. LUELSDORFF,                     :
1AP, INC.                                 :
                                          :
        Plaintiffs,                       :
                                          :
v.                                        :       Case No. 1:22-cv-00126-PB
                                          :
                                          :
SETH ABRAMSON                             :
                                          :
        Defendant.                        :
---------------------------------------------------------x
```

## PLAINTIFFS' MEMORANDUM OF POINTS & AUTHORITIES REGARDING APPLICATION OF *CHENG v. NEUMANN*

Plaintiffs, Robert Patrick Lewis ("Lewis"), Philip A. Luelsdorff ("Luelsdorff") and 1AP, Inc. ("1AP") (collectively, the "Plaintiffs"), by counsel, pursuant to Local Rule ("LR") 7.1(a)(2), respectfully submit this Memorandum of Points and Authorities regarding the application of *Cheng v. Neumann*, 51 F.4th 438 (1st Cir. 2022) ("*Cheng*") to the facts of this case:

### I.  *Cheng Is Inapposite*

In *Cheng*, the vice president and co-founder of a print and online newspaper sued the publisher of an online media outlet for defamation and false light invasion of privacy. The article at issue in *Cheng* stated, in relevant part:

> "The Maine Republican Party co-sponsored a community forum in Windham on Monday evening that included as a panelist a far-right media personality and conspiracy theorist who has said she was among the supporters of former President Donald Trump who were present at the riot at the U.S. Capitol on Jan. 6.
> ...

1

> Dana Cheng, vice-president of the right-wing multi-language newspaper and media company Epoch Times, was invited by the Gray Republicans to brief their members about the threats posed to Americans by the Chinese government.
> ...
>
> The day after the insurrection that left five people dead, Cheng said on a Denver radio program that she was present at the Capitol when it was breached, but was not at the front of the crowd and did not enter the building.
>
> Cheng alleged during the radio interview that the violence that day was perpetrated by anti-fascist infiltrators -- a false refrain echoed throughout conservative media in the days after the insurrection.
>
> 'We have got photos from our readers that there were some antifa people,' she said. 'They have seen a few people try to push into the building, some got into the building. They were the same people that were in the antifa movement.'
>
> Since Trump's loss to President Joe Biden, Cheng's Epoch Times has consistently questioned the election results. The news outlet is partially funded by far-right media financier Robert Mercer and has promoted anti-vaccine misinformation and an array of pro-Trump conspiracy theories such as QAnon, leading the New York Times to call the outlet a 'global-scale misinformation machine.'"

51 F.4th at 442.

On appeal, the plaintiffs in *Cheng* argued that the challenged statements, taken together, combined to convey the defamatory inference that Cheng "participated in the violence on January 6." *Id.* at 445. Taking the article as a whole, the Court of Appeals found that the "argued inference is implausible." *Id.* The Court observed that the language of the article coupled with the photograph of the plaintiff (Cheng) in business attire did not suggest "active participation" in the events of January 6. *Id.* Beyond that, the article provided a link to a radio appearance in which Cheng stated that she was "not at the front of the crowd and did not enter the [Capitol] building." *Id.*

The *Cheng* Court further found that the challenged statements, considered individually, were not actionable. Three of the statements were substantially true,

including that Cheng was "present at [the] Jan. 6 Capitol assault" and that Cheng was a "Trump supporter". The Court of Appeals further found that:

> "The remaining statements are not actionable because they are expressions of opinion and are unprovable as false. 'Right-wing,' 'far-right,' and 'conspiracy theorist' are vague, judgement-based terms that 'admit[] of numerous interpretations' and are not objectively provable as false … These statements are also the sort of 'rhetorical hyperbole,' common in much political discourse. Further, to the extent these opinions are based on Cheng's statements in the radio interview (e.g., about election fraud), they are not actionable because the Article provides a link to the source material, which, in the context of the Article, enables readers to draw their own conclusions 'based on facts accessible to everyone.'"

*Cheng*, 51 F.4th at 446-447 (citing *Levinsky's, Inc. v. Wal-Mart Stores, Inc.*, 127 F.3d 122, 130 (1st Cir. 1997)).[1]

"The First Amendment does not inoculate all opinions against the ravages of defamation suits. A statement couched as an opinion that presents or implies the existence of facts which are capable of being proven true or false can be actionable." *Levinsky's*, 127 F.3d at 17. As *Cheng* made clear, only where "it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts" is the statement protected opinion. *Cheng*, 51 F.4th at 444 (citation and quotation omitted). "The vaguer a term, or the more meanings it reasonably can convey, the less likely it is to be actionable." *Id.*

Plainly, Abramson did far more than accuse Plaintiffs of being "right-wing" or "far-right" or "conspiracy theorists" or "Trump supporters". Abramson, an attorney,

---

[1] In *Levinsky's*, the Court of Appeals found the word "trashy" to be "quintessentially subjective." 127 F.3d at 130 ("Branding a store, its merchandise, its customers, or its proprietors as 'trashy' is uncomplimentary, and it may be unwarranted; in the last analysis, however, such a comment is loose language that cannot be objectively verified. Consequently, it belongs squarely in the category of protected opinion.").

3

titled and presented his substack newsletters as "**PROOF**" of the matters asserted. He represented to subscribers and readers that his statements were "fully-sourced" and backed by "mountains of evidence." [*Am. Compl.,* ¶ *7*]. Abramson stressed to readers that he proffered ***facts***. He did not qualify his statements in any way, such as by the use of words like, "I think" or "I believe". This context, considered from the vantagepoint of the average reader, completely belies Abramson's claim that his statements are "pure expressions of opinion". *Compare Gross v. New York Times*, 82 N.Y.2d 146, 603 N.Y.S.2d 813, 623 N.E.2d 1163 (1993) (the broad context of the statements – stories in the news section with the appearance of being the product of careful deliberation – would give reasonable readers cause to believe the statements were matters of fact). In his newsletters and tweets, Abramson states as fact that Plaintiffs are "insurrectionists",[2] "dangerous far-right domestic-extremist militants",[3] "legitimately dangerous domestic insurgents", "radical, dangerous, militant insurrectionists", a "congregation of radical

---

[2] Unlike "trashy", "insurrectionist" is not a vague term. In normal parlance and in the context of his substack articles about the January 6 attacks on the United States Capitol, "insurrectionist" has a precise meaning. It could only mean or imply one thing: that Plaintiffs committed the crime of insurrection on January 6. *See 18 U.S.C. § 2383*.

[3] The FBI and the Department of Homeland Security ("DHS"), "use the term Domestic Violent Extremist (DVE) to describe an individual based and operating primarily within the territorial jurisdiction of the United States who seeks to further their ideological goals wholly or in part through unlawful acts of force or violence." DHS-FBI, *Domestic Terrorism: Definitions, Terminology, and Methodology*, p. 2 (November 2020) ("DHS … uses the term 'domestic terrorist,' … interchangeably with 'domestic violent extremist'"); https://www.dhs.gov/sites/default/files/publications/21_0301_odni_unclass-summary-of-dve-assessment-17_march-final_508.pdf ("the IC defines a DVE as an individual based and operating primarily in the United States without direction or inspiration from a foreign terrorist group or other foreign power and who seeks to further political or social goals wholly or in part through unlawful acts of force or violence").

4

militant extremists", and an "insurrectionist paramilitary extremist group".[4] Additionally, Abramson identifies Philip Luelsdorff as a "representative and member of Flynn's QAnon militia group",[5] a "domestic extremist leader", a member of "Giuliani's team", and a "participant" in the Willard "war room". Abramson falsely states as fact that Luelsdorff "observed [the storming of the Capitol] from a war room led by Giuliani and Eastman", and that Luelsdorff was under "criminal investigation". Abramson falsely states as fact that Robert Lewis is a "deranged[6] militant extremist", and that Lewis "acted as a high-level adviser [and bodyguard] to Trump's legal team pre-, mid-, and post-

---

[4] The gist of Abramson's statements is that Plaintiffs are domestic terrorists. *See TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2209 (2021) ("TransUnion provided third parties with credit reports containing OFAC alerts that labeled the class members as potential terrorists, drug traffickers, or serious criminals … The harm from being labeled a 'potential terrorist' bears a close relationship to the harm from being labeled a 'terrorist.' In other words, the harm from a misleading statement of this kind bears a sufficiently close relationship to the harm from a false and defamatory statement.").

[5] *See Flynn v. Cable News Network, Inc.*, 2021 WL 5964129, at * 4 (S.D.N.Y. 2021) ("[F]alsely implying a connection to a violent extremist group can be defamatory."); *id. Flynn v. Cable News Network, Inc.*, 2022 WL 3334716, at * 5 (S.D.N.Y. 2022) ("given the extreme negative connotations of being a QAnon follower, the Flynns have adequately alleged that being labeled a QAnon follower would have a different effect on the mind of a viewer than the pleaded truth.").

[6] Viewed in the context of all the surrounding circumstances, Abramson's statement that Lewis is "deranged" is actionable opinion. *See Leahy-Lind v. Maine Dept. of Health and Human Services*, 2014 WL 4681033 * 14 (D. Me. 2014) ("Construing the facts in the light most favorable to Leahy–Lind [plaintiff], the Court is unwilling to state at this stage of the litigation that the statement that Leahy–Lind was "crazy" is mere hyperbole. Instead, the implication is that Sockabasin [defendant] was in possession of facts that could show that Leahy–Lind was mentally incompetent in order to further undermine Leahy–Lind at the CDC and with the consultant. Therefore, the Court DENIES Defendants' Motion to Dismiss and finds that the claims are not futile on that basis."); *Stratman v. Brent*, 291 Ill.App.3d 123, 683 N.E.2d 951, 959 (1997) ("When the defendant's allegedly defamatory statements are taken in context and given their natural and obvious meaning, it is clear that the defendant intended to describe the plaintiff as someone who was and would be unable to perform as a law enforcement officer … Telling such a prospective employer that an applicant is "mentally ill" or "crazy," taken in context with the other alleged statements, constitutes defamation *per se*.").

insurrection". Abramson falsely asserts as fact that 1AP was "standing by with weapons" on January 6, that 1AP was "coordinating" with the Oath Keepers, that "1AP was **inside** the Capitol",[7] and that "1AP … cheered on the overthrow of the USG in real-time on Jan 6th." [*Am. Compl.*, ¶ 2 *(Statements 1, 4, 9, 13, 14, 15, 16, 18, 20, 25, 26, 27, 29, 31, 32, 36, 38)*]. Abramson's descriptions of Plaintiffs lays the ground work for his false statements about what the Plaintiffs allegedly *did* on January 6. Abramson falsely states as fact that the events of January 6 (which he calls "Insurrection Day") were the result of "coordination" between "the White House, Stop the Steal, InfoWars and the Proud Boys, with the Oath Keepers, Three Percenters, Qanoners and 1AP in support roles". [*Id. (Statements 5, 6)*]. Abramson falsely states as fact that 1AP was one of the entities "responsible for the planning and coordination of the events of January 6". [*Id. (Statement 13)*]. From a lone photograph of Luelsdorff, snapped without his knowledge while he was in a supposed "war room" for less than a minute, Abramson states or implies that 1AP and Luelsdorff participated in a plot with Giuliani, Eastman and other "Trump advisors" in the room to "defy the will of the people and overthrow the government." [*Id. (Statements 13, 23)*]. Abramson's statements are heavily laden with assertions of fact capable of a defamatory meaning.

Unlike *Cheng*, the clear defamatory inference of Abramson's combined statements, viewed together and in context, is that Plaintiffs actively participated in the January 6 insurrection. *Compare Alharbi v. Theblaze, Inc.*, 199 F.Supp.3d 334, 353-354 (D. Mass. 2016) (descriptions of plaintiff as a "very bad, bad, bad man" and the "worst of

---

[7] By comparison, the linked radio interview in *Cheng* clearly disclosed that Cheng did ***not*** enter the Capitol.

the worst" were not pure opinions because they implied that plaintiff was involved in the Boston Marathon bombing). Importantly, Abramson's statements about Plaintiffs are verifiably false. Plaintiffs are not domestic violent extremists or insurrectionists. They are honorably discharged military veterans, law enforcement and intelligence community veterans. On January 6, Plaintiffs provided security to members of the press. 1AP did not enter the Capitol on January 6. IAP was not standing by with weapons. 1AP did not cheer the overthrow of the United States Government. Plaintiffs did not coordinate with or support the activities of the Proud Boys, Oath Keepers, QAnon or anyone else on January 6, 2021. Luelsdorff did not observe the storming of the Capitol "from a war room led by Giuliani and Eastman". These facts were manufactured by Abramson to support the defamatory inference. Plaintiffs have alleged and evidence will demonstrate conclusively that Luelsdorff was in Giuliani's Willard "war room" for less than a minute. He did not talk to Giuliani or Eastman. [*Am. Compl., ¶¶ 13, 17(b)*].

Abramson published and republished the statements across multiple media. He targeted his 10,000+ paid substack subscribers and his 945,000+ Twitter followers. Each publication was made to highlight the "**PROOF**" that Plaintiffs played a supporting role in "Trump's insurrection". Whether Plaintiffs participated in any way in the January 6 insurrection can be determined by a core of objective evidence, including testimony and documentary evidence concerning Plaintiffs' whereabouts and activities on January 6. *Compare Swengler v. ITT Corp. Electrro-Optical Products Div.*, 993 F.2d 1063, 1071 (4th Cir. 1993) (statement that plaintiff "posed a serious security risk" was not pure opinion); *Steinmetz v. Coyle & Caron, Inc.*, 862 F.3d 128, 141 (1st Cir. 2017) ("While we have found that the renderings had some factual basis, the complaint adequately alleges

facts that, if believed, could lead a reasonable person to conclude that the renderings were nevertheless also based on erroneous extrapolations from their factual basis, resulting in depictions that contain material errors in excess of the margin of possible error claimed … [W]e decline to find on the present record … that the renderings constitute pure opinion beyond the scope of a defamation claim.").[8]

In *Weyrich v. New Republic, Inc.*, the District Court granted defendant's motion to dismiss on the ground that the challenged statements were non-actionable opinions. The United States Court of Appeals for the District of Columbia Circuit reversed. The article at issue in *Weyrich* was "flowered with anecdotes that reveal Weyrich to be both emotionally volatile and short-tempered, and it depicts him as both a zealoted political extremist and an easily-enraged tyrant of the first order." 235 F.3d 617, 620 (D.C. Cir. 2001). The Court held that certain statements in plaintiff's complaint were verifiable.

> "The fact that the use of the term 'paranoia' constitutes protected, unverifiable comment in the present case does not insulate the otherwise verifiable anecdotes reported by the author in support of his assertions that Weyrich is 'nutty' and notable for his 'famous temper.' In other words, an article's political 'context' does not indiscriminately immunize every statement contained therein. The complaint asserts that appellees have published a number of false anecdotes, suggesting to the average reader that appellant is not only a political reactionary, but emotionally volatile, perhaps even mentally unsound, and otherwise unfit for his profession … Although we do not here dissect each verifiable statement to provide an exhaustive list for the District Court, potential candidates include the author's observation that appellant, in response to Bill Pascoe's perceived betrayal, 'snapped,' erupted in a 'volcano of screaming,' 'froth[ed] at the mouth,' and 'dispatched a letter to Pascoe's fiancée, questioning Pascoe's loyalty and implying that he was unfit for marriage.' If indeed the story is fabricated, we cannot say that it is not reasonably capable of any defamatory meaning—it arguably makes appellant appear highly volatile, irrational, unsound and otherwise 'odious, infamous, or ridiculous.'"

235 F.3d at 626-627.

---

[8] Like the renderings in *Steinmetz*, Abramson's use of the photograph of Luelsdorff is based on an erroneous extrapolation from its factual basis.

Courts across the country have considered statements similar to those published by Abramson and his co-conspirators, and have found the statements to be actionable. *See, e.g., Flynn v. CNN*, *supra, footnote 5* (falsely linking plaintiffs to violent extremists who were a prominent part of the mob on January 6 is actionable); *Shahidullah v. Shankar*, 2022 WL 286935, at * 1 (D. Md. 2022) (defendant, a researcher and reporter for the Investigative Project on Terrorism (IPT), published an article on IPT's website titled "NY Imam Active in Interfaith Work Disseminates Extremist Propaganda on the Side." The article "falsely stated that the plaintiff ran www.DawahUSA.com, which Shankar characterized as a 'proselytizing website … that ostensibly seeks to invite people to Islam but in fact serves as a clearinghouse for extremist and Islamist propaganda.'"); *Zimmerman v. Buttigieg*, 521 F.Supp.3d 1197, 1214 (M.D. Fla. 2021) ("defamation *per se* is not confined to statements that someone committed a crime, as statements that tend to subject a person to hatred, distrust, ridicule, contempt or disgrace can suffice. Certainly, a statement that attributes racist and white supremacist attributes to someone could subject that person to such harm.") (citation omitted); *Sirer v. Aksoy*, 2021 WL 4952610, at * 4 (S.D. Fla. 2021) ("in the Complaint, Plaintiff alleges that Defendant posted a video on his YouTube channel accusing Plaintiff of being a member of an organization designated as a terrorist organization … Plaintiff alleges that his reputation has been harmed by Defendant's statements, and that they pose a threat to Plaintiff's and his family's safety.  Plaintiff need not allege more.") (citation omitted); *Coker v. Barr*, 2020 WL 9812034, at * 8 (D. Colo. 2020) ("it is hard to imagine a greater stigma than being associated with terrorism in our post-9/11 world."); *Liberty Lobby, Inc. v. Anderson*, 1991 WL 186998, at * 9 (D. D.C. 1991) ("The Court finds that the implication

9

that Carto emulates Hitler in appearance or action is defamatory and that the record could support a reasonable jury finding that the defendants published these allegations with actual malice").

Here, Abramson's statements contain provably false factual connotations *and* they state or imply the assertion of actual facts about Plaintiffs, including that Plaintiffs committed the crime of insurrection, aided and abetted insurrection, or planned and coordinated seditious activity on January 6 with the Proud Boys or Oath Keepers.[9] To the extent that any of Abramson's statements are "opinions", the facts upon which Abramson bases his accusations are either false or incomplete or, in the case of the Luelsdorff photograph, based on a patently erroneous assessment of fact. The vast majority of the links in Abramson's substack newsletters are to **his own** newsletters. **None** of the links in the substack newsletters and **none** of Abramson's tweets supply true or complete facts about Plaintiffs because Abramson fabricated a connection between Plaintiffs and the violent insurrection that shock this country on January 6. Abramson made up the scandalous story in order to sell subscriptions to his substack and to curry favor with the J6 Committee. He should not be rewarded for his outrageous misconduct.

## CONCLUSION

For the reasons stated above and at the hearing of this matter, Plaintiffs respectfully request the Court to DENY Defendant's motion to dismiss.

---

[9] Whether a reasonable reader would interpret Abramson's statements as conveying the defamatory inference that Plaintiffs participated in the January 6 insurrection is an inherently factual issue that, at a minimum, should be made after discovery. *See, e.g., Colborn v. Netflix, Inc.*, 541 F.Supp.3d 888, 901 (E.D. Wis. 2021); *Time, Inc. v. Hill*, 385 U.S. 374, 394 fn. 11 (1967) (same).

DATED: January 13, 2023

        ROBERT PATRICK LEWIS
        PHILIP A. LUELSDORFF
        1AP, INC.

        By Their Attorneys

By: */s/ Steven S. Biss*
        Steven S. Biss (VSB # 32972)
        300 West Main Street, Suite 102
        Charlottesville, Virginia 22903
        Telephone: (804) 501-8272
        Facsimile: (202) 318-4098
        Email: stevenbiss@earthlink.net
        (*Admitted Pro Hac Vice*)

By: */s/ Bryan K. Gould*
        Bryan K. Gould (NH Bar # 8165)
        gouldb@cwbpa.com
        CLEVELAND, WATERS AND BASS, P.A.
        Two Capital Plaza, 5th Floor
        P.O. Box 1137
        Concord, NH 03302-1137
        Telephone: 603-224-7761
        Facsimile: 603-224-6457

        *Counsel for the Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on January 13, 2023 a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will send notice of electronic filing to counsel for the Defendant and all interested parties receiving notices via CM/ECF.

By: */s/ Steven S. Biss*
Steven S. Biss (VSB # 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone: (804) 501-8272
Facsimile: (202) 318-4098
Email: stevenbiss@earthlink.net
(*Admitted Pro Hac Vice*)

By: */s/ Bryan K. Gould*
Bryan K. Gould (NH Bar # 8165)
gouldb@cwbpa.com
CLEVELAND, WATERS AND BASS, P.A.
Two Capital Plaza, 5th Floor
P.O. Box 1137
Concord, NH 03302-1137
Telephone: 603-224-7761
Facsimile: 603-224-6457

*Counsel for the Plaintiff*