UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE
-------------------------------------------------x
ROBERT PATRICK LEWIS et al., :
:
Plaintiffs, :
:

v.                                                                               : Case No. 1:22-cv-00126-PB

:
SETH ABRAMSON, :
:
Defendant. :
-------------------------------------------------x

# PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

After receiving notice that plaintiffs Lewis and Luelsdorff would have new representation in June (within weeks of said notification), defendant's counsel launched a salvo of filings and dismissal attempts to try to have this case thrown out before said counsel could step in.

Plaintiffs fully appreciate defendant's desire to have this case thrown out before certain questions can be raised, or the court be made aware of some of defendant and his counsel's actions in this case thus far. Plaintiffs demanded that their prior counsel raise these issues, which were egregious, but they refused. As such, it is our belief that defendant and his counsel will resort to any measures to end this case before these questions can be brought up by new counsel.

Plaintiffs object to all motions to dismiss. If a conference is required, plaintiffs request that one be scheduled in the second week of June or later so that it may be attended by plaintiffs' counsel rather than the non-lawyer and *pro se* (temporarily) plaintiffs.

There are other matters that should be brought to the court's attention and questions that need to be answered in this case. Plaintiff's former counsel refused to do so. In the chance that this case is dismissed before new counsel can address them, they need to be brought to light and addressed.

## ARGUMENT

1

1. **Why It Took So Long to Find New Lead Counsel**

In the time since our last conference with the court, plaintiffs have reached out to several dozen different firms and attorneys seeking new lead counsel. As is the entire purpose of this case, however, many of them don't want anything to do with "J6 cases."

It should be reiterated that, as is the basis of this case, plaintiffs had nothing to do with nor were they present at the Capitol on January 6th, and the only reason lawyers, firms, and the American public believe that we were was due to defamatory lies that made them believe so.

In a sane, rational, and normal world/environment, the basis of the case should matter to lawyers more than the media's representation of things. Unfortunately, we do not live in that version of reality. Our replacement counsel is leaving his current firm due to his partners' unwillingness to take on "J6 cases," even though plaintiffs weren't actually involved in any aspect of J6.

Part of the reason that both lawyers and the American public believe defendant's false version of our involvement is due to the use of behavioral economics "appeals to authority" that were used to push the defamatory statements. Defendant routinely uses his background as a lawyer, decades as as journalist, and UNH journalism professor to trick his audience into believing his claims.

The January 6th Committee itself was another. At least one Committee member was/is a follower/subscriber to defendant's publications, as noted by defendant in his *Proof of Notable Readers* post on Substack. If defendant has spoliated this post like the others that we'll cover below, plaintiffs still have a copy that includes Congressman Jamie Raskin, a multitude of "A-list" media personalities, Donna Brazille, the Google News Initiative, The Atlantic Counsel, and many others.

With a message spread that far and wide by defendant to such notable figures, in playing devil's advocate, it's not difficult to understand why that message being repeated via those people would hold such weight to their audiences, even if they were outright false and defamatory.

2. **Defendant's Previous Extensions Due to Nefarious Reasons Given**

This case has been lengthy, but while defendant is trying to dismiss rather than offer an extension now, plaintiffs were not the first to seek an extension in this case. For more than the first year of discovery in this case, defendant refused to participate in discovery in any real or fulsome way. Plaintiffs previous

counsel told plaintiffs that even defendants current counsel remarked to them during their first meeting how poorly their side had performed with regard to discovery.

The way it was explained to plaintiffs was that defendant's counsel said they would, "now start to provide all of the facts and let the best case win." As will be further explained later, this has not happened with regard to our Substack discovery requests and the Capitol Hunters Google Drive communications and coordination by defendant, specifically.

At least one further discovery extension request by defendant was granted by plaintiff's former counsel against plaintiffs objections. Plaintiffs only objected because the excuse given was an egregious untruth. Defendant's counsel gave health reasons as an excuse for the need for another extension.

In the time period in which defendant said that health reasons precluded his ability to participate in discovery, however, he published several full-form books, several "mini novelas" as he calls them to his audience, and numerous extremely long tweet threads on the Twitter/X platform, including multiple dozens or hundreds of tweets each.

Plaintiff's former counsel told them several times that they would be filing a discrepancy letter to defendant, yet never did so. As they refused to press this issue, and defendant has insisted on moving to dismiss before new counsel can officially step into this case, it should be brought to the court's attention now.

### 3. Using Illegally Obtained Documents As Discovery Questions

Defendant, and his counsel, each of whom are officers of the court, used illegally obtained and non-public documents created using taxpayer dollars and for the legislative branch of government as his initial discovery questions.

It is likely that these documents were leaked to defendant through Congressman Jamie Raskin's office, who is/was a subscriber of defendant's as outlined in his *Proof of Notable Readers* post. As this issue was never pushed by previous plaintiff's counsel, as of yet we don't have the evidence for where it came from, only that defendant obtained and tried to pass it off as his own for use in this case.

Plaintiffs were threatened with felony charges if they shared any information with regard to their dealings with the January 6th Committee, even details as small as who was present in their depositions on the Committee's side.

Plaintiffs have copies of the subpoena questions that the Committee sent to their lawyer. These questions were never made public via the January 6 Committee websites or databases. Despite these documents never being made public, multiple word-for-word and paragraph-for-paragraph sections of the Committee's questions to plaintiffs ended up in defendant's first discovery questions to plaintiffs.

As plaintiffs were threatened with felony charges if they shared them, did defendant commit a felony by using these taxpayer-funded documents meant for the legislative body and trying to pass them off as his own? Did his counsel commit a felony by submitting them through a court procedure? Does equal protection under the law include this situation?

### 4. Spoliation by the Defendant

In the time since this case was filed, defendant has gone through multiple rounds of "closing down/locking" his Twitter/X account and deleting/spoliating his posts about plaintiffs. The court may be interested to have a look at the court's opinion letter from 2023 and trying to find the same statements and URLs given and footnoted in the opinion, as they are no longer there. His tweets/posts continuing to defame plaintiffs even after the court's opinion letter was released have also been spoliated.

An argument could be made that they were simply archived due to defendant's voluminous tweets, but plaintiffs checked that hypothesis. The advanced search on Twitter/X goes into the archives of an account, and they do not exist there, either. They also could not be found on Twitter/X by Grok (the Xai tool), but other places online still have some that defendant couldn't access to delete/spoliate.

We have the records for all of this, but our prior counsel refused to bring the issue up. Again, we fully appreciate why defendant and his counsel may want to use any and every trick to get this case thrown out before it can be brought to the court's attention.

### 5. Lack of Fulsome Discovery Responses from Defendant

Along with refusing to participate in reasonable discovery for more than the first year of this case, and filing extensions using laughably false reasons, the discovery that defendant has provided has been entirely lacking.

To begin with, defendant participated in a Google Drive-based communication and coordination effort along with the Capitol Hunters during the timeframe upon which this lawsuit is based. None of these communications, efforts, or evidence was turned over by defendant despite discovery requests that they should have been turned over to comply with.

Additionally, the latest rounds of discovery include demands that we prove the reach of defendant's posts. As a CMS platform that is used as a source of revenue for many of its content creators, Substack contains mountains of marketing data that is available at the push of a button. Plaintiffs asked for defendant's Substack data in our discovery requests, and the response was that the single-button csv export function was "too burdensome" for defendant to comply with.

Substack provides data on who has read each post, how many times they opened it, how many people read it, how many subscribers a creator had before a post, how many paid & free subscribers they gained per post, where every new reader came from (traffic sources), and numerous other data points.

We can understand why defendant and his counsel would not want to turn this data over, for multiple reasons.

As with his *Proof of Notable Readers* post, it would prove beyond a shadow of a doubt who did and did not read the posts at question in this case. It would also show traffic sources and where they came from, which is troublesome for a lawyer & officer of the court who deleted many of his Twitter/X posts that the traffic would have come from.

Messaging data that was turned over only included half of conversations - the message to defendant, but none of his responses. There is even a one-sided conversation that looks very much like haggling over financials, but only one side of the conversation is included.

Again, our previous counsel refused to bring these issues up. We can appreciate why defendant would want this case thrown out before our new counsel has a chance to do so.

## CONCLUSION

As defamatory attacks continue against plaintiffs as recently as this year by confederates of defendant and based on the same defamatory smears he levied against plaintiffs, it is clear these will continue into the foreseeable future until accountability is had and the truth may be laid bare.

Dismissing this case now would prevent said accountability and cause continued damage to plaintiffs, their lives, and their reputations.

Dated: May 26, 2025                                       Respectfully submitted,
                                                          ROBERT PATRICK LEWIS
                                                          PHILIP A. LUELSDORFF
                                                          1AP, INC.
                                                          *Pro se*

                                                                    /s/Robert P. Lewis
                                                                    *Pro se*

                                                                    /s/Philip A. Luelsdorff
                                                                    *Pro se*

## CERTIFICATE OF SERVICE

I certify that on May 26, 2025, a copy of the foregoing was mailed to attorneys for defendant.

/s/Philip A. Luelsdorff
*Pro se*

**Attn: United States District Court**

**May 27, 2025**
**Case No. 1:22-cv-00126-PB**

This letter serves as a certificate of service to verify that the following documents have been sent to the following:
**Fedex:**
**United States District Court**
District of New Hampshire
55 Pleasant Street Room 110
Concord New Hampshire 03301
**USPS Certified Mail:**
**Getman, Schulthess, Steere & Poulin, P.A.**
1838 Elm Street Manchester, NH 03104
(603) 634-4300
C. Lyons
A. Nowakowski
A. Peters
L. Faucher
L. Lee
T. MacLeod
E. Hurley
T. Johnson
G. Gallagher
**USPS Certified Mail:**
**Bernstein, Shur, Sawyer & Nelson, P. A .**
146 Capitol St, Augusta, ME 04330
(207) 623-1596
R. Gagliuso
P. McNamara
W. McInnis
N. Sackman
I. Burghard
Attached Documents:
PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Philip Luelsdorff
101 Cove View Trail
Severna Park MD 21146
philipluelsdorff@gmail.com
202.345.2770
Signature