UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| ROBERT PATRICK LEWIS, ) <br> PHILIP A. LUELSDORFF and ) <br> 1AP, INC., ) <br> ) <br>     Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> SETH ABRAMSON, ) <br> ) <br>     Defendant. ) <br> ) | Case No.: 1:22-CV-00126-PB |

**DEFENDANT'S REPLY TO OBJECTION TO
MOTION TO FOR SUMMARY JUDGMENT**

NOW COMES the Defendant, Seth Abramson, by and through his attorneys, Poulin Hurley Makris & Lyons P.A., and hereby submits the foregoing Reply to the Plaintiff's Objection to his Motion for Summary Judgment. In support, Abramson states as follows:

**I.      STATEMENT OF MATERIAL FACTS:**

The Plaintiffs have not offered any evidence to challenge the verified facts set forth in the Defendant's Motion. Rule 56 requires a party opposing summary judgment cite to particular materials in the record or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P., Rule 56(c)(1)(A)&(B). When the "party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court's options include considering the fact "undisputed for purposes of the motion"; and granting summary judgment "if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it. . .". Fed. R. Civ. P., Rule 56(e)(2)&(3).

1

Because the Plaintiffs have not properly challenged the facts set forth in the Defendant's motion, the undisputed factual record includes the following:

- Abramson never published any statement where he claimed that the Plaintiffs breached the Capitol. To the contrary, he stated that "1AP members don't appear to have stormed the Capitol." [Ex. HH, Statement 38;].

- The Plaintiffs have no information to suggest that Abramson had any actual malice towards them. [Ex. D, p. 251:1 – 253:1; Ex. Y, p. 177:16-23; 179:5 – 7].

- Lewis made the conscious decision to transition from a "quasi, mini-public personality" to the face of 1AP for purposes of crowdfunding. [Exhibit K, p. 4].

- In the weeks following the 2020 presidential election Lewis and 1AP each had Twitter accounts with tens of thousands of followers, where they made multiple public posts asserting the election was fraudulent. [Ex. D, p. 74:9-75:11; Ex. L, p. 135:10-15; Ex. M; Ex. P; Ex. Q].

- Lewis tweeted to his tens of thousands of followers that they should heed Trump's call for people to attend the protest in D.C. on January 6, 2021, stating that "your Commander in Chief has spoken" and indicating that 1AP will be there "in force." [Ex. R, Ex. S., Ex. T].

- Lewis, personally and on behalf of 1AP, also spoke to the public by posting videos on Rumble, BitChute, and Youtube, and by giving news and podcast interviews, using these public forums to express doubts about the legitimacy of the 2020 election and trying to spur action by motivating others to protest and speak out on the purported election fraud. [Exs. I – J; M – Q; S – X].

- Lewis made a speech to a pro-Trump crowd at a January 5, 2021 rally in Washington D.C. [Ex. U].

- Lewis publicly claimed that 1AP was involved in efforts to gather "intelligence" to establish that the election was fraudulent, and that 1AP provided this purported intelligence to figures including Sidney Powell and Michael Flynn. Powell and Flynn were heavily involved in the effort to attempt to convince Trump to declare that the election was fraudulent and/or to invoke the insurrection act. [Ex. D, p. 148:16-149:17; Ex. I, p. 16:10-19; 53:1-54:6; Ex. J].

- On January 7, 2021, during a podcast interview, Lewis publicly encouraged Trump to invoke the insurrection act because the "military is the only way to go." [Ex. I, p. 53:1-54:6]. Lewis reiterated these sentiments in a tweet posted on January 10, 2021. [Ex. X].

- On his public twitter account, Luelsdorff also questioned the validity of the election and asserted that the "people" would still decide the election, after it had been called for Biden. [Ex. AA; Ex. BB].

- Through his public twitter account, Luelsdorff asked his followers to support 1AP in its purported effort to protect "whistleblowers" coming forth "about the massive fraud they witnessed during the Nov 3 election . . ." [Ex. CC].

- On December 18, 2020, Luelsdorff, on behalf of 1AP, drove Flynn, Powell, and Patrick Byrne to a heavily reported on six-hour meeting at the White House with Trump and his staff. During this meeting, Flynn, Powell, and Byrne reportedly tried to convince Trump not to agree to the transfer of power. [Ex. B, 186:6 – 188:6].

- On January 6, 2021, Lewis and Luelsdorff went to the Willard Hotel, which has been described as a "command center" for various individuals working to contest the validity of the election. [Ex. DD]. Lewis and Luelsdorff were not staying at the hotel. [Ex. B, p. 202-19-203:11].

- While at the Willard on January 6, Lewis and Luelsdorff spent much of their time in Cindy Chafian's room. Chafian had hosted the pro-Trump rally on January 5, 2021 where Lewis spoke. [Ex. B, p. 235:2-16; 238:12-16].

- While in Chafian's room, and after the Capital had been breached, John Eastman – a now-disbarred lawyer who was advising Trump on his options to block the certification of the election – gave a briefing talk which Lewis described as being about "the constitutional guidelines by which elections could be paused . . ." [Ex. B, p. 242:6-243:11; Ex. EE]

- While at the Willard, Luelsdorff assisted at least one high profile Trump ally, Joe Oltmann, by escorting him from Chafian's room to Rudy Guiliani's room. [Ex. Y, p. 119:18 – 120:11]. Luelsdorff entered Guiliani's room and a picture was taken, showing Luelsdorff, Guiliani, and Eastman. [Ex. FF].

## II.   ARGUMENT

### A. The Plaintiffs misunderstand the concept of "limited-purpose public figure" in the context of defamation law.

"[I]t is perfectly reasonable for the court to make the legal determination [as to whether a plaintiff is a limited-purpose public figure] on the undisputed facts pretrial on summary judgment." *Franchini v. Bangor Publ'g Co.*, 109 F.4th 13, 31 (1st Cir. 2024). The undisputed facts demonstrate

3

that 1AP, Lewis and Luelsdorff are limited-purpose public figures relative to Abramson's statements.

In assessing whether a plaintiff is a limited public figure, the operative consideration is the nature and extent of the plaintiffs' "participation in the particular controversy giving rise to the defamation." *Thomas v. Tel. Publ'g Co.*, 155 N.H. 314, 341 (2007); *Lassonde v. Stanton*, 157 N.H. 582, 590 (2008).

The gravamen of the Plaintiffs' argument is that through his publications Abramson asserted that the Plaintiffs were involved in the January 6th breach of the Capitol. It follows, according to them, that in order to be entitled to the actual malice standard, Abramson must demonstrate that the Plaintiffs, through their acts or speech, intended to influence public perception about the January 6th breach of the Capitol.[1] Obj. at 3-4, *citing Bruno & Stillman, Inc. v. Globe Newspaper Co.*, 633 F.2d 583 (1st Cir. 1980). They argue that since none of the facts relied upon by Abramson demonstrate that they intended to influence public perception in support of the breach of the Capitol, they cannot be deemed to be limited-purpose public figures relative to that subject matter.

In arguing that Abramson's statements implicate them in the Capitol breach, the Plaintiffs ignore both the specific words of the statements and their context. They have offered nothing to counter the fact that Abramson never published any statement in which he actually claimed that the Plaintiffs breached the Capitol. They do not contest that Abramson publicly stated that "1AP members don't appear to have stormed the Capitol." [Ex. HH, Statement 38]. And when

---

[1] Although they correctly state that Abramson must demonstrate that "the Plaintiffs, through their acts or speech, intended to influence public perception about the January 6th 'insurrection,' attack on the Capitol **or any other subjects of the Actionable Statements**", their argument relates only to the first clause. Obj. at 3-4 (emphasis added).

4

understood in the broader context of events, as laid out above as well as in more detail in the Defendant's motion, Abramson's statements relate to the Plaintiffs' involvement in efforts to "pause" the certification of the 2020 election on January 6, 2021, as part of overall efforts to challenge the validity of the election results. For these reasons, Abramson is not required to show that any of the Plaintiffs engaged in publicity specifically supportive of the breach the Capitol. Abramson is only required to show that the Plaintiffs "have thrust themselves to the forefront" of the controversy regarding whether the certification of the election should have moved forward on January 6, as well as the validity of the election "in order to influence the resolution of the issues involved." *See Gertz v. Robert Welch*, 418 U.S. 323, 345 (1974).

      A defendant can make the requisite showing when the plaintiff has made "'statements bearing on the' controversy or 'sought to influence public opinion' regarding the controversy." *Franchini v. Bangor Publ'g Co.*, 109 F.4th 13,33 (1st Cir. 2024 )at 33 (quoting *Pendleton v. City of Haverhill*, 156 F.3d 57, 69-70 (1st Cir. 1998)). The Plaintiffs claim that Abramson's burden to show that they "thrust" themselves into the public controversy is a heavy one, citing *Bruno & Stillman*, a case involving a corporate manufacturer of goods. *Bruno & Stillman, Inc. v. Globe Newspaper Co.*, 633 F.2d 583, 591 (1st Cir. 1980). In Bruno, the First Circuit reversed the District Court for having taken "the broad position of deeming all corporations that sell products public figures, at least in relation to allegedly defamatory statements made about the quality of their products." 633 F.3d at 589. The plaintiff had made public statements to refute the defamatory statements published by the Boston Globe about purported defects with the plaintiff's product. The First Circuit held that the plaintiff company's positive reputation as a manufacturer-merchant and its post-defamation attempt to protect that reputation were not enough to make it a limited-purpose public figure. *Id.* at 592.

5

Subsequent cases have clarified that the "thrust" made by a defamation plaintiff need not be made with the specific objective of being in the forefront of the controversy so long as the plaintiff "undertakes a course of conduct that invites attention, even though such attention is neither sought nor desired. . ." *Very Reverend Georges F. de Laire, J.C.L. v. Voris*, 738 F. Supp. 3d 123, 136 (D.N.H. 2023) (quotations omitted).

Here, based on the facts that the Plaintiffs have admitted or failed to refute, there can be no reasonable dispute that Lewis thrust himself and 1AP into the public controversy of the validity of the 2020 election. Lewis and 1AP made numerous public statements, through numerous outlets, to tens of thousands of people, claiming that the election was fraudulent, that it should not be certified, and when it was certified, that the President should invoke the insurrection act to stop the transfer of power. And Lewis and 1AP provided purported "intelligence" on election fraud to high profile individuals – individuals well enough connected that they were able to arrange a 6-hour meeting with the President of the United States to try to convince him not to allow the certification to move forward. All of these actions were undertaken long before Abramson made his first statement about the Plaintiffs.

While Luelsdorff was not as vocal as Lewis, he also engaged in a course of conduct that invited attention on the subject of the 2020 election controversy. He published statements questioning the validity of the election. He published statements encouraging members of the public to support 1AP in its efforts to protect "whistleblowers" coming forth "about the massive fraud they witnessed" during the election. After the capitol had been breached on January 6th, he went to the Willard Hotel, a location described as a "Trump team 'command center' for effort to deny Biden the presidency." [Ex. DD]. While there, he chose to enter Rudy Guiliani's room (according to him without an invitation) where he was photographed with Guiliani and Eastman.

And in his role as a 1AP volunteer, Luelsdorff drove Flynn, Powell and Byrne to the 6-hour December 18, 2020 meeting with Trump. While he made this trip in the context of providing security to Flynn, Powell and Byrne, his volunteer activities were not those of a disinterested person merely providing security. 1AP was an organization with a mission that included supporting efforts to show that the 2020 election was fraudulent. Luelsdorff's presence with and assistance to these individuals coupled with his public statements makes it "perfectly reasonable for the court to make the legal determination" that he is a limited-purpose public figure for purposes of Abramson's publications. *See Franchini v. Bangor Publ'g Co.*, 109 F.4th 13, 31 (1st Cir. 2024).

Lastly, the Plaintiffs' stated belief that "this Court already determined that Actionable Statements all involve false and defamatory assertions about Plaintiffs' involvement in the January 6 'insurrection' and attack on the Capitol, and there is no evidence that Plaintiffs 'thrust' themselves into the controversy surrounding the January 6 'insurrection' and attack on the Capitol or did anything to try to 'influence its outcome'" demonstrates a fundamental lack of understanding of the Court's ruling on Abramson's Motion to Dismiss.  When ruling on a motion to dismiss, the court must "accept as true all well-pleaded facts set out in the complaint and indulge all reasonable inferences in favor of the pleader." *Griffin v. Burndy, LLC & Hubbell Inc.*, No. 24-cv-00141-LM-AJ, 2025 U.S. Dist. LEXIS 272631, at *1 (D.N.H. Oct. 30, 2025), *quoting SEC v. Tambone*, 597 F.3d 436, 441 (1st Cir. 2010).  In contrast, "Rule 56 erects a hurdle for the nonmovant that is far more difficult to clear than the relatively modest hurdle posed by [a Rule 12 motion] simpliciter." *Gulf Coast Bank & Tr. Co. v. Reder*, 355 F.3d 35, 38 (1st Cir. 2004), *citing Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir. 1990) (explaining that summary judgment should be granted unless the party opposing the motion demonstrates, by competent evidence, a genuine issue of material fact); *see also* Fed. R. Civ. P. 56(a).

7

Here, the Plaintiffs have failed to clear the summary judgment hurdle because they have failed to demonstrate, by competent evidence, that facts show them as anything but limited-purpose public figures. Instead, the undisputed facts demonstrate that all three of the Plaintiffs' engaged in conduct and made public statements, thereby inviting attention, for the purpose of influencing the outcome of the controversy surrounding the 2020 election. For the above-stated reasons, there is no genuine dispute that the Plaintiffs are limited public figure for purposes of the controversy surrounding the legitimacy of the 2020 election. *Gertz*, 418 U.S. at 351; *Thomas*, 155 N.H. at 341.

### B. Abramson's statements are concerning matters of public concern, which under New Hampshire law, requires the Plaintiffs to prove actual malice.

Although the Plaintiffs acknowledge Abramson's reliance on *MacDonald v. Jacobs*, 171 N.H. 668 (2019), they argue that speech concerning matters of public concern does not evoke the protection of the actual malice standard. The Court in *MacDonald*, however, is dispositive precent to the contrary. "[S]peech on matters of public concern is at the heart of … First Amendment protection." *Id*. at 676, *quoting Dunn & Bradstreet, Inc. v. Greenmoss Builders*, 472 U.S. 749, 758-59 (1985). Quoting the U.S. Supreme Court, the N.H. Supreme Court recognized, "[t]he First Amendment was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people" whereas "speech on matters of purely private concern is of less First Amendment concern" because "there is no threat to the free and robust debate of public issues; there is no potential interference with a meaningful dialogue of ideas concerning self-government; and there is no threat of liability causing a reaction of self-censorship by the press." *Id., quoting Dunn & Bradstreet* 472 U.S. at 759-60 (internal quotations and brackets omitted). Thus, according to the N.H. Supreme Court, for matters of public concern a showing of

actual malice is necessary to avoid offending the First Amendment. *Id., quoting Dunn & Bradstreet* 472 U.S. at 761.

The Plaintiffs do not argue, nor could they reasonably argue, that statements concerning the validity of the 2020 presidential election do not relate to a "matter of political, social, or other concern to the community" and are not the "subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.'" *See MacDonald* at 676, *citing Snyder v. Phelps*, 562 U.S. 443, 453, 131 S. Ct. 1207 (2011) (quotation omitted) and *San Diego v. Roe*, 543 U.S. 77, 83-84, 125 S. Ct. 521 (2004) (per curiam). They also seem to accept that Abramson's statements concern the validity of the 2020 presidential election in the context of reporting on the reports of others who identified those who were publicly involved in the attempt to prevent the January 6th election certification. Consequently, there is no dispute that Abramson's statements were on a matter of public concern, triggering proof of actual malice.

**C.  There is no evidence that Abramson acted with actual malice toward the Plaintiffs.**

The Plaintiffs assert that Abramson's "argument concerning actual malice falls woefully short of meeting his burden to establish based on uncontroverted record evidence that none of the Plaintiffs can prove that he published the Actionable Statements with knowledge of their falsity or reckless disregard of their truth. Obj. at 18. The Plaintiffs then go on to repeat the fallacy that the Court has already rendered judgment in their favor on this subject.

Abramson has met his initial burden of showing that there are no disputed facts that could reasonably be inferred as proof of actual malice through the Plaintiffs own admissions that they have never met or interacted with Abramson and that they have no information to suggest that he had any actual malice towards them, other than the mere fact that he published the allegedly defamatory statements. . [Ex. D, p. 251:1 – 253:1; Ex. Y, p. 177:16-23; 179:5 – 7]. Accordingly,

9

the Burden shifts to the Plaintiffs' to show there exists a genuine dispute as to any material fact. *See, e.g., Alicea v. Cincinnati Inc.*, 166 F.4th 245, *9 (1st Cir. 2026), citing Fed. R. Civ. P. 56(a). Even in the face of a movant asserting that there is "an absence of evidence to support claims on which the non-movant bears the burden of proof," the non-movant may defeat a summary judgment only "by demonstrating, through submissions of evidentiary quality, that a trial worthy issue persists." *Id.* (multiple quotations and citations omitted). "'[A] conglomeration of 'conclusory allegations, improbable inferences, and unsupported speculation' will not suffice." *Id., citing Calvi v. Knox County*, 470 F.3d 422, 426 (1st Cir. 2006) (other citations omitted).

Abramson, Lewis and Luelsdorff have each been deposed. Discovery is now closed.[2] The time for the Plaintiffs to have discovered evidence to support their claim for actual malice has passed. Their argument that there is some form of circumstantial evidence from which the Court can infer actual malice is nothing but "conclusory allegations, improbable inferences, and unsupported speculation" that is insufficient to thwart summary judgment.

**III.   CONCLUSION:**

For the reasons set forth above, as well as the reasons included in the motion for summary judgment, Abramson is entitled to judgment in his favor. Lewis, 1AP and Luelsdorff were limited purpose public figures. Furthermore, Abramson's statements were about a matter of public concern. Accordingly, in order to have a viable claim for defamation, the Plaintiffs must have evidence to establish that Abramson acted with actual malice. There is no such evidence on the record in this case.

WHEREFORE, the Defendant Seth Abramson respectfully requests that this Court:

A.  Grant the Defendant's motion for summary judgment;

---

[2] By agreement, the Defendant is continuing to attempt to secure the deposition testimony of Joe Oltmann and John Eastman, neither of whom has information bearing on actual malice.

B. Schedule a hearing on this matter; and

C. Enter such additional relief as may be just and equitable

                        Respectfully submitted,

                        SETH ABRAMSON

                        By His Attorneys,

                        Poulin Hurley Markis & Lyons P.A.

March 3, 2026         By:  /s/ Elizabeth L. Hurley, Esq
                            Elizabeth L. Hurley, Esq.
                            NH Bar #16851
                            Clara E. Lyons, Esq.
                            N.H. Bar #20054
                            1838 Elm Street
                            Manchester, NH 03104
                            (603) 634-4300
                            ehurley@phml.law
                            clyons

## **CERTIFICATE OF SERVICE**

    The foregoing will be served all counsel of record using the Court's CM/ECF system on March 3, 2026.

March 3, 2026                      By:  /s/ Elizabeth L. Hurley, Esq.
                                                Elizabeth L. Hurley, Esq.