UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| ROBERT PATRICK LEWIS, PHILIP A. LUELSDORFF, and 1AP, INC., <br><br> Plaintiffs <br><br> v. <br><br> SETH ABRAMSON, <br><br> Defendant | Case No. 1:22-cv-00126-PB |

**PLAINTIFFS' SURREPLY MEMORANDUM OF LAW
IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

Plaintiffs, Robert Patrick Lewis, Philip A. Luelsdorff, and 1AP, Inc., by and through their undersigned counsel, file their Surreply to the Reply to Objection to Motion for Summary Judgment [ECF 114] (the "Reply") filed by Defendant, Seth Abramson, and state as follows:

Abramson's Reply persists in advancing facts that are not relevant or material to Plaintiffs' public figure status and refusing to accept this Court's decision [ECF 26 at pp. 39-50] concerning the actionability of Statements 4, 5, 6, 25, 34, 37, and 38 (the "Actionable Statements"). Abramson clearly thinks he should be the one who gets to define the "public controversy" at issue here, but that decision rests solely with the Court based on the subject matter of the Actionable Statements.[1] In that regard, this Court already decided that the Actionable Statements can be reasonably

---

[1] *See* Motion [ECF 108] at p. 14 (citing *Thomas v. Tel. Publ'g Co.*, 155 N.H. 314, 341 (2007)) (emphasis added)).

1

understood as making assertions that Plaintiffs were involved in the January 6, 2021, insurrection and breach of the Capitol,[2] **not** the validity of the 2020 election or contesting its results.

"To analyze the plaintiff's role, the court considers 'whether the defamed individual deliberately 'thrust [themselves] into the vortex' of ***that controversy*** or otherwise 'engage[d] the public's attention in an attempt to influence ***its*** outcome.'" *Lassonde v. Stanton*, 157 N.H. 582, 590 (2008) (quoting *McKee v. Cosby*, 874 F.3d 54, 61 (1st Cir. 2017)) (emphasis added). As explained in *Very Reverand Georges F. de Laire, J.C.L. v. Voris* ("*Voris*"), "limited-purpose public figure status ***pertains only to "a limited range of issues' the scope of which is determined by the nature and extent of [the plaintiff's] participation in the particular controversy giving rise to the defamation***.'" *Voris*, 738 F. Supp. 3d 123, 137 (D.H.H. 2023) (emphasis added) (citations omitted).

After refusing to accept this Court's prior ruling concerning the subject matter of the Actionable Statements, the Reply concedes that there is **no evidence** that Plaintiffs "engaged in publicity specifically supportive of the breach of the Capitol" or "thrust themselves to the forefront" or "engage[d] the public's attention in an attempt to influence (the) outcome" of the particular public controversy that is the subject of the Actionable Statements. Instead, the Reply

---

[2] The Court determined that the Actionable Statements assert that Plaintiffs ware "domestic insurgents" involved in "coordinating the attack on the Capitol," "the planning and execution of the events of January 6," "coordinating an insurrection," and "[an] alleged threat to kill a federal witness who had spoken to the House January 6 Committee;" that "Luelsdorff 'observed' the attack on the Capitol from the Willard room," which "could be understood to mean that Luelsdorff was in the Willard room for a substantial amount of time…[and]…associates Luelsdorff with the events of January 6, as well as the allegedly criminal activities of the Willard 'war room," and could even be understood to imply support for those events;" and that Plaintiffs were involved in "seditious activity" and being "involved in or otherwise supportive of the attack on the Capitol" and playing a "'support role[]' in an '[i]nsurrection.'" *See* Memorandum and Order [ECF 26] at pp. 39-50

incorrectly suggests that a plaintiff need not "thrust" themselves to the forefront of a controversy but merely need to "undertake[] a course of conduct that invites attention" to be deemed a public figure. *See* Reply at p. 6 (citing *Voris*, 738 F. Supp. 3d at 133). This is not an accurate statement of the law and is based on a partial quote from *Voris* that omits the ensuing sentence explaining that "public figures engage 'the attention of the public in an attempt to influence the resolution of the issues involved' or use a newsworthy event 'as a fulcrum to create public discussion.'" *Voris* 738 F. Supp. 3d at 133 (citations omitted).

The Reply also incorrectly suggests that the conclusions this Court reached about the Actionable Statements in its Memorandum and Order at the dismissal stage are not binding. *See* Reply at p. 7. However, the stage of the proceeding at which that decision was reached is irrelevant because this Court correctly reached those conclusions **as a matter of law** based on the content of the statements themselves (not any ancillary facts). *See Goscard v. Hall*, 175 N.H. 462, 465, 293 A.2d 472, 475 (2022) ("Whether a given statement can be read as being or implying an actionable statement of fact is a question of law to be determined by the trial court in the first instance, considering the context of the publication as a whole").

Abramson's "public concern" argument remains wrong and invites error. *See* Reply at pp. 8-9. *MacDonald v. Jacobs* does not require proof of actual malice to support a private figure defamation claim—even where that claim involves statements about an issue of public concern. *MacDonald v. Jacobs*, 171 N.H. 668, 676-77 (2019).[3] Abramson misguidedly relies on a portion

---

[3] In fact, the court in *MacDonald* stated precisely what this Court held in its Memorandum and Order: "If the plaintiff in a defamation case is a public official or public figure, he or she must prove that the statement was made with "actual malice," meaning "with knowledge that [the statement] was false or with reckless disregard of whether it was false or not." It is, however, axiomatic that, if the plaintiff is a private person, he or she "may recover compensatory damages upon a showing that the defendant was negligent in publishing a defamatory falsehood." *Id.* at

3

of *MacDonald* that addresses the implications of speech on matters of "public concern" specifically in the context of "the defendant['s] conten[tion] that pursuant to *Munson*, **a punitive damage claim** in New Hampshire requires proof of actual malice." *Id.* at 675 (emphasis added). This is because the Supreme Court has determined that the federal constitution imposes certain requirements on defamation actions independent of state law; one of which prohibits the imposition of punitive damages absent proof of actual malice. *See Veilleux v. Veilleux*, 206 F. 3d 92, 108 (1st Cir. 2000) (citations omitted).

New Hampshire does not require private figures to prove actual malice based solely on the subject matter of the speech being of public concern. Rather, it follows the mainstream interpretation of *Gertz*, which rejected the earlier approach in *Rosenbloom v. Metromedia, Inc.* that focused on whether speech concerned matters of "public or general concern" regardless of the plaintiff's public vs. private status. *Bruno & Stillman, Inc. v. Globe Newspaper Co*., 633 F.2d 583, 586-589 (1980); *Gertz v. Robert Welch, Inc*., 418 U.S. 323, 346 (1974); *Currier v. Town of Gilmanton*, 621 F. Supp. 3d 233, 251-252 (2022); *Thomas v. Tel. Publ'g Co*., 155 N.H. 314, 341, 929 A.2d 993 (2007) (quoting *Gertz* v., 418 U.S. at 345); *Voris*, 738 F.Supp.3d at 133 (citations omitted). Consistent with well-established law, this Court already correctly recognized that "private plaintiffs can succeed in defamation actions on a state-set standard of proof (typically, negligence) . . .[but] the Constitution imposes a higher hurdle for public figures[.]" *See* Memorandum and Order [ECF 26] at pp. 17-18 (citing *Pendleton v. City of Haverhill*, 156 F.3d 57, 66 (1st Cir. 1998) and *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964)).

---

674-675. Simply stated, where plaintiffs are private persons "the New York Times actual malice standard does not apply." *Id*. at 675 (citing *Lassonde* 157 N.H. at 589).

Finally, Abramson continues to summarily and incorrectly claim to have met his summary judgment burden on actual malice based entirely on the legally unsupported suggestion that Plaintiffs somehow cannot prove actual malice because they were asked at their depositions whether they ever met Abramson or knew whether he held ill-will toward them.[4]  *See* Reply at p. 9.  This argument is factually and legally baseless and does not even attempt to dispute all the legally recognized forms of circumstantial evidence of actual malice present in this case.  *See* Objection [ECF 113] at pp. 5-9 and 18-25.  This evidence, among other things, shows that Abramson is a highly intelligent, educated lawyer and journalist who taught journalism, legal advocacy, rhetoric, composition, and writing for years.  Despite being an "investigative curatorial journalist" who knew exactly what he was writing and had compiled a "mountain of evidence," he published horrible statements[5] about Plaintiffs for which he had no factual support whatsoever, essentially inventing facts to advance a preconceived narrative while deliberately turning a blind-eye to obvious reasons to doubt the veracity of his statements; all while harboring bias and ill-will toward Plaintiffs and failing to adhere to his own "OATH" ethical journalistic principles.  *See* Objection [ECF 113] at pp. 5-9. The accumulation of this unrefuted evidence is more than sufficient for a reasonable jury to find actual malice with convincing clarity.

---

[4] Notably, Abramson failed to offer a shred of evidence concerning his own subjective intent when publishing the Actionable Statements.  He also refuses to acknowledge what these statements reasonably convey—which makes it impossible for him to establish a subjective belief in their truth.

[5] The Actionable Statements, in and of themselves and in combination with other statements around them "give rise to an inference that [a defendant] was motivated, not by truth, but by her personal feelings about [the plaintiff]. *De Lench v. Archie*, 406 F.Supp.3d 154, 160 (D. Mass. 2019).

Respectfully submitted, this 9th day of March 2026,

/s/ Shane B. Vogt
Shane B. Vogt, Esq.
Florida Bar No. 257620
E-mail: shane@svogtlaw.com
VOGT LAW
625 E. Twiggs St.
Suite 1090
Tampa, Florida 33602
Tel: (813) 737-0717
*(Admitted Pro Hac Vice)*

Lead Counsel for Plaintiffs

-and-

/s/ Jacob M. Rhodes
Jacob M. Rhodes, Esq. (NH Bar#274590)
rhodesj@cwbpa.com
Cleveland, Waters and Bass, P.A.
2 Capital Plaza, Fifth Floor
Concord, NH 03301
(603) 224-7761

Local Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2026, a copy of the foregoing was served electronically upon all persons having filed electronic appearances in this case through the court's ECF system.

Date: March 9, 2026
/s/ Jacob M. Rhodes
Jacob M. Rhodes, Esq. (NH Bar#274590)