UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| PHILIP A. LUELSDORFF<br><br>Plaintiff,<br><br>v.<br><br>SETH ABRAMSON,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 1:22-CV-00126-PB |

**DEFENDANT'S REPLY TO PLAINTIFF'S OBJECTION TO THE MOTION FOR SUMMARY JUDGMENT**

NOW COMES the Defendant, Seth Abramson, by and through his attorneys, Poulin Hurley Makris & Lyons P.A., and hereby submits the foregoing Reply to Plaintiff Philip A. Luelsdorff's Objection to Abramson's Motion for Summary Judgment. In support, Abramson states as follows:

Abramson offers this reply to address two key errors in Luelsdorff's objection. First, Luelsdorff attempts to manufacture a factual dispute where none exists. While it is true that there are disputed facts in this case, every fact upon which Abramson's motion relies is either undisputed or is presented in the light most favorable to Luelsdorff. Instead of addressing this reality, Luelsdorff attempts to obscure it by citing factual disputes that are not necessary for the Court to consider in deciding Abramson's motion. Second, Luelsdorff's objection relies upon an erroneous and legally unsupported argument that when assessing the context of an allegedly defamatory statement to consider whether it may be actionable, the Court should evaluate any and all statements ever made by Abramson about Luelsdorff. But the law is much narrower and requires considering the viability of each statement specifically based on the context of the particular publication in which it appeared. These issues are addressed in further detail below.

## I. There is no factual dispute that impacts summary judgment.

Luelsdorff attempts to manufacture a factual dispute where none exists by: (1) citing a plethora of irrelevant facts; (2) distorting the record; and (3) asserting that Abramson is asking this Court to make determinations about disputed facts when Abramson did no such thing.

With respect to the first issue, Luelsdorff devotes a considerable amount of space in his objection to discussing Luelsdorff's background [Doc. 130, p. 2], the purported impact of the statements on Luelsdorff and his family [*Id.* at p. 10 – 11], Abramson's professional and educational credentials [*Id.* at p. 9], Abramson's efforts to bring "insurrectionist kingpins" to "justice" [*Id.* at p. 9-10], and statements made by federal officials regarding the events of January 6th [*Id.* at p. 6-7]. Luelsdorff also cites numerous statements that Abramson made about 1AP, Lewis, and/or Luelsdorff that are not the actionable statements upon which this lawsuit is presently based. [*Id.* at 2 – 5 (referencing dismissed statements 2, 9, 10, 11, 16, 26, 29, 35, 39)]. None of this information is remotely relevant to the questions presented in the motion for summary judgment. Luelsdorff is merely attempting to cloud the record by throwing the proverbial spaghetti at the wall.

With respect to the second issue, on page 2 of the objection Luelsdorff includes a caption that states: "Abramson plucks Plaintiff from literal obscurity." [Doc 130, p. 2]. Under that heading are sentences written in the passive voice about the photograph at the center of the case being posted to social media on January 6, 2021, a crowdsourced effort to identify the people in the photograph, and an anonymous tip that first named Luelsdorff. The final sentence is the section argues that Abramson was "instrumental" in driving public perception about Luelsdorff. However, the underlying record cited by Luelsdorff in in support of this claim makes it clear that Abramson was not the one who posted the photograph on January 6, 2021, was not the one who initially

identified Luelsdorff, and was not the impetus of the crowdsourced effort. [*See* Doc. 113-1, p. 14:3 – 18:20].

With respect to the third issue, Luelsdorff wrongly claims that the Abramson argues for the Court to decide facts in his favor in order to secure summary judgment. This is simply incorrect. In footnote 1 of the motion for summary judgment, Abramson states that: "several of the facts included in this statement are in dispute. *For the purposes of this motion, Abramson is presenting the facts in the light most favorable to Luelsdorff*. Abramson reserves the right to introduce evidence and testimony challenging Luelsdorff's version of events at trial." [Doc. 129-1, (emphasis added)]. Consistent with this statement, in the body of the "Statement of Material Facts" section of the motion, Abramson cites only undisputed facts or states disputed facts in the light most favorable to Luelsdorff. [*See generally* Doc. 129-1, p. 2 – 8]. All the relevant supports in the record are provided. Although at certain points in the statement of facts Abramson mentions – by footnote – that a particular fact is disputed and will be an issue in trial, the body of the motion includes Luelsdorff's version of the facts, and substantively Abramson's argument assumes that Luelsdorff's version is accurate. In sum, contrary to Luelsdorff's arguments, Abramson never asks the Court to accept his version of a disputed fact, and it is not necessary for the Court to do so to rule in Abramson's favor.

Indeed, despite claiming the existence of purported disputed facts that defeat summary judgment, Luelsdorff does not actually identify any such facts. As discussed above, Luelsdorff identifies a plethora of additional facts – many of which are disputed – but none of which Abramson cited in his motion. These additional facts are not determinative, and Luelsdorff offers no substantive explanation as to why they would be determinative. Luelsdorff also mentions Joe Oltmann's testimony regarding the length of time that Luelsdorff was in Guiliani's room, but

Abramson explicitly argues that he is entitled to summary judgment even assuming that Luelsdorff's version of the length of time he spent in Guiliani's room is correct. [*Compare* Doc. 130, p. 7 – 8 *with* Doc. 129-1, p. 7-8, 11]. Luelsdorff also mentions a "dispute" about whether the TV was on in Guiliani's room. But there is no such dispute. Luelsdorff offered no testimony on this point, as he claimed he could not remember. Oltmann testified that the TVs were on; accordingly the evidence that the TV was on in Guiliani's room is unchallenged and not in dispute. [*Compare* Doc. 129- 2, p. 131:22 *with* 129-5, p. 53:11 – 64:10]. And, for all the other reasons cited in Abramson's motion, Abramson is entitled to summary judgment regardless of whether or not the TVs were on.

For these reasons, as well as all the reasons set forth in Abramson's motion, there is no factual dispute that presents a bar to summary judgment. Even assuming the facts in the light most favorable to Luelsdorff, he does not have a viable cause of action against Abramson.

## II. Statements 4, 5, 6, 25, 34, and 37, which do not reference Luesldorff, cannot be understood to be "of and concerning him."

Luelsdorff argues that the six statements that Abramson made about 1AP and/or Lewis may be understood to be "of and concerning" him because the "circumstances of publication reasonably give rise to the conclusion that" they were intended to reference Luelsdorff. [Doc. 130, p. 18-19]. In presenting this argument Luelsdorff assumes – without offering any explanation or citation to applicable legal authority – that everything Abramson has ever published about Luelsdorff, 1AP and/or Lewis must be read in conjunction, as if all of this content constitutes one single publication and thus relevant context, regardless of whether this information appeared in entirely distinct articles or twitter threads published months apart.

"It is axiomatic that words alleged to be defamatory must be read in the context of the publication taken as a whole." *Duchesnaye v. Munro Enters.,* 125 N.H. 244, 249 (1984) (citation

omitted). However, what constitutes a "publication" has a specific meaning. As the Court and the parties have agreed in this case, with respect to a statement made on Twitter, "publication" includes "the context of the thread in which the individual tweet" appear[s]," including any embedded links. [Doc. 130, p. 21 (*citing* Doc. 26 at 34 n.14)]. Pursuant to this properly understood framework, none of the six statements are capable of defamatory meaning as to Luelsdorff.

**Statement 4.** This six-tweet thread published on June 26, 2021 describes Robert Patrick Lewis as a "legitimately dangerous domestic insurgent[]" [Doc. 20-8, p. 2-3]. Neither 1AP, nor Luelsdorff are referenced in the thread. The photograph of Luelsdorff is not included. There is no link to other articles that discuss Luelsdorff or describe him. Simply put, in context, statement 4 cannot be reasonably understood to be about Luelsdorff.

**Statement 5.** Statement 5 is part of a 25-tweet thread published on June 28, 2021 that states in relevant part that 1AP was in a "support role" on "Insurrection Day" in coordination with the White House, Stope the Steal, Infor Wars, and the Proud Boys. [Doc 20-8, p. 4 – 7]. Other than this single reference to 1AP acting in a "support role," the thread includes no other allegations against 1AP. It does not reference Lewis or Luelsdorff by name. It includes a link to a Proof article also published on June 28, 2021. [Doc 20-4]. The linked article states that "1st Amendment Praetorians (1AP) [were] acting as security for top agents of Team Trump, and lists "Robert Patrick Lewis, 1st Amendment Praetorians" as part of a "list of insurrectionist leaders confirmed to have been at the Willard as tome point on January 5 or 6 . . ." Leulsdorff is not mentioned or described in either the twitter thread or the article. The picture of him in Guiliani's room is not included in the Twitter thread or the article. Thus, when considering the full context of the publication of statement 5, it is plainly not a statement about Luelsdorff.

**Statement 6.** Statement 6 is a statement about 1AP acting as "security for top agents of Team Trump"; it appears in the June 28, 2021 Proof article discussed above with respect to Statement 5. [Doc 20-4]. For the same reasons discussed with respect to Statement 5, Statement 6 cannot be understood in context to be about Luelsdorff.

**Statement 25.** Statement 25 is part of a 6 -tweet thread published on October 20, 2021. The allegedly defamatory statement is that Lewis was a "domestic extremist" and called the "Willard a 'war room.'" [Doc. 20-8, p. 18-19]. Once again, Leulsdorff is not mentioned by name in the tweet. The picture of him in Guiliani's room is not included. Even when considering the full context of the publication of statement 25, it is simply not a statement about Luelsdorff.

**Statement 34.** Statement 34 describes the "1st Amendment Praetorian" as participating in a "war room" inside the Willard. It is part of a twitter thread that does go on to reference Luelsdorff. [Doc. 20-8, p. 37 – 38]. However, for the reasons discussed in the motion for summary judgment, the statement is not defamatory as it is substantially true.

**Statement 37**. This statement relates to an allegedly threatening phone call made by Michael Kenny to a January 6th Committee witness "on behalf of 1AP leadership." It is part of a 15-tweet thread posted on June 6, 2022. [Doc. 20-8, p. 39-43]. Luelsdorff argues that this statement may be defamatory as against him because: (1) there is no proof that Kenny made the allegedly threatening call on behalf of 1AP leadership and (2) Abramson identified Luesldorff as being part of 1AP Leadership. However, Abramson did not identify Leulsdorff as a part of 1AP Leadership in the twitter thread in which Statement 37 appears, nor did he link in the twitter thread to any of the articles where Leulsdorff was so-identified. Luelsdorff does not claim otherwise. Accordingly, there is nothing in the context of the publication of Statement 37 that could be understood to refer to Luelsdorff.

Luelsdorff acknowledges that when assessing the defamatory nature of a statement, the Court "must read the statement in the context of the publication taken as a whole." However, he implicitly argues for a grossly expanded version of this principal. His position is that the court must consider not merely the specific publication taken as a whole, but instead must consider every statement the Defendant has ever made, regardless of whether or not the statement is part of the relevant publication. Indeed, in support of his position, Leulsdorff cites statements 2, 7, 9, 10, 11, 16, 22, 26, 27, 28, 29, 30, 31, 32, 35, and 39 from the Amended Complaint as relevant context for understanding the surviving statements. These statements were dismissed at the motion to dismiss stage, and do not appear in the relevant surviving publications.

The cases Luelsdorff cites – in passing – regarding the standard that a court "must read the statement in the context of the publication taken as a whole" offer no support for such an expansive interpretation. *See Collins v. Univ. of N.H.*, 746 F.Supp. 2d 358, 373 (D.N.H. 2010); *Duchesnaye v. Munro Enters.,* 125 N.H. 244 (1984); and *Piccone v. Bartels*, 785 F.3d 766, 771 (1st Cir. 2017). [Dopc. 130, p. 13]. *Piccone v. Bartels* involved only a single 45-minute conversation with a DHS officer. *Piccone*, 785 F.3d 766, 771 (1st Cir. 2017). *Collins* involved two statements: a press release that the plaintiff, a professor, had been placed on leave due to pending criminal charges, and another statement to faculty that in the event they saw the plaintiff – who had been banned from campus – that they should avoid contact and notify the police. 746 F.Supp. 2d at 372-73. Critically, the faculty received the instructions about contacting the police in the same email to which the press release was also attached. *Id.* at 373-74. The plaintiff argued that in this context, the second statement telling faculty to contact the police if they saw him falsely implied he was "armed and dangerous." *Id.* The Court agreed that it should consider the press release as part of the context of assessing the defamatory nature of the second statement *because both statements were part of the*

*same email - and thus was part of the same publication*. *Id.* The Court ultimately found that neither statement was capable of defamatory meaning.

Similarly, at issue in *Duchesnaye* was a front-page article and an editorial. *Duchesnaye,* 125 N.H. at 248. The front page article identified the plaintiff as a 56-year old Berlin man who was recently convicted of making harassing phone calls. The underlying facts where that the plaintiff had simply made calls, but not said anything when the recipient picked up the line. The editorial was on the subject of "obscene and harassing phone calls," and stated that some people "who make these calls are unstable persons who need help. In fact . . . [a] few days ago a 56-year-old Berlin man was arrested and convicted in District Court of making these calls." *Id.* The plaintiff argued that the editorial was defamatory to him because, based on the front-page news article, readers would understand that he was the 56-year-old Berlin man referenced, and conclude that he had made obscene calls. The Court considered the news article as context for allowing the defamation action with respect to the editorial to proceed. But critically – just as *Collins* involved two statements published together and at the same time – the article and editorial were published *in the same newspaper on the same day*. *Id.* at p. 248.

Luelsdorff also cites *Conformis, Inc. v. Aetna, Inc.*, 548 F.4th 517 (1st Cir. 2023) as support for his contention that "he can show special application of the defamatory matter to himself" by relying on the generalized universe of statements made by Abramson. But *Conformis* directly cuts against Luelsdorff's argument. As discussed in greater detail in the motion for summary judgment, in *Conformis*, there were two allegedly defamatory publications – a "Policy" that included a subsection specifically related to the plaintiff, and a separate generalized online glossary. The Court held that the Policy could be defamatory because of the subsection specifically mentioning the plaintiff, but the statement in the glossary could not be, because "we do not believe that anyone

reading the glossary statements would reasonably interpret them, standing alone, as referring to the [plaintiff]." *Conformis*, 548 F.4th at 530. Thus the *Conformis* court explicitly rejected the idea that it should consider any and all statements made by a defendant relevant context when assessing a discrete publication.

The other cases cited by Luelsdorff do not address the issue of whether statements made in one publication can provide necessary context to create a claim for defamation in a separately published statement expressly made about a different party and/or a larger group, and thus do not provide any support for Luelsdorff's position. *See Ball v. Taylor*, 416 F.3d 915 (8th Cir. 2005) (Although the speaker defendant did not specifically name the plaintiffs in his speech, he handed the audience copies of a document which identified the individual plaintiffs by name and address); *Fetler v. Houghton Mifflin Co.*, 364 F.2d 650 (2d. Cir. 1966) (involving the question of whether a character in the plaintiff's brother's book could reasonably be understood to be intended to portray the plaintiff); *Florio v. Gallaudet Univ.*. 619 F. Supp. 3d 36 (D.C. Cir. 2022) (dismissing a defamation claim because the challenged statements were about alumni of a fraternity and thus did not adequately concern the individual plaintiffs); *Handelman v. Huslter Magazine, Inc.*, 469 F. Supp. 1048 (S.D.N.Y. 1978) (assessing whether the reference to a "lawyer" in an article discussing extensive litigation could be understood to specifically refer to the plaintiff); *Neiman-Marcus v. Lait*, 13 F.R.D. 311, 312 (S.D.N.Y. 1952) (involving statements published in a book); *New England Tractor-Trailer Training, Inc. V. Globe Newspaper Co.,* 395 Mass. 417 (1985) (involving questions as to whether a statement about one corporation could be reasonably understood to have been about another related corporation); *Brady v. Ottaway Newspapers, Inc.*, 84 A.D. 2d 226, 226-27, 445 N.Y.S. 2d 786 (2d Dep', 1981) (involving statements published in a single newspaper editorial).

In sum, Luelsdorff's assertion that the court should consider statements made by Abramson that were not part of the relevant publications has no support in the law. For this reasons, as well as the reasons set forth in Abramson's motion for summary judgment, Statements 4, 5, 6, 25, and 37 cannot reasonably be understood to be about Luelsdorff and therefore Abramson is entitled to summary judgment with respect to these statements.

## I. CONLUSION

For the reasons set forth above, as well as the reasons set forth in Abramson's motion for summary judgment, which is fully incorporated herein, Abramson is entitled to summary judgment. Statement 38, the only statement that specifically names Luelsdorff, is not defamatory. Statements 4, 5, 6, 25, 34 and 37 are not about Luelsdorff and are also substantially true.

WHEREFORE, the Defendant Seth Abramson respectfully requests that this Court:

A) Grant the Defendant's motion for summary judgment; and

B) Enter such additional relief as may be just and equitable.

Respectfully submitted,

SETH ABRAMSON

By His Attorneys,

Poulin Hurley Markis & Lyons P.A.

By: /s/ Clara E. Lyons, Esq.
Elizabeth L. Hurley, Esq.
NH Bar #16851
Clara E. Lyons, Esq.
N.H. Bar #20054
Geoffrey M. Gallagher, Esq.
NH Bar #20771
1838 Elm Street
Manchester, NH 03104
(603) 634-4300
ehurley@phml.law
clyons@phml.law
ggallahger@phml.law

**CERTIFICATE OF SERVICE**

The foregoing will be served all counsel of record using the Court's CM/ECF system on September 23, 2026.

September 23, 2026 By: /s/ Clara E. Lyons, Esq.
Clara E. Lyons, Esq.